LAW OFFICES OF JOHN BENEDICT
John Benedict, Esq.
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
Email: john.benedict.esq@gmail.com

Attorney for Plaintiff FLEMMING KRISTENSEN

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT PAYMENT SERVICES INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Flemming Kristensen ("Plaintiff" or "Kristensen") brings this class action complaint against Defendant Credit Payment Services Inc. f/k/a MyCashNow.com Inc. ("Defendant" or "CPS") to stop Defendant's practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1. Wireless spam is a growing problem in the United States. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010) at http://pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

2. In one such effort to promote its short-term or payday loan services, CPS, a self-described "service provider for the non-bank financial industry," engaged in an especially pernicious form of marketing: the unauthorized transmission of advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

3. By effectuating these unauthorized text message calls (hereinafter, "wireless spam"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

4. In order to redress these injuries, Plaintiff, on behalf of himself and a nationwide class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited voice and text calls to cell phones.

5. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

//
//

## PARTIES

6. Plaintiff is a resident of New York.

7. Defendant CPS is a Nevada corporation that provides payday loans to consumers throughout the nation. As the predecessor of and successor in interest to MyCashNow.com Inc., Defendant does business throughout the United States, including this district.

## JURISDICTION & VENUE

8. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227.

9. This Court has personal jurisdiction over the Defendant because Defendant is a Nevada corporation.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Defendant resides in this district and/or a substantial part of the events concerning the wireless spam at issue occurred in this district.

## COMMON ALLEGATIONS OF FACT

11. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

12. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

13. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owners' person, calls to cellular telephones, including SMS messages, may be received by

1  the called party virtually anywhere worldwide.

2  14.  Unlike more conventional advertisements, wireless spam can actually cost its recipients money because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive, or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

15.  Over the course of an extended period beginning in at least 2011, Defendant directed the mass transmission of wireless spam to the cell phones nationwide of what it hoped were potential customers of its payday loan products.

16.  For instance, on or about December 6, 2011, Plaintiff's cell phone rang, indicating that a text call was being received.

17.  The "from" field of such transmission was identified as "13305646316", which is a dedicated telephone number operated by Defendant's agents that transmits text messages *en masse* through devices known as modem banks and/or carrier gateways. The body of such text message read:

> DO YOU NEED UP TO $5000 TODAY? EASY QUICK
> AND ALL ONLINE AT: WWW.LEND5K.COM
> 24 MONTH REPAY, ALL CREDIT OK
> REPLY STOP 2 END

18.  The website contained in the above text message, as well as the website to which it automatically redirects,[1] are owned and operated by Defendant and/or its agents and further promotes Defendant's payday loan products.

19.  Indeed, when such website is visited, consumers are presented with the opportunity to "Borrow up to $5,000" and obtain "online approval in seconds." When a loan is applied for and approved, the truth in lending portion of the loan agreement identifies Defendant's MyCashNow.com Inc. as the lender who charges the borrower a fee for the loan in the form of annualized interest in excess of 460 percent, or Annual Percentage Rate ("APR").

//

---

[1] The website in the text message quoted in paragraph 17 redirects to the following website: https://thesmartcreditsolution.securelinkcorp.com.

20. The use of a dedicated telephone number by Defendant and/or its agents enabled Defendant's mass transmission of wireless spam to a list of cellular telephone numbers.

21. At no time did Plaintiff consent to the receipt of the above-referenced text message or any other such spam text message advertisement from Defendant.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a class (the "Class") defined as follows: all persons in the United States and its Territories who received one or more unauthorized text message advertisements on behalf of Defendant.

23. In order to make its *en masse* transmission of text message advertisements economical, Defendant used lists of thousands of consumers' cellular telephone numbers, including Plaintiff's. As such, the Class consists of thousands of individuals and other entities, making joinder impractical.

24. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

25. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

26. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct

toward the members of the Class.

27. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct as a result of the transmission of the wireless spam.

28. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

    (a) whether Defendant and/or its agents sent one or more text messages to the Class members;

    (b) whether the text messages sent by or on behalf of Defendant violate the TCPA;

    (c) whether Defendant and/or its agents used an automatic telephone dialing system to transmit the text messages at issue;

    (d) whether Defendant's conduct violated the Class members' respective rights to privacy; and

    (e) whether Defendant's conduct was willful such that the Class members are entitled to treble damages.

**FIRST CAUSE OF ACTION**
(Violation of the TCPA, 47 U.S.C. § 227, *et seq.*: On behalf of the Class)

29. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

30. Defendant made unsolicited commercial text calls, including the message identified in paragraph 17, to the wireless telephone numbers of the Class. Each such text message call was made using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers. By using such equipment, Defendant was able to effectively send text messages simultaneously to lists of thousands of consumers' wireless telephone numbers without

1 | human intervention.

2 |     31.    These text calls were made *en masse* through the use of a dedicated telephone number and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

    32.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, the members of the class suffered actual damages by having to pay their respective wireless carriers for the text messages where applicable and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each violation of such act.

    33.    Because Defendant had knowledge that Plaintiff and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

    WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

    1.    An order certifying the Class as defined above;

    2.    An award of actual and/or statutory damages;

    3.    An injunction requiring Defendant to cease all wireless spam activities;

    4.    An award of reasonable attorneys' fees and costs; and

    5.    Such further and other relief the Court deems reasonable and just.

//
//
//

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: March 29, 2012

Respectfully submitted,

**LAW OFFICES OF JOHN BENEDICT**

By: /s/ John Benedict
John Benedict, Esq.
Law Offices of John Benedict
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
Email: john.benedict.esq@gmail.com

*Counsel for Plaintiff*
*FLEMMING KRISTENSEN*