**LAW OFFICES OF JOHN BENEDICT**
John Benedict, Esq.
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
Email: john.benedict.esq@gmail.com

Attorney for Plaintiff FLEMMING KRISTENSEN
[Additional Counsel listed below signature]

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT PAYMENT SERVICES INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company,<br><br>Defendants. | Case No. 2:12-CV-00528-KJD (PAL)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: Hon. Kent Dawson<br><br>Magistrate: Hon. Peggy A. Leen |

**CLASS ACTION COMPLAINT**

Plaintiff Flemming Kristensen ("Plaintiff" or "Kristensen") brings this class action complaint against Defendants Credit Payment Services Inc. f/k/a MyCashNow.com Inc. ("CPS"), Enova International, Inc. ("Enova"), Pioneer Financial Services, Inc. ("Pioneer"), LeadPile LLC ("LeadPile") and Click Media LLC d/b/a Net1Promotions LLC

("Net1Promotions") (collectively, the "Defendants") to stop Defendants' practice of causing unsolicited text message calls to be made to cellular telephones and to obtain redress for all persons injured by their conduct.  Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE CASE**

1. Wireless spam is a growing problem in the United States.  According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."  In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."  Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010) *available at* http://pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.[1]

2. One industry that has embraced advertising and marketing via text message is the short-term "payday" loan industry.

3. Short-term lenders have traditionally operated from physical storefronts.  Over the past several years, however, these short-term lenders have migrated from physical storefronts to offering short-term loans via the Internet.  Some short-term lenders have moved exclusively to online storefronts, which allow the lenders to offer short-term loans nationwide, as opposed to being limited to a local, geographic region.

4. As a consequence, online short-term lending has grown from a largely "mom-and-pop" local business into a billion dollar industry, with lenders expanding their operations nationwide without the costs associated with traditional "brick and mortar" stores.

---

[1] A recent N.Y. Times article estimated that 4.5 *billion* spam text messages were sent in 2011 alone.  *See* Spam Invades a Last Refuge, the Cell Phone, Nicole Perloth, *available at* URL: http://www.nytimes.com/2012/04/08/technology/text-message-spam-difficult-to-stop-is-a-growing-menace.html

5. Like all businesses, however, online-based lenders face the challenge of obtaining new customers. In order to maximize their reach, short-term lenders have turned to Internet-based marketers and advertisers to generate customers.

6. An increasingly predominant method lenders use to encourage consumers to apply for short-term loans is to transmit text messages that contain a website link that will route the consumer to the lender's online loan services.

7. For the past several years, the cellular telephones of consumers have been inundated by text messages presenting offers for loans obtainable if the consumer visits a website identified in the body of the text message.

8. Many companies, aware of the legal pitfalls of transmitting text message spam, do not advertise their brand name in the content of the text message. In this case, short-term lenders CPS, Enova and Pioneer do not identify themselves in the content of such text messages—rather they remain anonymous and contract with advertising and marketing companies to cause the transmission of such text messages *en masse*.

9. It is only after a consumer "takes the bait" and applies for a short-term loan at the website in the body of the text message that the true advertisers and beneficiaries of the text messages are revealed.

10. Since at least 2011, Defendants CPS, Enova and Pioneer have engaged in this form of text message advertising by partnering with marketers and advertisers, and they have consequently caused the transmission of millions of text messages to the cellular telephones of consumers nationwide.

11. By effectuating unauthorized text message calls (hereinafter, "wireless spam") of the kind described above, Defendants have caused consumers actual harm, not only because consumers are subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

12. In order to redress these injuries, Plaintiff, on behalf of himself and a nationwide class of similarly situated individuals, brings suit under the Telephone Consumer

1   Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited voice and text
2   calls to cell phones.
3         13.   On behalf of the class, Plaintiff seeks an injunction requiring Defendants to
4   cease all wireless spam activities and an award of statutory damages to the class members,
5   together with costs and reasonable attorneys' fees.

**PARTIES**

14.   Plaintiff is a resident of New York.

15.   Defendant CPS is a Nevada corporation that provides payday loans to consumers throughout the nation. As the predecessor of and successor in interest to MyCashNow.com Inc., CPS does business throughout the United States, including in this District.

16.   Defendant Enova is a Delaware corporation that provides payday loans to consumers throughout the nation. Enova does business throughout the United States, including in this District.

17.   Defendant Pioneer is a Missouri corporation that provides payday loans to consumers throughout the nation. Pioneer does business throughout the United States, including in this District.

18.   Defendant LeadPile is a Delaware corporation with its principal place of business in Arizona. LeadPile is a self-described "leader in online lead generation" and does business throughout the United States, including in this District, and with Defendants.

19.   Defendant Net1Promotions is a Georgia corporation. Net1Promotions does business throughout the United States, including in this District.

**JURISDICTION & VENUE**

20.   The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227.

21.   This Court has personal jurisdiction over the Defendants because Defendants do business throughout the United States, including in this District. The wireless spam at

1  issue was sent to consumers throughout the nation, including in this District.

2      22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because
3  Defendants CPS and Pioneer reside in this District, and because a substantial part of the
4  events concerning the wireless spam at issue occurred in this District.

**COMMON ALLEGATIONS OF FACT**

    23.    In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

    24.    One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

    25.    An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owners' person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

    26.    Unlike more conventional advertisements, wireless spam can actually cost its recipients money because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive, or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

    27.    Beginning in at least October of 2010, the Defendants entered into agreements to facilitate the transmission of thousands of text messages to the cellular telephones of consumers nationwide.

    28.    Defendants CPS, Enova, and Pioneer all contracted with Defendant LeadPile to generate customers for their respective online payday loan products from throughout the United States, including in this judicial District.

29. LeadPile and its agents generate customers for CPS, Enova and Pioneer through several methods, including the generation of leads through text message marketing.

30. In order to generate these customers, LeadPile contracts with various companies, including Net1Promotions, to generate leads and drive traffic to Defendants' websites.

31. Net1Promotions, in turn, directs various affiliate marketers to transmit *en masse* text messages containing "links" that direct consumers to various websites operated by Defendants and/or their agents.

32. When a consumer visits one of these websites, he or she is automatically redirected to websites controlled by Net1Promotions, where consumers begin the loan application process in order to receive loans directly from Defendants CPS, Enova and Pioneer.

33. Over the course of an extended period beginning in at least October 2010, Defendants directed the mass transmission of wireless spam to the cell phones of consumers nationwide who they hoped were potential customers for payday loan products.

34. For instance, on or about December 6, 2011, Plaintiff's cell phone rang, indicating that a text call was being received.

35. The "from" field of such transmission was identified as "13305646316", which is a dedicated telephone number operated by Defendants' agent that transmits text messages *en masse* through devices known as modem banks and/or carrier gateways. The body of such text message read:

> Do You Need up to $5000 Today? Easy Quick and All Online at:
> www.lend5k.com 24 Month Repay, All Cred. Ok
> Reply STOP 2 End

36. The website contained in the above text message, as well as the website to which it automatically redirects,[2] are owned and operated by Defendant Net1Promotions and

---

[2] The website in the text message received by Plaintiff and quoted in paragraph 35 redirects consumers to the following website: https://thesmartcreditsolution.securelinkcorp.com.

1  further promote the payday loan products of Defendants CPS, Enova, and Pioneer.

2      37.  Indeed, when such website is visited, consumers are presented with the opportunity to "Borrow up to $5,000" and obtain "online approval in seconds." When a loan is applied for, the consumer is forwarded to a website owned and operated by Defendant LeadPile, who then matches each customer with specific lenders, including CPS, Enova, and Pioneer.

   38.  The use of a dedicated telephone number by Defendants' agents enabled Defendants' mass transmission of wireless spam to a list of cellular telephone numbers.

   39.  At no time did Plaintiff consent to the receipt of the above-referenced text message or any other such spam text message advertisement from Defendants.

## CLASS ACTION ALLEGATIONS

   40.  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a class (the "Class") defined as follows: all persons in the United States and its Territories who received one or more unauthorized text message advertisements on behalf of Defendants.

   41.  In order to make the *en masse* transmission of text message advertisements economical, Defendants caused the *en masse* transmission of text messages to thousands of consumers' cellular telephone numbers, including Plaintiff's. As such, the Class consists of thousands of individuals and other entities, making joinder impractical.

   42.  Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

   43.  Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions

or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

44. Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

45. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class stemming from the transmission of the wireless spam alleged herein. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct as a result of the transmission of the wireless spam.

46. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a) whether Defendants and/or their agents sent or caused to be sent one or more text messages to the Class members;

(b) whether Defendants should be held liable under the TCPA for sending text message to the Class members;

(c) whether the text messages sent by or on behalf of Defendants violate the TCPA;

(d) whether Defendants and/or their agents used an automatic telephone dialing system to transmit the text messages at issue;

(e) whether Defendants' conduct violated the Class members' respective rights to privacy; and

(f) whether Defendants' conduct was willful such that the Class members are entitled to treble damages.

### FIRST CAUSE OF ACTION
(**Violation of the TCPA, 47 U.S.C. § 227, *et seq.*: On behalf of the Class**)

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48.     Defendants made unsolicited commercial text calls, including the message identified in paragraph 35, to the wireless telephone numbers of the Class members.  Each such text message call was made with equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers.  By using such equipment, Defendants were able to effectively send text messages simultaneously to thousands of consumers' wireless telephone numbers without human intervention.

49.     These text calls were made *en masse* through the use of a dedicated telephone number and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

50.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of Defendants' conduct, the members of the class suffered actual damages by having to pay their respective wireless carriers for the text messages where applicable and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500.00 in damages for each violation of such act.

51.     Because Defendants have knowledge that Plaintiff and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the other members of the Class.

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

1.   An order certifying the Class as defined above;
2.   An award of actual and/or statutory damages;
3.   An injunction requiring Defendants to cease all wireless spam activities;
4.   An award of reasonable attorneys' fees and costs; and
5.   Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  March 8, 2013

FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals

By: /s/  John C. Ochoa
    John C. Ochoa, Esq.
    Attorney for Plaintiff Flemming Kristensen

John Benedict, Esq.
LAW OFFICES OF JOHN BENEDICT
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
john.benedict.esq@gmail.com

Evan M. Meyers (admitted *pro hac vice*)
emeyers@edelson.com
John C. Ochoa (admitted *pro hac vice*)
jochoa@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Counsel for Plaintiff*
FLEMMING KRISTENSEN