LAW OFFICES OF JOHN BENEDICT
John Benedict, Esq.
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
Email: john.benedict.esq@gmail.com

Attorney for Plaintiff Flemming Kristensen
[Additional counsel appear on signature page]

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT PAYMENT SERVICES INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company,<br><br>Defendants. | Case No. 2:12-CV-00528-APG-(PAL)<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION FROM DEFENDANT CREDIT PAYMENT SERVICES, INC. AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Andrew P. Gordon<br><br>Magistrate: Hon. Peggy Leen |

Now comes Plaintiff FLEMMING KRISTENSEN, by and through his undersigned counsel, and files this *Motion To Compel Defendant Credit Payment Services, Inc. to Produce Documents Responsive to Plaintiff's Document Requests No.'s 45, 51, 52, 53, and 54.*

| | |
|---|---|
| Dated: July 30, 2013 | Respectfully submitted, |
| | FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals |
| | By: /s/ John C. Ochoa<br>    One of Plaintiff's Attorneys |
| | John Benedict, Esq.<br>LAW OFFICES OF JOHN BENEDICT<br>Nevada Bar No. 005581<br>2190 E. Pebble Road, Suite 260<br>Las Vegas, Nevada 89123<br>Telephone: (702) 333-3770<br>Facsimile: (702) 361-3685<br>john.benedict.esq@gmail.com |
| | Ryan D. Andrews (admitted *pro hac vice*)<br>randrews@edelson.com<br>John C. Ochoa (admitted *pro hac vice*)<br>jochoa@edelson.com<br>David Dale (admitted *pro hac vice*)<br>ddale@edelson.com<br>EDELSON LLC<br>350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>Telephone: (312) 589-6370<br>Facsimile: (312) 589-6378 |
| | *Counsel for Plaintiff*<br>*FLEMMING KRISTENSEN* |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Credit Payment Services Inc. ("Defendant" or "CPS") has consistently failed to deliver documents which it concedes are relevant, non-privileged, and in its possession. CPS has agreed—both in written responses to Plaintiff's Request for Document Production and in many subsequent conversations with Plaintiff's Counsel over the last four months—to produce these documents, but always fails to deliver them. These documents relate to CPS's relationships and communications with three entities that are involved in the text message-marketing scheme described in Plaintiff's Amended Complaint. As it has now been more than eight months since Defendant was first obligated to produce the documents, Plaintiff begs the Court, pursuant to Rule 37(a)(3)(B)(iv), to intervene and compel Defendant to fulfill its discovery obligations.

Plaintiff has attempted to work with CPS at every step. When Defendant has presented a problem—such as sensitive information requiring a protective order, the burden of redacting documents, or the difficulty in producing the number of requested documents— Plaintiff has accommodated CPS and worked to find common solutions. Plaintiff has stipulated to a discovery order, limited the scope of requests, and repeatedly extended agreed-upon deadlines.

The documents Plaintiff seeks—CPS's contracts and communications with its advertising company and co-defendant LeadPile—are relevant and will establish CPS's vicarious liability for the text message transmissions here. To date, CPS has only produced a mere five documents, none of which are responsive to the Requests at issue here. Plaintiff and the Court should not be made to wait while CPS produces excuses in place of vital documents. Plaintiff respectfully requests that this Court enter an Order compelling CPS to produce these documents immediately.

**FACTUAL BACKGROUND**

Plaintiff instituted this action against CPS on March 29, 2012, alleging violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 *et seq.* Plaintiff's Amended Complaint alleges that multiple online, "payday" lenders contracted with lead generators and

advertisers to promote—via text message—a web-service that would direct potential customers to their lending services.  (First Am. Compl., (Dkt. 35) ¶¶ 27-33.)  Plaintiff Flemming Kristensen received a text message on December 6, 2011 that stated as follows:

> Do You Need up to $5000
> Today?  Easy Quick and All
> Online at:
> www.lend5k.com 24
> Month Repay, All Cred. Ok
> Reply STOP 2 End

(*Id.* ¶ 35.)  Investigation and subsequent discovery revealed that the website link above, "www.lend5k.com." redirected to a website owned by Defendant Click Media.  (*Id.* ¶ 36.)  This website provided an application for short-term, "payday" loans.  Once a consumer applied for the loan, the application was forwarded to Defendant LeadPile (a CPS affiliated entity with common ownership), who then "matched" the consumers with various payday lenders, including Defendant CPS, who did business at the website "MyCashNow.com".  (*Id.* ¶ 37.)

Each Defendant in this case played a crucial role in converting these text message transmissions into qualified borrowers for CPS.  Click Media facilitated the text message transmissions though various "affiliate marketers," and also offered the loan application to consumers.  (*Id.* ¶¶ 31, 36.)  LeadPile matched up the text message recipients to CPS.  (*Id.* ¶ 29-30, 37.)  And CPS purchased these leads from LeadPile.  (*Id.* ¶¶ 27-32, 37.)  This whole process, from text message transmission to approved loan application, was touted as "easy quick, and all online," and Click Media's website claimed that consumers could obtain approval in "seconds."  (*Id.* ¶¶ 35, 37.)  Each Defendant entered into contracts with one another to cause these text message transmissions and facilitate the flow of consumers from text message to approved loan.  (*Id.* ¶¶ 27-32.)  CPS, however, did not contract with LeadPile directly, but instead conducted its advertising through a subsidiary of CPS, Area203 Marketing LLC.[1]  CPS identified Area203 Marketing LLC in its interrogatory responses as a

---

[1] LeadPile, in turn, is a wholly-owned subsidiary of Area203Marketing LLC.  *See* Declaration of John C. Ochoa ("Ochoa Decl.") ¶ 2.

company that "has direct contracts with [CPS] for the purpose of marketing on behalf of the listed web sites," one of which includes LeadPile.  (Ochoa Decl. ¶ 3.)

### A. Discovery Commences

Plaintiff sought discovery from CPS relating to its agreements and correspondence with LeadPile, Area203 Marketing, and MyCashNow.com, Inc.  To that end, Plaintiff served CPS with his First Set of Document Requests on October 15, 2012. (Ochoa Decl. ¶ 4.) Pertinent to this Motion, Plaintiff requested documents relating to:

- Any documents related to any contracts between CPS and LeadPile LLC (Request No. 45);

- Any documents related to any contracts between CPS and Area 203 Marketing LLC (Request No. 51);

- Any communications between CPS an Area 203 Marketing LLC relating to promoting payday loan products or services (Request No. 52);

- Any documents related to any contracts between CPS and MyCashNow.com, Inc. (Request No. 53); and

- Any communications between CPS and MyCashNow.com, Inc. relating to promoting payday loan products or services.  (Request No. 54.)[2]

Two months later (following a 4-week extension granted by Plaintiff), CPS served its Responses on December 12, 2012.  (Ochoa Decl. ¶¶ 4-5.)  In response to the requests outlined above, Defendant stated that responsive documents contained proprietary or confidential information. (*Id.* Ex. C, Nos. 45, 51-54.)  Accordingly, Defendant stated that it would produce these documents following the entry of a protective order.  (*Id.*)  Eager to receive the documents, Plaintiff joined Defendant in stipulating to a Protective Order that was approved and entered by the Court on January 11, 2013.  (Dkt. 32.)

### B. Delays Begin

By March 28, 2013, CPS had not produced any of the promised documents, nor had

---

[2] The full text of these requests, and of CPS's responses, is attached to the Ochoa Decl. as Ex. C.

they contacted Plaintiff to request more time or explain the delay. Plaintiff's counsel contacted Defense counsel via email and requested an explanation for the delay. (Ochoa Decl. ¶ 6.) There was no email response from Defendant. (*Id.*)

Plaintiff's counsel finally made successful contact with Defendant on or around April 15, 2013. During a phone call on that day, Plaintiff agreed to allow CPS to produce responsive documents on a "rolling basis" going forward. (Ochoa Decl. ¶ 7.) The Parties also discussed CPS's concern that the scope of Request No. 52 (seeking correspondence between CPS and Area203 Marketing LLC related to payday loan services) was too burdensome, as it would result in the production of a large amount of data. (*Id.* ¶ 7.) Plaintiff agreed to limit the temporal scope of this request to the time period relevant to this lawsuit and also offered narrowed search terms that would specifically target correspondence highly relevant to this case. (*Id.*) A copy of an email memorializing this conversation and listing Plaintiff's proposed search terms is attached to the Ochoa Decl. as Exhibit E. Still, another week went by with no documents produced and no explanation from CPS. Plaintiff's counsel sent follow-up emails on May 2 and May 16, but received no response. (*Id.* ¶ 8.)

On May 22, 2013, Defense counsel responded to a May 21, 2013 email sent by Plaintiff's counsel regarding CPS's document production. (Ochoa Decl. ¶ 9.) In CPS's emailed response, its counsel informed Plaintiff that there may have been a "misunderstanding among tasks and perhaps even the belief that these issues were resolved to your satisfaction." (*Id.*) In response, Plaintiff reiterated that he had been awaiting CPS's document production for over seven months, and that if CPS didn't produce documents he would have to move to compel. (*Id.*) Defense counsel responded to this email and told Plaintiff that a disk containing "megabytes" of responsive documents had been prepared two weeks prior. (*Id.*) In a separate email, Defense counsel said that a disc with responsive documents "was supposed to be sent two weeks ago." (*Id.*) In the meantime, yet another week passed with no documents produced.

On June 5, 2013, Defendant informed Plaintiff that, rather than being sent the week before, the disk containing responsive documents was still being redacted. (Ochoa Decl. ¶

10.) Defense counsel forwarded an email from an employee of CPS who stated that CPS was in the process of redacting information responsive to Plaintiff's request No. 51, and that CPS had not yet even begun searching for documents responsive to Request No. 52 using the limited date range and search terms, although the employee noted that Plaintiff's offers to limit the scope of the request would "help limit the scope of the response." (*Id.*) On June 12, 2013, Defense counsel assured Plaintiff's Counsel that the disk, as well as amended responses to Plaintiff's Document Requests, would be sent within a week. (*Id.* ¶ 11.) During a telephone conversation the following day, June 13, Defense counsel again reassured Plaintiff that documents were being produced, including those documents responsive to requests concerning Area203 Marketing LLC. (*See* Declaration of Ryan D. Andrews ("Andrews Decl.") ¶¶ 2-3.)

Defendant's disk finally arrived on June 17, 2013, more than three weeks after Defendant had informed Plaintiff it would be shipped immediately, more than five months after the protective order was issued, and more than eight months after Plaintiff had first Served CPS with Document Requests. (Ochoa Decl. ¶ 12.) Unfortunately, the disk contained a mere five documents, none of which were responsive or relevant to the requests at issue here. Specifically, the disc contained contracts between CPS and Area203 Marketing that were entered into <u>after</u> Plaintiff received the text message at issue, and did not contain any executed, relevant contracts. (*Id.*) On June 19, 2013, CPS sent its Amended Responses to Plaintiff's First Set of Production Requests, addressing only Requests Nos. 21 and 54. (Ochoa Decl. ¶ 17.) In its Amended Response to Request No. 54, CPS again provided blanket objections on the grounds that Plaintiff's Request was overbroad and irrelevant, in addition to refusing production on the grounds that a protective order (which the Court approved nearly 6 months earlier) was not yet in place. (*Id.*) Though in its initial responses CPS agreed to produce responsive documents to this Request upon entry of a protective order, CPS now stated that after investigation, no responsive documents existed. (*Id.*)

On July 19, 2013, Plaintiff's Counsel sent a final letter to CPS requesting the documents that CPS stated that it would produce upon the entry of a Protective Order.

(Ochoa Decl. ¶ 13.) On July 29, 2013, Plaintiff's counsel received a response to this letter, from CPS's counsel Timothy Walton, which requested a meet-and-confer on July 29, 2013. (*Id.* ¶ 14.)  As requested, Plaintiff's counsel reached out to Mr. Walton on July 29, 2013 via telephone and email, but received no response. (*Id.* ¶ 15.)[3]  Instead, Mr. Walton's co-counsel Mr. Hutton sent an email to Plaintiff's counsel the following day seeking yet another conversation, but failing to address any of the issues raised in Plaintiff's letter. (*Id.* ¶ 16.)

## ARGUMENT

CPS has, without any explanation, failed to produce documents relevant to this action, even after repeatedly stating that it would produce the documents.  CPS's delay is the same as a failure to produce, and this Court can, and should, order CPS to produce the documents immediately.

### A.     The Court Should Compel CPS to Produce Documents Responsive to Plaintiff's Document Requests No.'s 51-54.

"Pursuant to Rule 37(a)(3)(B)(iii) and (iv), '[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection' if 'a party fails to . . . respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.'" *Narula v. Chase Home Fin., LLC*, 2:11-CV-01641-PMP, 2012 WL 5378179, at *2 (D. Nev. Oct. 30, 2012).  A delay that is unreasonably long constitutes a failure to produce; this is especially true when the delay is not mitigated by an explanation or good faith efforts to adhere to an extension. *See Forsythe v. Brown,* 281 F.R.D. 577, 591 (D. Nev. 2012) ("Prejudice is presumed from an unreasonable delay. . ."); *Allen v. Bayer Corp.* 460 F.3d 1217, 1234 (9th Cir. 2006) (severe sanctions are warranted when "a [party's] noncompliance has caused the action to come to a halt, thereby allowing the [party], rather than the court, to

---

[3] Plaintiff is not filing the instant motion aggressively, prematurely, or without due consideration. Rule 37 of the Federal Rules of Civil Procedure as well as Local Rule 26-7(b) require a party to make "sincere efforts" to resolve discovery issues through consultations with the opposing party before moving to compel production. Fed. R. Civ. P. 37; LR 26-7; *see Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 172 (D. Nev. 1996).  As detailed in the Factual Background section Plaintiff has been conferring with Defense counsel on these issues since late March, 2013, and has engaged in multiple email conversations, as well as several phone conferences with counsel for CPS.  After conferring for over 3 months, CPS still refuses to produce the promised, responsive documents.

1  control the pace of the docket.").

2  The categories of documents Plaintiff seeks easily meet the relevancy test of Fed. R.
3  Civ. P. 26.  Under Rule 26, documents should be produced if they are reasonably calculated
4  to lead to the discovery of admissible evidence.  *Narula*, 2012 WL 5378179, at *2 (citing
5  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).  Plaintiff's discovery requests
6  seek evidence that will disclose the nature of CPS's relationship with its co-defendant
7  LeadPile and its level of knowledge and involvement concerning the use of text message
8  advertising to generate clients for its payday loan products.  The Federal Communications
9  Commission, which has been entrusted by Congress to interpret the TCPA, recently
10 pronounced that "a seller may be liable for violations by its representatives under a broad
11 range of agency principles, including not only formal agency, but also principles of apparent
12 authority and ratification."  *In the Matter of the Joint Petition Filed by Dish Network, LLC,*
13 *the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for*
14 *Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 2013 WL
15 1934349, at *9, 28 F.C.C.R. 6574, 6584 (May 9, 2013).

16 Federal agency principles are derived directly from the Restatement of Agency.  *Bowoto*
17 *v. Chevron Corp.*, C 99-02506 SI, 2007 WL 2349341, at *6 (N.D. Cal. Aug. 14, 2007).  The
18 issue of knowledge, as it pertains to a principal manifesting assent to the conduct of its agent, is a
19 vital aspect of the agency analysis. Rest. (3d) Of Agency § 1.03 (2006).  Knowledge or notice of
20 an agent's conduct is used to define the scope of the relationship, namely what level of authority
21 the agent was acting under when it engaged in the conduct at issue.  *Id*.  Similarly, prior dealings
22 between principal and agent are essential to determine the scope of authority.  (*Id.* §§ 1.03; 2.02.)
23 As such, this evidence is crucial to showing that CPS is vicariously liable for the text
24 message transmissions at issue here.  Since the Protective Order was issued, Defendant's
25 prior objections—that the requested documents were protected by the privacy rights of third
26 parties and contained confidential information—have been mooted. (*See* Dkt. 32.)

27 **Document Request No. 51**

28 Request No. 51 seeks "All Documents and ESI Related To any Contracts,

1  agreements, or understandings between [CPS] and Area203 Marketing LLC." CPS conceded
2  the relevancy of such documents by producing several agreements between it and Area203
3  Marketing LLC. The problem, however, is that all of the contracts produced by CPS were
4  executed <u>after</u> the text message transmission received by Plaintiff occurred. In order to
5  evaluate the nature of the relationship between CPS and Area203 Marketing LLC at the time
6  the conduct at issue in this lawsuit occurred, CPS must produce any contracts, agreements or
7  understandings between it and Area203 Marketing LLC that were in effect immediately
8  before December 6, 2011.

**Document Request No. 52**

Request No. 52 seeks "All Communications between [CPS] and Area203 Marketing LLC Related To Advertising, marketing and/or promoting consumer loan products, Including payday loan products or services." This request was designed to discover CPS's level of control and knowledge over the text message marketing activities at issue here. CPS stated in its discovery response that it would produce documents upon the entry of a protective order, but still has failed to produce documents. CPS's counsel expressed concern about the broad nature of the request, and Plaintiff's counsel accordingly offered to narrow the scope of the request to ease the burden of production on CPS, and to focus in on the most relevant, responsive documents. Accordingly, Plaintiff provided CPS with the following list of Boolean[4] search terms, which were designed to focus in on the relevant issues in this case:

---

[4] "Boolean" searches allow for the searching party to limit the scope of a search by filtering out "false positives" and focus in on relevant material by searching for two or more words in proximity to one another. *See generally* Gregory L. Fordham, *Using Keyword Search Terms in E-Discovery and How They Relate to Issues of Responsiveness, Privilege, Evidence Standards and Rube Goldberg*, 15 Rich. J.L. & Tech. 8, 22 (2009). A second advantage to using Boolean searches is to avoid unnecessarily limiting the scope of a search by including singular, plural, and "root" forms of a word using connectors such as "*" and "!" For a brief description of these connectors, *see* Westlaw Next Tip of the Week: Searching With Boolean Terms and Connectors, Aug. 29, 2011, available at URL: http://westlawinsider.com/legal-research/reference-attorney-tips/westlaw-next-tip-of-the-week-searching-with-boolean-terms-and-connectors/.

```
SMS
"text message*"
LeadPile
Net1promotions
net1
Click Media
Clickmedia
TCPA
text message spam
text spam
ATDS
autodial*
A203LeadGen@area203.com
(text* OR sms) w/10 (blast* OR messag* OR automat* OR market* OR campaign*)
((text* OR sms) AND message*) w/5 (policy OR approv*  OR legal OR advertis*)
```

The search terms include the names of co-defendants in this case, as well as terms commonly used when discussing text message marketing.  To Plaintiff's knowledge, CPS never actually searched for responsive documents at all using these search terms.  CPS should now be compelled to search its email systems for any communications that match the search terms listed above and produce the resulting documents.  Additionally, if CPS is in possession, custody, or control of any communications between it and Area203 Marketing discussing text message lead generation marketing, it should be compelled to produce those emails as well.

**Document Requests Nos. 53 & 54**

Request No. 53 seeks "All Documents and ESI Related to any Contracts, agreements, or understandings between CPS and MyCashNow.com, Inc."  As discussed in the Factual Background Section, "MyCashNow.com" is the website used by CPS to enter into contracts with borrowers after they are funneled to CPS via text message marketing.[5]   Similarly, communications between CPS and MyCashNow.com, Inc. are discoverable to the extent they reveal the nature of the relationship between CPS and MyCashNow.com, Inc.

---

[5] MyCashNow.com, Inc., is a wholly owned subsidiary of CPS that is incorporated in Anguilla, British West Indies.

**Document Request No. 45**

The same reasoning applies to Defendant's failure to produce Documents responsive to Plaintiffs Document Request No. 45. Defendant's additional objection to this Request—that it is not aware of the existence of any responsive Document—is pretextual and not based in fact. CPS does have agreements with Defendant LeadPile LLC through its subsidiary Area203 Marketing LLC. (Ochoa Decl. ¶ 2.) "A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). Since CPS wholly owns and controls Area203 Marketing LLC[6], and thus has custody and control of the requested Documents, it has a duty to produce them.

## CONCLUSION

WHEREFORE, Plaintiff Flemming Kristensen respectfully requests that this Court enter an Order granting his *Motion to Compel Defendant Credit Payment Services to Produce Documents Responsive to Plaintiffs Document Requests No.'s 45, 51, 52, 53, and 54* and requiring Defendant to pay Plaintiff's reasonable expenses incurred in filing this Motion.

Dated: July 30, 2013            Respectfully submitted,

FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals

By: /s/ John C. Ochoa

One of Plaintiff's Attorneys

John Benedict, Esq.
LAW OFFICES OF JOHN BENEDICT
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260

---

[6] *See* Local companies tied to offshore payday lenders, Ellis Smith, *available at* URL: http://www.timesfreepress.com/news/2011/dec/18/local-companies-tied-offshore-payday-lenders/

Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
john.benedict.esq@gmail.com

Ryan D. Andrews (admitted *pro hac vice*)
randrews@edelson.com
John C. Ochoa (admitted *pro hac vice*)
jochoa@edelson.com
David Dale (admitted *pro hac vice*)
ddale@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Counsel for Plaintiff*
*FLEMMING KRISTENSEN*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2013, I electronically filed the forgoing *Plaintiff's Memorandum and Points of Law in Support of His Motion to Compel Production of Documents* with the Clerk of the Court using the CM/ECF system.  Notice of this filing is sent to all counsel of record by operation of the Court' electronic filing system.  Parties may access this filing through the Court's system.

Dated:  July 30, 2013                    By: /s/ John C. Ochoa
                                              John C. Ochoa