Steven Martin Aaron, Esq. (MO Bar No. 41653)
*Admitted Pro Hac Vice*
Gregory T. Wolf, Esq. (MO Bar No. 43717)
*Admitted Pro Hac Vice*
DENTONS US LLP
4520 Main Street, 11th Floor
Kansas City, MO 64111-7700
Telephone: (816) 460-2400
Facsimile:  (816) 531-7545
steven.aaron@dentons.com
gregory.wolf@dentons.com

Martin L. Welsh, Esq.
Nevada State Bar No. 8720
LAW OFFICE OF HAYES & WELSH
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
Telephone: (702) 434-3444
Facsimile:  (702) 434-3729
mwelsh@lvlaw.com

*Attorneys for Defendant*
*CREDIT PAYMENT SERVICES, INC.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually, and on behalf of a class of similarly situated individuals,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CREDIT PAYMENT SERVICES, INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA, LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company,<br><br>　　　　　　　　Defendants. | Case No. 2:12-CV-00528-APG (PAL)<br><br>**CREDIT PAYMENT SERVICES, INC.'S RESPONSE TO MOTION TO COMPEL** |

1

82482635\V-1

Defendant Credit Payment Services, Inc. ("CPS), by and through its counsel, for its Response to Plaintiff's Motion to Compel (Doc. # 199), states as follows:

## INTRODUCTION

Plaintiff received a single text message advertising a $5,000 loan in December 2011. (First Amended Complaint, Doc. 35 ¶¶ 34-37). Based on receipt of that message, Plaintiff seeks relief on behalf of a class of "[a]ll individuals who were sent a text message from telephone numbers '330-564-6316,' '808-989-5389,' and '209-2000-00084' from December 5, 2011 through January 11, 2012." (Doc. 164). Plaintiff has erroneously sued CPS, despite conceding that the text message at issue was sent by non-parties AC Referral Systems LLC ("AC Referral"), Identity Defender, Inc. ("Identity Defender") and 360 Data Management, LLC ("360 Data"). (First Amended Complaint, Doc. 35 ¶ 27). Since the parties who sent the text message are not defendants in this case, the only question before the Court with regard to CPS is whether CPS can be held vicariously liable for the actions of AC Referral, Identity Defender and 360 Data. Despite this narrow question, Plaintiff seeks to expand this case far beyond justifiable limits by seeking discovery on documents that are not at issue. CPS timely objected to Plaintiff's discovery requests on this basis, yet Plaintiff's continues his fishing request by now seeking to compel wholly irrelevant information from CPS. Plaintiff presents no justifiable reason why this information should be compelled from CPS; for this reason, Plaintiff's Motion to Compel should be denied.

## ARGUMENT

**I.   Discovery Standards.**

Plaintiff, as the party brining the motion to compel discovery bears the burden of informing the court why the responding party's objections are not justified. *Trustees of Nev. Resort Assoc. v. Encore Prods., Inc.,* No. 2:10-cv-00386, 2012 WL 4833174 (D. Nev. Nov. 23, 2010). When considering a motion to compel, this Court engages in a balancing test to

2

determine whether the burden of the requests outweigh their potential benefits by considering (1) the relevancy of the requests and (2) the responding party's objections.  *Poole v. Centennial Imports, Inc.,* No. 2:12-cv-00647, 2013 WL 3832415 (D. Nev. July 23, 2013).  As explained in further detail below, the burden of producing, at best, the marginally relevant information requested by Plaintiff far outweighs any potential benefit gleaned by the information.

## II. Plaintiff's assertion that the requested discovery is connected to its vicarious liability theories is bogus.

Plaintiff alleges that the subject discovery requests are "aimed at uncovering documents and information relating specifically to CPS' vicarious liability for the actions of its marketers." (Pl. Mot. to Compel, Dkt. 199, p. 4).  This is hardly the case; rather, the discovery requests appear to seek information wholly irrelevant to this suit.  Plaintiff's broad request of commercially sensitive information, allegedly in support of an unstated alter-ego claim, demonstrates that Plaintiff seeks to use discovery to harass CPS and to drive up litigation costs in an effort to cause an *in terrorem* settlement of his meritless claim.

To prove that CPS is vicariously liable for the transmission of the text message, Plaintiff must demonstrate that CPS controlled, or had the right to control, the manner and means of the text message campaign conducted by AC Referral.  *See Thomas v. Taco Bell Corp.,* No. 12-56458, ___ Fed. Appx. ___, 2014 WL 2959160 (9th Cir. July 2, 2014) (affirming district court's conclusion that to succeed in vicarious liability theory in TCPA case, plaintiff must demonstrate that defendant controlled or had the right to control the transmission of the text message and the manner and means of the text message campaign conducted).  Thus, information regarding CPS' contracts with AC Referral, and the amount of control CPS had over AC Referral, is arguably the only information relevant to the Court's determination of vicarious liability theory.  Plaintiffs requests do not seek information regarding CPS' control over AC Referral, because Plaintiff is well aware that no such information exists.  AC Referral's principal, James Gee, testified several months ago that he never received any direction from CPS regarding transmission of the text

3

messages that are the subject of this litigation. AC Referral's principal, James Gee, testified several months ago that he never received any direction from CPS regarding transmission of the text messages that are the subject of this litigation. (**Exhibit 6**, Excerpts from Deposition of J. Gee, 70:1-11; 122:5-9 (testifying he had never heard of CPS before this suit, and never communicated with CPS before this suit).

Instead, Plaintiff's entire theory of liability against CPS is based on Plaintiff's allegation that unnamed agents of Defendant's sent text messages to the class members. Plaintiff has continued to proceed with this theory of liability even though CPS has repeatedly submitted discovery responses affirming that it never hired any third-party to transmit unsolicited text messages on its behalf. (**Exhibit 1**, CPS Amended Responses to Plaintiff's First Interrogatories, dated December 12, 2012, Interrogatory 11; CPS Answer to First Amended Complaint, Doc. 38, ¶ 27).

The only information arguably relevant to Plaintiff's vicarious liability, concerns CPS' contracts with Defendant LeadPile, LLC ("LeadPile"). CPS contracted with LeadPile to purchase leads from LeadPile's database for CPS' loan products. (Pl. Mot. To Compel; Dkt. 199, p. 2). Even though that is true, it does not demonstrate that CPS or LeadPile exhibited any control over AC Referral. Furthermore, Lisa Snow, an expert in telecommunications accounting, confirmed that only four potential class members were leads submitted from Leadpile to CPS. CPS has produced all information related to these four leads. (**Exhibit 2**, L. Snow Declaration, ¶ 23). CPS has also produced all correspondence, communication and contracts it has with Leadpile. (**Exhibit 3** CPS' Amended Responses to Plaintiff's Second Document Requests, dated July 21, 2014, Request #78). Thus, CPS has produced all information conceivably related to vicarious liability.

**II.   Despite the overbreadth of Plaintiff's requests, CPS attempted to respond to Plaintiff's discovery.**

Despite Plaintiff's attempts to overreach in discovery, in the spirit of cooperation and in an effort to facilitate discovery, CPS attempted to answer Plaintiff's discovery requests. This, even after CPS had produced 5,349 documents, comprising of 29,654 pages regarding nearly every aspect of its business, including its advertising policies, contracts with third parties and communications with Defendants. Since receiving Plaintiff's Motion to Compel, which illuminated and provided some clarity to Plaintiff's previous vague requests, CPS supplemented its earlier responses to discovery. CPS supplemented its responses to the following Requests: Requests for Production 61, 63, 64-65, 67, 70-71, 73-80, 82-83 and 87-89; Requests for Admission 1-2, 7-12, 17-18 and 28; and Interrogatories 20-22, 23 and 25. (**Exhibit 4**, CPS' Amended Responses to Plaintiff's First Requests for Admissions, dated July 21, 2014; **Exhibit 5** CPS' Amended Responses to Plaintiff's Second Interrogatories, dated July 21, 2014, Exhibit 3, CPS' Amended Responses to Plaintiff's Second Document Requests, dated July 21, 2014). Respectfully, CPS suggests that these supplemental responses fulfill its discovery obligation and that these requests are no longer subject to the present Motion. CPS maintains that it properly objected to the remaining requests that are the subject of Plaintiff's Motion, and provides the following explanation supporting its objections.

**III.   CPS properly objected to discovery; its objections should not be overruled.**

**A.   Plaintiff's requested relief is not narrowly tailored.**

Plaintiff asks the Court for expansive relief such as overruling all CPS objections and forcing CPS to respond to the discovery. Such expansive request is not contemplated by Federal Rule of Civil Procedure nor does it assist the Court in sorting out this discovery battle. *Washington v. Thurgood Marshall Acad.,* 232 F.R.D. 6, 9 (D.D.C. 2005) ("Because plaintiff has completely failed to explain how defendant's answers were evasive, incomplete, or nonresponsive, it is impossible for the court to determine what information plaintiff wants

compelle.d"). *See also Daliflon, Inc. v. Allied Chem. Corp.,* 534 F.2d 221, 227 (10th Cir. 1976) (movant has burden of proving discovery response is incomplete). The overbreadth of Plaintiff's requested relief means Plaintiff has moved to compel responses to discovery CPS has already answered. *See* Response to Request for Production 72; Responses to Requests for Admission 15-16, 19-27, 29, 32 and 33; and Responses to Interrogatories 16, 18 and 24. (Exhibit 4, CPS' Amended Responses to Plaintiff's First Requests for Admissions; Exhibit 5, CPS' Amended Responses to Plaintiff's Second Interrogatories; Exhibit 3, CPS' Amended Responses to Plaintiff's Second Requests for Production). Plaintiff cites no authority for the proposition that he is entitled to compel a response merely because he does not like the answer given. Plaintiff's request to compel responses to these requests do nothing more than increase the burden of litigation and waste the Court's time. The Court should deny Plaintiff's request to compel responses to Request for Production 72; Requests for Admission 15-16, 19-27, 29, 32 and 33; and Interrogatories 16, 18 and 24.

**B.   Plaintiff's requested discovery regarding alter ego liability is irrelevant to this suit.**

Plaintiff served several requests to allegedly "uncover whether an alter ego relationship existed between CPS and its marketers." (Exhibit 3, CPS Amended Responses to Second Request for Production of Documents, Requests 62, 64-69, 83-103; Exhibit 4, CPS Amended Responses to Requests for Admission, Requests 30-31 and 33-37). Plaintiff has not asserted any alter ego claim, therefore, each of these requests are irrelevant. CPS objected to each of these requests on this basis, and the Court should uphold those objections, and refuse to compel CPS to provide answers to these requests.

The Federal Rules of Civil Procedure make clear that the parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26 Advisory Committee Notes to the 2000 Amendment. *See also Poole v. Centennial Imports, Inc.,* No. 2:12-cv-00647, 2013 WL 3832415 (D. Nev. July 23, 2013)

(noting Rule 26's limitation regarding discovery seeking information about claims not present in the suit). Plaintiff has never plead or asserted any alter ego theory of liability, thus, by his own admission, Plaintiff's requests regarding alter ego liability are wholly irrelevant. CPS' objection to those requests on that basis are proper. CPS respectfully requests the Court deny Plaintiff's request to compel responses to document requests 64-69, 83-103 and Requests for Admission 30-31 and 33-37.

Even if the Court determines these requests seek arguably relevant information, when viewed through the balancing test applied to Motions to Compel, it is clear that the usefulness of information regarding a claim that has never been asserted, and now cannot be asserted since the time to do so has passed, is far outweighed by the burden that will be imposed on CPS if it is required to produce documents containing commercially sensitive financial information regarding its ownership, funding and transactions.

Even if the Court determines that these requests seek relevant information, the Court should deny Plaintiff's request to compel responses to the alter ego requests for the following reasons:

With regard to Request for Admission 33, Plaintiff seeks information regarding whether Carey Brown "owns" CPS. The request is based on a faulty premise regarding CPS' ownership. It is incorrect to say that Mr. Brown, or any individual for that matter "owns" CPS. Rather, it is more accurate to state that CPS, as a corporation, is made up of shares; those shares are owned by Mr. Brown. CPS answered this Request for Admission in this manner; the Court should not compel it to respond to a Request that is based on an incorrect factual assumption.

CPS maintains that all requests regarding alter ego liability are irrelevant; but Requests for Admission 34-35 and Request for Production 93 are doubly-problematic in that they seek information regarding whether one non-party, Mr. Brown, owns other entities that are not CPS. It is questionable whether CPS, as a corporation, would even have knowledge regarding Mr.

7

Brown's ownership of other entities. Even if CPS could respond to these requests, CPS's responses about the ownership of entities that are not party to this suit are wholly irrelevant to the remaining question of liability, that is, did CPS control the transmission of the text message at issue in this case. The Court should deny Plaintiff's request to compel responses to Requests for Admission 34-35 and Request for Production 93.

Plaintiff has also served several document requests requesting information about a news article that has nothing to do with text messaging or the TCPA. (Exhibit 3, Document Requests 65-67 and 86-89). Therefore, the article, and any documents discussing the article, are wholly irrelevant to the present suit. The Court should refuse Plaintiff's request to compel CPS to produce documents regarding this article.

Similarly, Plaintiff requests documents related to a deposition given by Mr. Brown, a non-party, in another case that was not about the TCPA, several years ago. (Exhibit 3, Document Request 91). Any documents CPS may have about the deposition have nothing to do with whether CPS controlled the transmission of the text message at issue in this case.

Arguably in support of his alter ego theory, Plaintiff seeks documents related to all employees who may have worked for CPS. (Exhibit 3, Document Requests 68-69). Plaintiff has failed to narrowly tailor this request to information that is relevant to this suit. As stated, Plaintiff's request would force CPS to produce confidential information about its employees, most, if not all of which would have nothing to do with the allegations of this suit. The relevance of Plaintiff's request is further undercut by the fact that Plaintiff admits CPS did not send the text message at issue; therefore, it is not likely that any such individuals would have any relevant, admissible information to share.

A review of Plaintiff's "alter ego" requests demonstrates that these requests have nothing to do with any question of liability in this case, and therefore, are wholly irrelevant. The Court should deny Plaintiff's request to compel this information on this basis. Even if the Court believes some discovery requests regarding alter ego liability are permissible, as highlighted

8

above, these requests suffer from other deficiencies, which counter Plaintiff's demand that the Court compel a response to such requests.

### C.   Plaintiff seeks irrelevant information regarding SMS messaging.

Plaintiff has known for several months that CPS did not send the text message in question. Even so, Plaintiff served several requests regarding CPS' knowledge of text messaging in the industry. (Exhibit 4, Request for Admission 3-5). Such information is irrelevant to this suit, where all parties agree that CPS did not send the text message in question. Even if these questions were relevant, CPS cannot possibly respond to these requests for admission. For example, Plaintiff asks if any current or former employee was "aware" or if any such employee "instructed" any other employee regarding SMS messaging. (Exhibit 4, Request for Admission 3-5, 6, Exhibit 5, Interrogatories 17, 19). CPS cannot possibly know the whether its own employees where "aware" of certain circumstances; nor can it affirmatively admit or deny a statement regarding instructions any individual employee may have provided to any other party.

To respond to these requests would essentially require CPS interview all employees it may have ever employed. CPS cannot, without significant hardship, gain access to such individuals and cannot reasonably speculate as to their knowledge. Additionally, due to layoffs at the company, CPS' workforce has dwindled significantly, again making it difficult for CPS to inquire as to certain, now former, employees' knowledge for the time periods relevant to this lawsuit.

### D.   Plaintiff seeks information regarding third-parties; the Court cannot compel CPS to provide information it does not know.

Plaintiff seeks to compel CPS to provide information about actions third-parties did or did not take. (Exhibit 4, CPS' Response to First Requests for Admission 13-14; Exhibit 3, CPS Response to Second Requests for Production 84, 94 and 95). CPS has objected to these requests as an improper means of discovery; if Plaintiff desires information about those

82482635\V-1

entities, Plaintiff should either serve discovery requests on those entities; or seek the information through another manner. It is unduly burdensome to expect CPS to investigate not only its own actions, information and documents; but to also inquire into other parties. Request for Production 85 is similarly problematic in that it asks for information regarding why Leadpile refers to CPS in a certain manner. CPS cannot possibly produce information illuminating or describing why another entity, LeadPile, might view CPS in a certain manner.

The Court should reject Plaintiff's attempt to compel third-party information from CPS.

### E.  Plaintiff's requests are impossible to answer

CPS validly objected to some requests as incomprehensible. For example, Request for Admission 5 asks CPS to admit it never "rejected" a lead it "purchased" from LeadPile. The request makes no sense because CPS cannot reject a product at the same time it purchases said product. CPS noted this logical inconsistency to Plaintiff, but Plaintiff failed to clarify the request during the meet and confer process.

Likewise, Document Request 81 seeks all documents referred in providing answers to "requests" but does not adequately define what request to which it is referring. CPS assumes this is a typo, but nonetheless, CPS cannot possibly provide documents responsive to this request when the request itself is incomplete.

The Court should not force CPS to answer logically inconsistent, confusing and incomprehensible requests.

### III. Plaintiff is not entitled to sanctions

Sanctions are not mandatory when the responding party was substantially justified in avoiding the discovery. *Carrillo v. B&J Andrews Enters., LLC,* No. 2:11-cv-01450, 2012 WL 4894561 (D. Nev. Oct. 15, 2012). A party is substantially justified when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the response. *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). *See also* 8B Wright & Miller, *Fed. Prac. &*

82482635\V-1

*P.* § 2288 (3d ed. 2010) (an action is "substantially justified" if parties could reasonably differ on whether a party was bound to comply with the discovery).

As demonstrated above, CPS was substantially justified in its objections. CPS has even amended and supplemented some responses, in a good faith effort to participate in the discovery process. The Court should not award sanctions against CPS.

**IV. Conclusion**

WHEREFORE, for the foregoing reasons, CPS respectfully request the Court deny Plaintiff's Motion to Compel in whole; and grant CPS such other further relief as is just in the circumstances.

DATED: July 21, 2014                    DENTONS US LLP


       */s/ Steven Martin Aaron*
Steven Martin Aaron, Esq.
(*pro hac* vice) MO Bar # 41653
Gregory T. Wolf, Esq.
(*pro hac vice*) MO Bar #43717
4520 Main Street, 11th Floor
Kansas City, MO 64111-7100



LAW OFFICE OF HAYES & WELSH


       */s/ Martin L. Welsh*
Martin L. Welsh, Esq.
Nevada State Bar No. 8720
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074

***Attorneys for Defendant***
***Credit Payment Services, Inc.***

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that on July 21, 2014, I caused the above and foregoing document entitled CREDIT PAYMENT SERVICES, INC.'S OPPOSITION TO MOTION TO COMPEL to be served on all counsel of record through the Court's CM/ECF system.

/s/ *Steven Martin Aaron*
An Attorney for Defendants

82482635\V-1