# EXHIBIT A

Ryan W. Mitchem (TN #022196)
*Admitted Pro Hac Vice*
Michael K. Alston (TN #013697)
*Admitted Pro Hac Vice*
K. Chris Collins (TN #029109)
*Admitted Pro Hac Vice*
HUSCH BLACKWELL LLP
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
Telephone: (423) 755-2663

Patricia Lee (NV #8287)
Joseph R. Ganley (NV #5643)
HUTCHISON & STEFFEN
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

*Attorneys for Defendant LeadPile LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br> v. <br><br> CREDIT PAYMENT SERVICES, INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA, LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company, <br><br> Defendants. | Case No. 2:12-CV-00528-APG (PAL) <br><br> <u>JURY DEMANDED</u> <br><br> **DECLARATION OF K. CHRIS COLLINS IN SUPPORT OF LEADPILE'S MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. Andrew P. Gordon <br><br> Magistrate: Hon. Peggy A. Leen |

1

I, K. CHRIS COLLINS, hereby aver pursuant to 28 U.S.C. § 1746, that I have personal knowledge of all matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter.

1.     I am an adult over the age of 18 years of age and am a resident of the State of Tennessee.   I am an attorney representing Defendant LeadPile, LLC ("LeadPile") in the matter and am admitted *Pro Hac Vice* before this Court.   I am fully competent to make this Declaration, and make it in support of Defendant LeadPile's Motion for Summary Judgment.

2.     Attached to this Declaration as Exhibit 1 is a true and accurate copy of the LeadPile Lead Buyer Agreement with Cashfast123, LLC, dated August 13, 2009 (LEAD000001-4).

3.     Attached to this Declaration as Exhibit 2 is a true and accurate copy of excerpted portions of the deposition transcript of Michael Ferry, taken January 10, 2014, in this litigation.   This deposition was designated as Confidential pursuant to this Court's January 11, 2013 Stipulated Protective Order [Dkt. No. 32], as amended by the First Amended Stipulated Protective Order Entered by this Court January 30, 2014 [Dkt. No. 145] (the "Protective Order"), and as such, this document is being sought to be filed under seal.

4.     Attached to this Declaration as Exhibit 3 is a true and accurate copy of excerpted portions of the deposition transcript of James Gee, individually, and as principal of AC Referral Systems, taken January 23, 2014, in this litigation.   This deposition transcript was designated as confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

5.     Attached to this Declaration as Exhibit 4  is a true and accurate copy of a document dated June 28, 2011, entitled "Smart Credit Solution" Publishing Agreement between Click Media and AC Referral, CM000005 (Depo. Exhibit 9), provided by Defendant

Click Media in this litigation.  This document was designated as Confidential pursuant to the Protective Order, and as such, is being sought to be filed under seal.

6.    Attached to this Declaration as Exhibit 5 is a true and accurate copy of a document dated December 22, 2011, entitled "Alliance Capital" Publishing Agreement between Click Media and AC Referral, GEE000486-487, James Gee Deposition – Exhibit 31, produced by James Gee in response to subpoena in this litigation.

7.    Attached to this Declaration as Exhibit 6 is a true and accurate copy of the December 6, 2011 Text Message (330-564-6316), James Gee Deposition – Exhibit 34.

8.    Attached to this Declaration as Exhibit 8 is a true and accurate copy of excerpted portions of the deposition transcript of Plaintiff Flemming Kristensen, taken January 21, 2014, in this litigation.  This deposition transcript was designated as Confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

9.    Attached to this Declaration as Exhibit 9 is a true and accurate copy of an analysis performed by Shawn C. Davis, Deposition Exhibit 31 in this litigation.

10.    Attached to this Declaration as Exhibit 10 is a true and accurate copy of the expert witness Declaration of Lisa Snow, dated July 23, 2014.   This documents was designated as Attorneys Eyes Only pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was signed on October 24, 2014 in Chattanooga, Tennessee.

Respectfully submitted,

DATED:  October 24, 2014                **HUSCH BLACKWELL LLP**

                                        By:   _/s/K. Chris Collins_
                                              Ryan W. Mitchem (TN #022196)
                                              Michael K. Alston (TN #013697)
                                              K. Chris Collins (TN #029109)
                                              736 Georgia Avenue, Suite 300
                                              Chattanooga, Tennessee 37402

                                              Patricia Lee (NV #8287)
                                              Joseph R. Ganley (NV #5643)
                                              Peccole Professional Park
                                              10080 West Alta Drive, Suite 200
                                              Las Vegas, Nevada 89145

                                              _Attorneys for Defendant LeadPile LLC_

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I certify that on this 24th day of October, 2014, I caused the above and foregoing document entitled **DECLARATION OF K. CHRIS COLLINS IN SUPPORT OF LEADPILE'S MOTION FOR SUMMARY JUDGMENT** to be served as follows:

[  ]   by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada; and/or

[ X ]   Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, to be served **via electronic service**; or

[  ]   to be sent via e-mail;

[  ]   to be sent via facsimile; and/or

[  ]   to be hand-delivered

to all attorneys of record according to the Court's CM/ECF system.

*s/K. Chris Collins*

## INDEX OF EXHIBITS

| | |
|---|---|
| EXHIBIT A | Declaration of K. Chris Collins in Support of LeadPile LLC's Motion for Summary Judgment and Memorandum of Points and Authorities, dated October 24, 2014 |
| EXHIBIT 1 | LeadPile Lead Buyer Agreement with Cashfast123, LLC, dated August 13, 2009 (LEAD000001-4) |
| EXHIBIT 2 | Excerpts from Deposition Transcript of Michael Ferry, taken January 10, 2014:<br>63:11-64:20<br>67:13-68:9<br>69:13-25<br>70:1-72:16<br>76:2-21<br>78:4-11<br>89:16-22<br>143:21-25 |
| EXHIBIT 3 | Excerpts from Deposition Transcript of James Gee, taken January 23, 2014:<br>18:16-21<br>23:10-24:21<br>30:8-20<br>31:2-32:10<br>53:3-24<br>56:6-20-57:14<br>60:21-61:11<br>68:2-14<br>69:4-18<br>70:3-20<br>88:21-89:9<br>124:5-22<br>125:3-126:2<br>130:17-131:3<br>131:7-18<br>149:24-150:3<br>150:9-151:5<br>165:14-18<br>188:21-189:16 |
| EXHIBIT 4 | "Smart Credit Solution" Publishing Agreement between Click Media and AC Referral, dated June 28, 2011, GEE000482-483, Gee Depo. – Exhibit 9 |
| EXHIBIT 5 | "Alliance Capital" Publishing Agreement between Click Media and AC Referral, dated December 22, 2011, GEE000486-487, Gee Depo – Exhibit 31 |
| EXHIBIT 6 | December 6, 2011 text message (330-564-6316), Gee Depo – Exhibit 34 |

| EXHIBIT 7 | Omitted |
|---|---|
| EXHIBIT 8 | Excerpts from Deposition Transcript of Plaintiff Flemming Kristensen, taken January 21, 2014:<br>27:11-29:21<br>32:17-33:8<br>73:1-9<br>102:12-23<br>125:22-127:2<br>152:13-15<br>167:8-19 |
| EXHIBIT 9 | Analysis performed by Shawn C. Davis |
| EXHIBIT 10 | Declaration of Lisa Snow, dated July 23, 2014 |

# EXHIBIT 1

Leadpile Lead Buyer Agreement

This Lead Buyer Agreement ("Agreement") is made by between Cashfast123 LLC, a Delaware limited liability company ("Leadpile"), and you ("You"). Leadpile operates a "Lead Marketplace" on its website at www.leadpile.com (the "Website").

1. Introduction

The Lead Marketplace facilitates the exchange of information about potential customers who have indicated an interest in a particular type of goods or services (each, a "Lead"). A "Lead" is defined as a specific request made by a consumer for a specific product or service (main request). A "co-registration" or "secondary request" lead is defined as a specific request made by a consumer for a different product or service, other than the main request, placed at the same time with the main request. Participants in the Lead Marketplace include "Lead Buyers" and "Lead Sellers." Each "Lead Seller" uses the Lead Marketplace to market and sell Leads. Each "Lead Buyer" uses the Lead Marketplace to search for and/or purchase Leads from Lead Sellers. Lead Buyers pay a transaction fee to Leadpile for each purchase of a Lead from a Lead Seller.

2. Participation in Programs.

You agree that, if you are accepted by Leadpile as a Lead Buyer (in Leadpile's sole and absolute discretion), you will abide by the terms and conditions, attached as Exhibit A, of this Lead Buyer Agreement, and any other surviving agreement between you and Leadpile, e.g., the Leadpile.com Terms of Use Agreement. So long as you remain a member of the Lead Buyer program, you will have the opportunity to purchase Leads from Lead Sellers subject to the terms and conditions of this Agreement and other rules and requirements set forth by Leadpile on the Website.

Details of a Lead Buyer program will be available through the Website, including without limitation rules and requirements governing the use of Leads, and the fee(s) charged by Leadpile for your participation in and use of the Lead Marketplace.

3. Use of Leads

You agree that you will use Leads consistent with the terms and conditions of this Agreement, the rules posted on the Website, and all applicable laws and regulations. You further agree that you will not knowingly allow any person or entity to misuse Leads, and will alert Leadpile immediately upon discovering any misuse or potential misuse of any Lead.

THE MISUSE OF LEADS MAY RESULT IN THE TERMINATION OF YOUR ACCOUNT, FORFEITURE OF ALL PURCHASED LEADS, CIVIL ACTION, CRIMINAL CHARGES, AND/OR ANY OTHER REMEDY AVAILABLE IN EQUITY OR AT LAW.

4.   Representations and Warranties.

**CONFIDENTIAL**   LEAD-000001

YOU REPRESENT, WARRANT, COVENANT AND AGREE THAT (A) YOU ENTER INTO THIS AGREEMENT WITH THE INTENT TO USE THE LEADS AND THE LEAD MARKETPLACE CONSISTENT WITH THE TERMS OF THIS AGREEMENT, ETHICAL BUSINESS PRACTICES, AND ALL APPLICABLE LAWS AND REGULATIONS; (B) YOU HAVE THE FULL RIGHT, POWER AND AUTHORITY TO ENTER INTO THIS AGREEMENT; (C) THE EXECUTION OF THIS AGREEMENT BY YOU, AND YOUR USE OF THE LEADS DO NOT AND WILL NOT VIOLATE ANY LAW OR REGULATION, OR ANY AGREEMENT TO WHICH YOU ARE A PARTY; AND (D) YOU WILL NOT ENGAGE IN OR FACILITATE THE USE OF INDISCRIMINATE ADVERTISING OR UNSOLICITED COMMERCIAL EMAIL, OR OTHERWISE FAIL TO COMPLY WITH THE CAN SPAM ACT OF 2003 OR ANY SUCCESSOR LEGISLATION, OR ANY OTHER LAW OR REGULATION THAT GOVERNS MARKETING OR COMMUNICATIONS. YOU ACKNOWLEDGE THAT LEADPILE (A) MAKES NO OTHER REPRESENTATIONS, WARRANTIES OR COVENANTS NOT SET FORTH IN THIS AGREEMENT; AND (B) DOES NOT INVESTIGATE OR OTHERWISE VERIFY LEADS SOLD BY LEAD SELLERS.

## 5. Account Information.

You agree to provide Leadpile.com with accurate information (e.g., contact information, detailed corporate information, promotional methods, etc.) as set forth or required on the Website, and to maintain the information associated with your Lead Buyer account such that it remains accurate and current at all times.

## 6. Indemnification.

YOU AGREE TO INDEMNIFY, DEFEND AND HOLD LEADPILE AND OUR PARTNERS, AGENTS, OFFICERS, DIRECTORS, EMPLOYEES, SUBCONTRACTORS, SUCCESSORS, ASSIGNS, THIRD PARTY SUPPLIERS OF INFORMATION, ATTORNEYS, ADVERTISERS, SERVICE PROVIDERS, AND AFFILIATES HARMLESS FROM ANY LIABILITY, LOSS, CLAIM AND EXPENSE, INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES, ARISING OUT OF YOUR BREACH OF THIS AGREEMENT, OR YOUR USE OF THE LEADS OR THE WEBSITE.

## 7. Arbitration.

Any controversy or legal claim arising out of or relating to this Agreement or our services, excluding legal action taken by us to collect or recover damages for, or obtain any injunction relating to intellectual property, the Website, or the use of any Lead, shall be settled solely by binding arbitration in accordance with the commercial arbitration rules of JAMS OR THE AMERICAN ARBITRATION ASSOCIATION. ANY SUCH CONTROVERSY OR CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND SHALL NOT BE CONSOLIDATED IN ANY ARBITRATION WITH ANY CLAIM OR CONTROVERSY OF

ANY OTHER PARTY. The arbitration shall be conducted in Phoenix, Arizona and judgment on the arbitration award may be entered into any court having jurisdiction thereof. Either party may seek any interim or preliminary relief from a court of competent jurisdiction in Phoenix, Arizona necessary to protect the rights or property of you and us pending the completion of arbitration. Each party shall bear one-half of the arbitration fees and costs incurred through JAMS OR THE AMERICAN ARBITRATION ASSOCIATION, and each party shall bear its own legal fees and associated costs.

8. Warranty Disclaimer.

YOU EXPRESSLY AGREE THAT YOUR USE OF THE LEADS, THE LEAD MARKETPLACE, AND THE WEBSITE IS AT YOUR OWN RISK. YOU FURTHER AGREE THAT THE LEADS, THE LEAD MARKETPLACE, AND THE WEBSITE ARE AVAILABLE ON AN "AS IS" "AS AVAILABLE" BASIS, WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF ACCURACY, NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. LEADPILE MAKES NO WARRANTY OR REPRESENTATION WHATSOEVER REGARDING THE LEADS, THE LEAD MARKETPLACE, THE WEBSITE, OR ANY LEAD SELLER.

9. Limitation of Liability.

LEADPILE DISCLAIMS ALL LIABILITY, WHETHER BASED IN CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE, FOR DAMAGES OF ANY KIND (INCLUDING WITHOUT LIMITATION DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES) IN ANY WAY ARISING FROM (A) THE USE OR DISCLOSURE OF ANY LEAD; (B) ANY TRANSACTION OR COMMUNICATION BETWEEN YOU AND A LEAD SELLER; OR (C) THE FUNCTIONALITY OR OPERATION (OR FAILURE TO FUNCTION OR OPERATE) OF THE LEAD MARKETPLACE OR THE WEBSITE, EVEN IF LEADPILE IS EXPRESSLY ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. WITHOUT LIMITING THE FOREGOING, LEADPILE SHALL NOT BE LIABLE FOR DAMAGES EXCEEDING THE AMOUNT PAID BY YOU TO LEADPILE IN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEEDING THE EVENT THAT GAVE RISE TO THE DAMAGES.

WITHOUT LIMITING THE FOREGOING, YOU ACKNOWLEDGE AND AGREE THAT LEADPILE WILL NOT BE LIABLE FOR ANY DAMAGES ARISING FROM OR IN CONNECTION WITH ANY TRANSACTIONS BETWEEN LEAD BUYERS AND LEAD SELLERS, OR FOR ANY INFORMATION APPEARING ON LEAD BUYERS' OR LEAD SELLERS' WEBSITES.

10. Miscellaneous

The terms and conditions of this Agreement represent the complete, final and exclusive agreement between Leadpile and you, and supersede all prior agreements, representations and understandings with the exception of the Leadpile.com Terms of Use Agreement and, if applicable, the Lead Seller Agreement. Notwithstanding the foregoing, if you entered into a separate agreement with Leadpile governing your use of the Lead Marketplace, then that agreement (the "Negotiated Agreement") will survive, and only those provisions of this Agreement that do not conflict with the Negotiated Agreement will apply. This Agreement may be terminated by Leadpile at any time for any reason or no reason. Leadpile reserves the right to change the Lead Marketplace or the Website at any time with or without notice. If any provision of this Agreement conflicts with any other rule, regulation, or agreement, the terms and conditions of this Agreement shall govern. This Agreement shall be treated as though it were executed and performed in Phoenix, Arizona, and shall be governed by and construed in accordance with the laws of the State of Arizona (without regard to conflict of law principles). You agree that any legal action or proceeding between Leadpile and you permitted by the arbitration provision herein shall be brought exclusively in a federal or state court of competent jurisdiction sitting in Phoenix Arizona. Any cause of action or claim you may have with respect to this Agreement or Leadpile.com must be commenced within six (6) months after the claim or cause of action arises or such claim or cause of action shall be barred. The language in this Agreement shall be interpreted as to its fair meaning and not strictly for or against any party. This Agreement and all incorporated agreements and your information may be automatically assigned by us in our sole discretion to a third party in the event of an acquisition, sale, merger, or assignment of assets. Should any part of this Agreement be held invalid or unenforceable, that portion shall be construed consistent with applicable law and the remaining portions shall remain in full force and effect. To the extent that anything in or associated with the Website is in conflict or inconsistent with this Agreement, this Agreement shall take precedence. Our failure to enforce any provision of this Agreement shall not be deemed a waiver of such provision nor of the right to enforce such provision. Our rights under this Agreement shall survive any termination of this Agreement.

*IN WITNESS WHEREOF,* the Parties have duly executed this document as of the date signed below.

LEADPILE

By: _____

Print: Eugen Ilie

Title: Marketing Director

Date: 08/13/2009

CREDIT PAYMENT SERVICES

By: _____

Print: _____

Title: _____

Date: _____

CONFIDENTIAL          LEAD-000004

# EXHIBIT 2

# [Filed Under Seal]

# EXHIBIT 3

# [Filed Under Seal]

# EXHIBIT 4

# [Filed Under Seal]

# EXHIBIT 5



**Click Media**
1240 Johnson Ferry Place, Suite B-75
Marietta, GA 30068

## Publisher Information

| | |
|---|---|
| Agency Name: | Ac Referral Systems |
| Company Name: | Ac Referral Systems |
| Online Name: | Ac Referral Systems |
| Tax ID: | 26-3133831 |
| Tax Classification: | |

| | Publisher Contact | Billing Contact | Technical Contact |
|---|---|---|---|
| Contact Person: | Michael Ferry | | |
| Phone: | (602) 703-9154 | | |
| Mobile: | | | |
| Fax: | | | |
| Email: | Mike.ferry@360datamanagement.com | | |
| Address1: | 25935 Detroit Rd. | | |
| Address2: | Suite 110 | | |
| City: | Westlake | | |
| State: | OH | | |
| Zip: | 44145 | | |

## Program Details

| Program / Element | Start Date | Volume | Pricing (CPA) | Cost per Action | Cost |
|---|---|---|---|---|---|
| Alliance Capital | ASAP | Open | CPA | $52.00 | |
| Alpine Select Lenders | ASAP | Open | CPA | $52.00 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | **Total Cost of Contract:** | TBD |
| Note: | Click Media will pass the data collected on the Alliance Capital and Alpine Select Lenders back to Ac Referral Systems. | | | | |

## Payment Details

Invoicing weekly Net 7 days based on Click Media's system.

EXHIBIT

3/

GEE000486

## Terms & Conditions

1. Term. The term of this Agreement (the "Term") shall begin and shall become effective as of the date above and remain in force until the test number of applications is received or until terminated by either party as provided by this Agreement.

2. Advertisements: Only those advertisements provided to publisher by Click Media shall be used.

3. SMS Messaging: Publisher and its Affiliates warrant that all traffic sent to Click Media's offer and all messages sent by Publisher and its affiliates, via SMS messaging, are in compliance with all Federal, State and local regulations, including but not limited to the Telephone Consumer Protection Act of 1991(TCPA). Failure to comply with this section shall result in Publishers account being immediately paused and termination of this agreement, without prior notice. Additionally, Publisher's right to payment on any outstanding amounts due under an Insertion Order shall be forfeited

4. For CPA Campaigns: An action is defined as one of the following receipt of a valid consumer application and an acceptance received via server real time response or the firing of a pixel to the Click Media server and subsequent firing of a publisher pixel.

5. Indemnity: The parties agree , at their own expense, to indemnify, defend and hold harmless the others officers, directors, employees, affiliates, agents, contractors, and its attorneys from and against any claims, actions, liabilities, damages, costs or expenses, including attorneys' fees and costs incurred in defending against the same based on or arising from any representation, warranty, or covenant.

6. General Provisions: This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware.

7. This contract may be terminated, with or without cause by either party, upon forty-eight (48) hours prior written (email/fax) notice to the non-terminating party.  In this situation Click Media agrees to remove all marketing materials as quickly as possible. Publisher understands that certain types of marketing need time to "trickle out".  Publisher agrees to accept applications for approval under the terms of this agreement for a period of forty-eight (48) hours after termination notice is given.

The provisions of this Agreement may not be amended, supplemented, waived or changed orally, but only by a writing signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought and making specific reference to this Agreement.  All of the terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective legal representatives, successors and permitted assigns.

IN WITNESS WHEREOF, the parties hereby execute this Agreement as of the day and year first above written.

Ac Referral Systems

By: _____

Name: _James R. Gee_____

Title: _President / Owner____

Date: _12 / 22 / 11_____

Click Media, dba

By: _____

Name: _THOMAS BORSOS_____

Title: _VP FINANCE_____

Date: _12-22-11_____

GEE000487

# EXHIBIT 6



No Service   20:44

Messages   +1 (330) 564-6316   Edit

Text Message
Dec 6, 2011 12:10

Do You Need up to $5000 Today? Easy Quick and All Online at: www.lend5k.com 24 Month Repay, All Cred. Ok Reply STOP 2 End

STOP   Send

Text Message

EXHIBIT
34
PENGAD 800-631-6989

# EXHIBIT 7

# [Omitted]

# EXHIBIT 8

# [Filed Under Seal]

# EXHIBIT 9

EXHIBIT

| LIST | ORIG# | ALL MATCHES (LEADPILE HOME, PHONE OR WORK_PHONE MATCHES TMOBILE CALLED_NUMBER, NOT DETERMINED BY DATE/TIME) | ALL MATCHES (LEADPILE HOME_PHONE OR WORK_PHONE MATCHES TMOBILE CALLED_NUMBER WHERE LEADPILE TIMESTAMP LATER THAN TMOBILE TIMESTAMP) | UNIQUE MATCHES (LEADPILE HOME_PHONE OR WORK_PHONE MATCHES TMOBILE CALLED_NUMBER WHERE LEADPILE TIMESTAMP LATER THAN TMOBILE TIMESTAMP) |
|---|---|---|---|---|
| tmobile1 | 3305646316 | 127 | 19 | 18 |
| tmobile2 | 9045149943 | 66 | 43 | 41 |
| tmobile3 | 2092000084 | 614 | 161 | 123 |
| tmobile4 | 8088995389 | 285 | 73 | 71 |
| tmobile5 | 2072165082 | 13 | 13 | 13 |
| tmobile6 | 2082542934_5774-6303 | 6 | 6 | 6 |
| tmobile7 | 2163353884 | 45 | 15 | 15 |
| tmobile8 | 2168562860 | 1 | 1 | 1 |
| tmobile9 | 2512296791 | 33 | 11 | 11 |
| tmobile10 | 3162815791 | 29 | 11 | 11 |
| tmobile11 | 4784619106 | 9 | 8 | 8 |
| tmobile12 | 5154416783 | 8 | 4 | 4 |
| tmobile13 | 5157717539 | 4 | 4 | 4 |
| tmobile14 | 7202884752 | 79 | 65 | 52 |
| tmobile15 | 8633991748 | 46 | 30 | 28 |

# EXHIBIT 10

# [Filed Under Seal]