# EXHIBIT 1

Ryan W. Mitchem (TN #022196)
*Admitted Pro Hac Vice*
Michael K. Alston (TN #013697)
*Admitted Pro Hac Vice*
K. Chris Collins (TN #029109)
*Admitted Pro Hac Vice*
HUSCH BLACKWELL LLP
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
Telephone: (423) 755-2663

Patricia Lee (NV #8287)
Joseph R. Ganley (NV #5643)
HUTCHISON & STEFFEN
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

*Attorneys for Defendant LeadPile LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br> v. <br><br> CREDIT PAYMENT SERVICES, INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA, LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company, <br><br> Defendants. | Case No. 2:12-CV-00528-APG (PAL) <br><br> <u>JURY DEMANDED</u> <br><br> **DECLARATION OF K. CHRIS COLLINS IN SUPPORT OF LEADPILE'S MOTION FOR TERMINATING SANCTIONS, OR ALTERNATIVELY, EVIDENTIARY SANCTIONS FOR INTENTIONAL SPOLIATION OF EVIDENCE** <br><br> Judge: Hon. Andrew P. Gordon <br><br> Magistrate: Hon. Peggy A. Leen |

I, K. CHRIS COLLINS, hereby aver pursuant to 28 U.S.C. § 1746, that I have personal knowledge of all matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter.

1.      I am an adult over the age of 18 years of age and am a resident of the State of Tennessee.  I am an attorney representing Defendant LeadPile, LLC ("LeadPile") in the matter and am admitted *Pro Hac Vice* before this Court.  I am fully competent to make this Declaration, and make it in support of Defendant LeadPile's Motion for Terminating Sanctions or, Alternatively, Evidentiary Sanctions for Intentional Spoliation of Evidence.

2.      Attached to this Declaration as Exhibit A is a true and accurate copy of excerpted portions of the deposition transcript of James Gee, individually, and as principal of AC Referral Systems, taken January 23, 2014, in this litigation.  This deposition transcript was designated as confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

3.      Attached to this Declaration as Exhibit B is a true and accurate copy of excerpted portions of the deposition transcript of Michael Ferry, taken January 10, 2014, in this litigation.  This deposition was designated as Confidential pursuant to this Court's January 11, 2013 Stipulated Protective Order [Dkt. No. 32], as amended by the First Amended Stipulated Protective Order Entered by this Court January 30, 2014 [Dkt. No. 145] (the "Protective Order"), and as such, this document is being sought to be filed under seal.

4.      Attached to this Declaration as Exhibit C is a true and accurate copy of Exhibit 38: E-mail Exchange between AC Referral, 360 Date Management, and ClickMedia, dated April 2, 2012.  This e-mail exchange was designated as confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

5.      Attached to this Declaration as Exhibit D is a true and accurate copy of excerpted portions of the deposition transcript of Plaintiff Flemming Kristensen, taken January 21, 2014, in this litigation.  This deposition transcript was designated as Confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

6.      Attached to this Declaration as Exhibit E is a true and accurate copy of Edelson's Client Retainer Agreement/Engagement Letter with Plaintiff, dated February 9, 2012.  This agreement was designated as Confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

7.      Attached to this Declaration as Exhibit F is a true and accurate copy of purchase order for new hard drive, dated February 17, 2012.  This purchase order was designated as Confidential pursuant to the Protective Order, and as such, this document is being sought to be filed under seal.

8.      Attached to this Declaration as Exhibit G is a true and accurate copy of Request for Production No. 15 from LeadPile's Second Set of Requests for Production.

9.      Attached to this Declaration as Exhibit H is a true and accurate copy of Plaintiff's Response to Requests for Production No. 15 from LeadPile's Second Set of Request for Production.

10.      Attached to this Declaration as Exhibit I is a true and accurate copy of LeadPile's Rule 37 Letter to Plaintiff, dated July 22, 2014.

11.      Attached to this Declaration as Exhibit J is a true and accurate copy of Pioneer's letter to Plaintiff, dated December 20, 2012.

12.      Attached to this Declaration as Exhibit K is a true and accurate copy of Pioneer's letter to Plaintiff, dated January 19, 2014.

13.     Attached to this Declaration as Exhibit L is a true and accurate copy of Pioneer's letter to Plaintiff, dated February 21, 2014.

14.     Attached to this Declaration as Exhibit M is a true and accurate copy of Pioneer's letter to Plaintiff, dated March 7, 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was signed on October 24, 2014 in Chattanooga, Tennessee.

Respectfully submitted,

DATED:  October 24, 2014                    **HUSCH BLACKWELL LLP**

By:     _s/K. Chris Collins_____
Ryan W. Mitchem (TN #022196)
Michael K. Alston (TN #013697)
K. Chris Collins (TN #029109)
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402

Patricia Lee (NV #8287)
Joseph R. Ganley (NV #5643)
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145

*Attorneys for Defendant LeadPile LLC*

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I certify that on this 24th day of October, 2014, I caused the above and foregoing document entitled **DECLARATION OF K. CHRIS COLLINS IN SUPPORT OF LEADPILE'S MOTION FOR TERMINATING SANCTIONS OR, ALTERNATIVELY, EVIDENTIARY SANCTIONS FOR INTENTIONAL SPOLIATION OF EVIDENCE** to be served as follows:

[ ]     by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada; and/or

[ X ]     Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, to be served **via electronic service**; or

[ ]     to be sent via e-mail;

[ ]     to be sent via facsimile; and/or

[ ]     to be hand-delivered

to all attorneys of record according to the Court's CM/ECF system.

*s/K. Chris Collins*

### INDEX OF EXHIBITS

| | |
|---|---|
| EXHIBIT 1 | Declaration of K. Chris Collins in Support of LeadPile LLC's Motion for Terminating Sanctions or, Alternatively, Evidentiary Sanctions for Intentional Spoliation of Evidence |
| EXHIBIT A | Excerpts from Deposition Transcript of James Gee/AC Referral, taken January 23, 2014:  pp. 23-24 |
| EXHIBIT B | Excerpts from Deposition Transcript of Michael Ferry/360 Data Management, taken January 10, 2014: pp. 55-58, 63-64, 128 |
| EXHIBIT C | Exhibit 38: E-mail Exchange Between AC Referral, 360 Date Management, and ClickMedia, dated April 2, 2012 |
| EXHIBIT D | Excerpts From Deposition Transcript of Plaintiff Flemming Kristensen, taken January 21, 2014: pp. 83, 147-148, 151-152, 167, 180, 204-208 |
| EXHIBIT E | Edelson's Client Retainer Agreement/Engagement Letter, dated February 9, 2012 |
| EXHIBIT F | Plaintiff's Purchase Order For New Hard Drive Dated February 17, 2012 |
| EXHIBIT G | Leadpile's Second Set of Requests for Production (Request No. 15) |
| EXHIBIT H | Plaintiff's Responses To Leadpile's Second Set of Requests For Production (Request No. 15) |
| EXHIBIT I | Leadpile's Rule 37 Letter to Plaintiff, dated July 22, 2014 |
| EXHIBIT J | Pioneer's Letter to Plaintiff, dated December 20, 2012 |
| EXHIBIT K | Pioneer's Letter to Plaintiff, dated January 19, 2014 |
| EXHIBIT L | Pioneer's Letter to Plaintiff, dated February 21, 2014 |
| EXHIBIT M | Pioneer's Letter to Plaintiff, dated March 7, 2014 |

# EXHIBIT A

# [Filed Under Seal]

# EXHIBIT B

# [Filed Under Seal]

# EXHIBIT C

# [Filed Under Seal]

# EXHIBIT D

# [Filed Under Seal]

# EXHIBIT E

# [Filed Under Seal]

# EXHIBIT F

# [Filed Under Seal]

# EXHIBIT G

**REQUEST FOR PRODUCTION NO. 15**

Please produce all Documents Relating To internet websites you visited from November 1, 2011 to December 31, 2011. This Request includes, but is not limited to, files on your laptop hard drive or your desktop hard drive such as cookies, cache files and temporary internet files.

**RESPONSE:** Plaintiff objects to this Request on the basis that it is overly broad, as it seeks documents relating to potentially thousands of webpages Plaintiff viewed while browsing the World Wide Web that have absolutely no connection to his claims or any defenses in this lawsuit. As such, Plaintiff objects on the basis that this Request seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and is intended for no other purpose than to harass Plaintiff and invade his privacy. Finally, Plaintiff objects on the grounds that the documents requested are in the possession of third-parties over whom Defendant has greater or equal access.

**REQUEST FOR PRODUCTION NO. 16**

Please produce all Documents Relating To goods or services you purchased on or from any internet website from November 1, 2011 to December 31, 2011. This Request includes, but is not limited to, credit card statements or PayPal statements showing when such goods or services were purchased and from whom they were purchased.

**RESPONSE:** Plaintiff objects to this Request on the basis that it is overly broad and unduly burdensome (it seeks all documents relating to potentially dozens of purchases, regardless of the nature of the purchase, Plaintiff made during a two month period over two years ago). Plaintiff also objects on the grounds that this Request seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that this Request is intended for no other purpose than to harass Plaintiff and invade his privacy.

Subject to and without waiving this objection, Plaintiff will produce any responsive, nonprivileged documents in his possession, custody or control.

-4-

# EXHIBIT H

1   **REQUEST FOR PRODUCTION NO. 15**

2       Please produce all Documents Relating To internet websites you visited from November 1,

3   2011 to December 31, 2011. This Request includes, but is not limited to, files on your laptop hard

4   drive or your desktop hard drive such as cookies, cache files and temporary internet files.

5       **RESPONSE:** Plaintiff objects to this Request on the basis that it is overly broad, as it seeks

6   documents relating to potentially thousands of webpages Plaintiff viewed while browsing the World

7   Wide Web that have absolutely no connection to his claims or any defenses in this lawsuit.  As

8   such, Plaintiff objects on the basis that this Request seeks documents that are neither relevant nor

9   reasonably calculated to lead to the discovery of admissible evidence, and is intended for no other

10   purpose than to harass Plaintiff and invade his privacy. Finally, Plaintiff objects on the grounds that

11   the documents requested are in the possession of third-parties over whom Defendant has greater or

12   equal access.

13   **REQUEST FOR PRODUCTION NO. 16**

14       Please produce all Documents Relating To goods or services you purchased on or from any

15   internet website from November 1, 2011 to December 31, 2011. This Request includes, but is not

16   limited to, credit card statements or PayPal statements showing when such goods or services were

17   purchased and from whom they were purchased.

18       **RESPONSE:** Plaintiff objects to this Request on the basis that it is overly broad and unduly

19   burdensome (it seeks all documents relating to potentially dozens of purchases, regardless of the

20   nature of the purchase, Plaintiff made during a two month period over two years ago). Plaintiff also

21   objects on the grounds that this Request seeks documents that are neither relevant nor reasonably

22   calculated to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that

23   this Request is intended for no other purpose than to harass Plaintiff and invade his privacy.

24       Subject to and without waiving this objection, Plaintiff will produce any responsive,

25   nonprivileged documents in his possession, custody or control.

26

27

28

-4-

# EXHIBIT I

# HUSCH BLACKWELL

Ryan Mitchem
Partner

736 Georgia Avenue, Suite 300
Chattanooga, TN  37402
Direct:  423.755.2663
Fax: 423.266.5499
Ryan.Mitchem@huschblackwell.com

July 22, 2014

**VIA E-MAIL (jochoa@edelson.com)**
John Ochoa, Esq.
Edelson LLC
350 North LaSalle, Suite 1300
Chicago, IL  60657

Re:   **Flemming Kristensen v. Credit Payment Services, Inc., et al.**
       **Case No. 2:2012-cv-00528, In the United States District Court, District of**
       **Nevada**

Dear John:

We have had an opportunity to review your client's responses to LeadPile LLC's discovery requests and have found many of your client's responses to be inadequate. This letter serves as LeadPile LLC's attempt to meet and confer on the deficiencies found in your client's responses, as required by the Federal Rules of Civil Procedure (the "Federal Rules").

Throughout this litigation, you have pushed and pushed for the Defendants to produce thousands of pages of irrelevant documents and information. At the same time, you continue to consistently stonewall the Defendants' attempts to collect extremely relevant documents and information through targeted discovery requests. Your client's responses to the subject LeadPile LLC written discovery illustrates the stark contrast between your demands and your cooperation in discovery.

This letter addresses some of your client's inadequate responses to LeadPile LLC's discovery requests. It is our hope that you will amend and/or supplement these responses without the need to involve the Court.

**Interrogatories**

Interrogatory No. 11: This Interrogatory asks your client to identify every loan for which he has applied since he acquired the cell phone number to which he alleges the unauthorized text was sent. In response, your client objects that this Interrogatory is "vague, overbroad, and harassing to the extent it requests [him] to '...Identify every loan for which [he] has applied...'" Your client also objects that his "loan application history is irrelevant to the subject matter of this

John Ochoa, Esq.
July 22, 2014
Page 2

lawsuit, specifically as to the question of whether he received an unsolicited text message from Defendants." After stating his objections, your client responds that "he has not applied for a loan from any Defendants or for any 'payday' or short-term loan."

First, the objection that this Interrogatory is harassing seems at odds with your client's ultimate response that he has no loans to identify. Second, your client's ultimate "response" is non-responsive. The Interrogatory clearly asks your client to identify every loan, not just "a loan from any Defendants" or "any 'payday' or short-term loan." Finally, with regards to your client's relevance objection, it has been made clear that consent is an essential issue in this case. The information requested in this Interrogatory is specifically tailored to that issue.

We recognize that your client has testified that he never consented. However, this testimony is more than doubtful given his apparent consent with respect to numerous online purchases and inquiries (for which he was provided several e-mails). This testimony is brought even further into doubt by the numerous other advertising text messages that have been acknowledged as being on your client's cell phone – advertisements which you have also refused to allow anyone to see. Michael Ferry's testimony confirmed that, if your client did consent – and we have sufficient reason to believe that he did – he did so online or in connection with a financial transaction. Thus, the information relating to every single loan for which your client has applied – online or otherwise, short-term or otherwise, payday or otherwise – is highly relevant to this litigation. We ask that you supplement your client's response and provide all information responsive to this Interrogatory.

**Requests for Production**

Request for Production No. 9: This Request asks your client to produce all documents relating to every loan for which he has applied from the time he acquired the cell phone number that he alleges the unauthorized text was sent. This Request is obviously similar to Interrogatory No. 11, and your client has responded in kind – he states the exact same objections and provides the same ultimate response. For the reasons stated above, as well as those contained in the next paragraph, your client's response is insufficient.

As noted above, the documents relating to any loan your client sought during the referenced time period are absolutely relevant to his claims in this case, including his assertion that he did not consent. Further, if you have not reviewed these loan documents for consent information, you may have negligently misrepresented your client's claims to the Court. For all you know, his consent to receive the alleged unauthorized text messages is contained in those documents. We ask that you supplement your client's response and produce all documents responsive to this Request.

Request for Production No 10: This Request asks your client to produce all documents relating to every communication he had with a third party relating to the allegations he set forth

John Ochoa, Esq.
July 22, 2014
Page 3

in his Complaint.  Your client's response contains numerous baseless objections and a vague reference "to the production of documents to all Defendants made on August 29, 2013."  It is nonsensical for an objection based on relevance to be made to a request seeking documents relating to communications concerning the allegations contained in the Complaint.  Such communications are, by definition, relevant.

We ask your client to supplement his response to this Request by specifically identifying the Bates number(s) of the documents to which he is referring in the second to last sentence of his response to this Request.

Request for Production No. 11:  This Request asks your client to produce all documents relating to the purchase of a new hard drive for his laptop and refers your client to Page 167, Lines 3-19, of his deposition for reference.  In response, your client again asserts baseless objections and states only that he "will produce" responsive documents.  As you know, such a response is inadequate under applicable law.  Please inform us when your client will complete his production, and specifically identify by Bates number(s) the documents you will be producing and/or have already produced that are responsive to this Request.

Request for Production No. 12:  This Request asks your client to produce all documents relating to the purchase of new RAM for his laptop and refers your client to Page 167, Lines 3-19, of his deposition for reference.  In response, your client again asserts baseless objections and states only that he "will produce" responsive documents.  As you know, such a response is inadequate under applicable law.  Please inform us when your client will complete his production, and specifically identify by Bates number(s) the documents you will be producing and/or have already produced that are responsive to this Request.

Request for Production No. 15:  This Request asks your client to produce all documents relating to internet websites he visited from November 1, 2011 to December 31, 2011.  This is a short two-month period.  Your client's response to this Request is tantamount to not responding at all.  *See Joseph v. Las Vegas Metro. Police Dep't*, 2010 WL 3238992, at *5 (D. Nev. Aug. 13, 2010) ("An evasive or incomplete response must be treated as a failure to respond.  Rule 37(a)(4).") (citing Fed. R. Civ. P. 37(a)(4)).  Additionally, your client's objections to the relevance of this Request are baseless.  As explained in greater detail above, the testimony of Michael Ferry makes it very clear that this information is highly relevant to this litigation, particularly the issue of consent.  We ask that you supplement your client's response.  If you contend that you or your client no longer has access to responsive documents and ESI, which would be tantamount to stating that your client's browser history is lost, please so state and provide the date such documents and ESI were destroyed rather than simply refuse to provide such relevant information.

Request for Production No. 16:  This Request asks your client to produce all documents relating to goods or services he purchased on or from any internet website from November 1,

John Ochoa, Esq.
July 22, 2014
Page 4

2011 to December 31, 2011.  Again, we have taken special effort to accommodate your client by limiting the applicable time period to a short two-month period.  In response, your client objects that this Request is overly burdensome because it seeks "all documents relating to potentially dozens of purchases, regardless of the nature of the purchase, Plaintiff made during a two month period over two years ago)."  Requiring your client to gather documents relating to "dozens" of purchases is far from overly burdensome and pales in comparison to the number of records your client has requested from the Defendants in this case.  Additionally, the Request does not disregard the "nature of the purchase."  It specifically states that it only seeks the documents relating to internet purchases.  Lastly, in response, your client again states only that he "will produce" responsive documents.  As previously stated, this response is inadequate.  Please inform us when your client will complete his production, and specifically identify by Bates number(s) the documents you will be producing and/or have already produced that are responsive to this Request.

To be clear, we recognize that although we have seen some documents responsive to this Request, we are fairly certain that it is not all of them based on your client's testimony of the percentage of his goods and services he was purchasing online during this period of time.  If your client's ultimate response is that there are no additional documents to produce, please specifically state the efforts in which you engaged to locate and produce responsive documents.

Please respond immediately and let us know when you intend to supplement your Responses to these Requests.

If need be, we can engage in a brief telephone conference to discuss the issues raised in this letter.  However, if you simply intend to stand by your client's inadequate responses, then such a call is clearly unnecessary, and we would simply then proceed to resolving these issues before the Court.  Please respond as quickly as possible and let me know whether you intend to supplement or amend your client's responses and, if you do, whether you believe a telephone call would be worthwhile.

CHD-643184-2

John Ochoa, Esq.
July 22, 2014
Page 5

Sincerely yours,

HUSCH BLACKWELL LLP

Ryan Mitchem w/permission K. Greel

Ryan Mitchem
Partner


RWM/msf

cc:    All Counsel of Record (vie e-mail)

# EXHIBIT J



### POLSINELLI

900 W. 48th Place, Suite 900, Kansas City, MO, 64112  (816) 753-1000

December 20, 2013

Robert V. Spake, Jr.
(816) 395-0600
(816) 753-1536  fax
rspake@polsinelli.com

**VIA E-MAIL**

Ryan D. Andrews, Esq.
John C. Ochoa, Esq.
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago,  IL 60654
randrews@edelson.com
jochoa@edelson.com

        **RE:**   *Kristensen v. Credit Payment Servs. Inc., et al.*, No. 12-528-APG (PAL) (D. Nev.)

Dear John:

We write to respond to your December 17, 2013 letter (your "Response").  Like our meet-and-confer call, there are three primary subjects:   (1) Plaintiff's telephone records; (2) Pioneer Services' responses to Plaintiff's discovery requests; and (3) Plaintiff's responses to Pioneer Services' discovery requests.

**I.      Plaintiff's Telephone Records**

First, your Response still appears limited to only one telephone number.  If so, we cannot agree. For the reasons now expressed verbally and in writing, we request records for all the telephone(s) and other similar mobile device(s) Plaintiff owned or used during the relevant time period. When we last spoke, you represented that you did not know how many telephone(s) or other mobile device(s) Plaintiff owned or used during the relevant time period.  Accordingly, we again request that you ask your client for this information.

Second, your Response broadens the telephone records production from one month to two.  We cannot agree to limit the production to two months, even with your proposed option to selectively search records going back to June 2010.  As you concede, the alleged "text campaign seems to have begun in June 2010."  Response at 2 (emphasis added).  Because neither you nor we know the metes and bounds of the purported text message campaign, and in an effort to compromise, we will limit the relevant time period to the same time period you proposed in your discovery requests on Pioneer Services – March 8, 2009 to present.  If that time period was reasonable for your discovery requests, surely it is reasonable for ours.  Moreover, we do not agree that you can subpoena a broad set of records in this action, yet largely restrict access to an

Chicago  Dallas  Denver  Edwardsville  Jefferson City  Kansas City  Los Angeles  New York  Overland Park  Phoenix  St. Joseph  St. Louis
Springfield  Topeka  Washington, DC  Wilmington
Polsinelli PC, Polsinelli LLP in California

46701101.1

Ryan D. Andrews, Esq.
December 20, 2013
Page 2

entire segment of those records.  As we have explained in the past, we do not agree with your practice of sharing discovery with some, but not others.

Third, we remain receptive to your confidentiality concerns.  And we contend that producing Plaintiff's telephone records pursuant to the protective order in this case, with agreed upon redactions should alleviate any worries.

Fourth, your Response was silent regarding Plaintiff's future execution of a customer declaration.  Because executing this simple document sheds weeks off the subpoena process, we again ask that Plaintiff execute a customer declaration with future subpoena(s).

Fifth, we hope to resolve Plaintiff's telephone records subpoena(s) soon.  To speed up the process (especially given the pending holiday season), we propose you subpoena all records for the telephone(s) and other mobile device(s) Plaintiff owned or used from March 8, 2009 to present.  We can then continue to negotiate the scope of any production, but at least the subpoena process will have begun, preventing further delay.

## II.     Pioneer Services' Responses to Plaintiff's Discovery Requests

During the meet-and-confer teleconference, you asked for amended objections and responses to Plaintiff's discovery requests, but we then agreed that a letter summarizing the discovery steps taken to collect, process, review, and produce Pioneer Services' electronically-stored information ("ESI") was sufficient.  That summary is below:

As you observed, some of Pioneer Services' objections and responses to Plaintiff's First Set of Document Requests stated that "Pioneer Services offers to meet and confer with Plaintiff concerning the appropriate nature and scope of ESI collection, review, and production." Preliminarily, at the outset of Pioneer Services' involvement in this action, Pioneer Services collected and preserved ESI from custodians and company shared drives.  Later, counsel for Plaintiff and Pioneer Services held several meet-and-confer calls where we discussed the sources of ESI for review and negotiated the corresponding search terms, 28 in total (see Exhibit A). Pioneer Services then processed 26,715 records, or 13.14 gigabytes of data.  Next, Pioneer Services reviewed those records for responsiveness and privilege, among other issues.  After the review, Pioneer Services produced the responsive and non-privileged records, 3,244 in total.

Your Response, however, did not address our request that you summarize the discovery steps Plaintiff took to collect, process, review, or produce his ESI.  We again request Plaintiff respond in kind.

Regarding privilege logs, we confirm the agreement that not every attorney-client communication between counsel and their respective client be logged, but otherwise responsive documents and communications with clients will be logged.  We expect to produce our privilege log next week.  When may we expect Plaintiff's privilege log?

Ryan D. Andrews, Esq.
December 20, 2013
Page 3

**III.     Plaintiff's Responses to Pioneer Services' Discovery Requests**

First, according to your Response, Pioneer Services' requests for production do not capture your communications with Mr. Gee, Mr. Davis, Mr. Ferry, or any of their respective counsel, nor do they capture drafts of Mr. Gee's and Mr. Davis' declarations.  We disagree, and intend to stand on our existing requests for production.  Additionally, LeadPile's First Set of Requests for Production to Plaintiff captures this discovery in any event.

Moreover, while your Response is silent as to Plaintiff's asserted privilege claim(s), we reiterate that this discovery is not protected because Plaintiff has no "reason to believe" other ESI "is potentially relevant to this lawsuit."  Response at 3.  How can Plaintiff have no "reason to believe" other ESI, including Plaintiff's email accounts and computer hard drives, are "potentially relevant to this lawsuit," when Plaintiff's own document production, specifically P53, includes a purported email exchange between Plaintiff and the National Do Not Call Registry?  Plaintiff's email account must necessarily include potentially relevant discovery. Moreover, the email was printed on November 10, 2012, thus Plaintiff has known about this for at least one year.  Yet Plaintiff continues to take a contrary position.

If Plaintiff fails to produce these responsive and non-privileged documents, the issue will likely be litigated in the District of Nevada, where this action sits.  Mr. Gee's response to his subpoena is a separate matter, and one that may be litigated in the Northern District of Ohio.

Second, your Response confirms Plaintiff preserved one of his cellphones, but suggests that no other ESI has been preserved because Plaintiff had no "reason to believe" other ESI "is potentially relevant to this lawsuit."  Response at 3.  How can Plaintiff have no "reason to believe" other ESI, including Plaintiff's email accounts and computer hard drives, are "potentially relevant to this lawsuit," when Plaintiff's own document production, specifically P53, includes a purported email exchange between Plaintiff and the National Do Not Call Registry?  Plaintiff's email account must necessarily include potentially relevant discovery. Moreover, the email was printed on November 10, 2012, thus Plaintiff has known about this for at least one year.  Yet Plaintiff continues to take a contrary position.

You also go a step farther and suggest that Plaintiff had no duty to preserve other ESI, including his email and hard drives, because information regarding Plaintiff's "purported consent" "never existed."  Response at 3.  You make this claim, yet Pioneer Services has reason to believe that Mr. Gee and Mr. Ferry told you consent was received.  Additionally, you ask us to take Plaintiff's word for it that he did not consent, while challenging Pioneer Services to provide "some evidence it believes goes towards the consent issue."  Response at 3.  That is not how discovery works.  Pioneer Services, and the other Defendants, are seeking discovery from multiple individuals and entities to attain all available sources of evidence regarding this important issue.

We again request Plaintiff take immediate steps to preserve all potentially relevant information, including Plaintiff's ESI (*e.g.*, his Hotmail account).  And we again request that Plaintiff investigate whether any ESI was compromised or deleted.  If you continue to resist preserving ESI that contains information critical to this action, Pioneer Services will be prejudiced – and indeed, may have been already.

Ryan D. Andrews, Esq.
December 20, 2013
Page 4

Relatedly, you represented that if we provided a list of search terms, you would consider searching Plaintiff's ESI.  Attached as Exhibit B, please find a proposed list of search terms.

Third, we are pleased you now consider Mr. Davis an expert witness for purposes of Interrogatory Number 5.  Similarly, we request Plaintiff consider Mr. Davis an expert witness for purposes of Request for Production Number 7.  In response to Request for Production Number 7, Plaintiff has represented that "no" "responsive, non-privileged documents currently exist" regarding "any expert testimony or opinions to be offered in support of [Plaintiff's] Request for class certification."  Given Plaintiff's new position regarding Mr. Davis' status, Plaintiff must amend this response, and Pioneer Services expects to receive all documents and communications concerning Mr. Davis' purported expert testimony and opinions promptly.

Fourth, your Response suggests the identity of the Wells Fargo representative identified in Plaintiff's Answer to Interrogatory Number 7 is irrelevant, and you claim the inquiry is more appropriate for Plaintiff's deposition.  Similarly, your repeated inquiries regarding Mr. Gee are more appropriate for his deposition.  Moreover, any conversations we may have had with Greg Wolf (either before or after) his conversation with Mr. Gee would be subject to the common interest and/or joint defense privilege and will not be disclosed.

Sincerely,

/s/  Robert V. Spake, Jr.

Robert V. Spake, Jr.

Ryan D. Andrews, Esq.
December 20, 2013
Page 5

**Exhibit A**

| |
|---|
| Alpine Select Lenders |
| https//thesmartcreditsolution.securelinkcorp.com |
| opt-out W/10 (SMS OR text OR "text messag*" OR mobile OR cell*) |
| Smart Credit Solution |
| TCPA |
| telephone consumer protection act |
| thesmartcreditsolution.securelinkcorp.com |
| unauthorized w/3 (text OR SMS) |
| unsolicited w/3 (text OR SMS) |
| ((text* OR sms) AND message*) w/5 (policy OR approv* OR legal OR advertis*) |
| (text* OR sms) W/5 (blast* OR messag* OR market*) |
| 360 Data Management |
| AC Referral |
| ATDS |
| autodial* |
| Click Media |
| Clickmedia |
| Ferry |
| Gee |
| JT Enterprises |
| LeadPile |
| Net1 |
| Net1promotions |
| SMS |
| TCPA |
| text message spam |
| text message* |
| text spam |

Ryan D. Andrews, Esq.
December 20, 2013
Page 6

## Exhibit B

| |
|---|
| Alpine Select Lenders |
| opt-in W/10 (SMS OR text OR "text messag*" OR mobile OR cell*) |
| opt in W/10 (SMS OR text OR "text messag*" OR mobile OR cell*) |
| opt-out W/10 (SMS OR text OR "text messag*" OR mobile OR cell*) |
| Smart Credit Solution |
| TCPA |
| telephone consumer protection act |
| thesmartcreditsolution.securelinkcorp.com |
| unauthorized w/3 (text OR SMS) |
| unsolicited w/3 (text OR SMS) |
| ((text* OR sms) AND message*) w/5 (policy OR approv* OR legal OR advertis*) |
| (text* OR sms) W/5 (blast* OR messag* OR market*) |
| 360 Data Management |
| AC Referral |
| ATDS |
| autodial* |
| Click Media |
| Clickmedia |
| Ferry |
| Gee |
| JT Enterprises |
| LeadPile |
| Net1 |
| Net1promotions |
| SMS |
| payday |
| pay day |
| loan |
| Pioneer |
| MidCountry Bank |
| www.lend5k.com |
| Do Not Call |
| DonotCall.gov |
| consent |
| text message spam |
| text message* |
| text spam |

# EXHIBIT K



## POLSINELLI

900 W. 48th Place, Suite 900, Kansas City, MO, 64112  (816) 753-1000

January 19, 2014

Robert V. Spake, Jr.
(816) 395-0600
(816) 753-1536  fax
rspake@polsinelli.com

**VIA E-MAIL**

Ryan D. Andrews, Esq.
John C. Ochoa, Esq.
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
randrews@edelson.com
jochoa@edelson.com

RE:   *Kristensen v. Credit Payment Servs. Inc., et al.*, No. 12-528-APG (PAL) (D. Nev.)

Dear John:

We write to respond to your January 15, 2014 letter (your "Letter"). While we understand our last letter was sent on December 20, 2013, in the midst of the holiday season, we do not understand why it took you nearly one month to regress back to your original, unreasonable positions.

## I.   Plaintiff's Telephone Records

Plaintiff, after offering to expand his subpoena request, has reverted back to his initial, untenable position: only one phone number for only one month. That appears to be Plaintiff's final position. Please confirm.

Additionally, your Letter repeats an old and answered request that we explain the basis for our belief that additional cell phone records would lead to relevant information. We provided that information on December 13, 2013 during our initial meet-and-confer teleconference and again in our December 16, 2013 letter. Your repeated request only stalls this process. Because we are currently in the midst of discovery including three depositions scheduled this week, your delay works further prejudice.

Chicago  Dallas  Denver  Edwardsville  Jefferson City  Kansas City  Los Angeles  New York  Overland Park  Phoenix  St. Joseph  St. Louis
Springfield  Topeka  Washington, DC  Wilmington
Polsinelli PC, Polsinelli LLP in California

46803859.1

Ryan D. Andrews, Esq.
January 19, 2014
Page 2

## II.    Pioneer Services' Responses to Plaintiff's Discovery Requests

In response to your request, we provided a summary of the discovery steps taken to collect, process, review, and produce Pioneer Services' electronically-stored information ("ESI"). You, however, still stall and refuse to respond in kind. Please confirm this is your final position.

Pioneer Services also produced a privilege log. Your Letter again repeats an old and answered request – that Pioneer Services confirm that "communications between our law firms and our respective clients need not be logged." We confirmed that understanding twice – both on December 13, 2013 during our initial meet-and-confer teleconference and again in our December 20, 2013 letter. Your repeated request only stalls this process. For the third time, we confirm our understanding.

To the extent your Letter suggests you will not produce a privilege log, we do not share an understanding. In this action, you have asserted purported privilege claims over conversations and emails between you and individuals who are not your clients – *e.g.*, Michael Ferry and James Gee. Therefore, if you are not going to produce a privilege log, please confirm. If you will produce a privilege log, when will you produce it?

## III.    Plaintiff's Responses to Pioneer Services' Discovery Requests

<u>First</u>, you have represented that Plaintiff did *not* collect, process, review, or produce any ESI from any computer or email account. You also have represented that *no* efforts have been made to preserve any of Plaintiff's emails or other ESI (aside from the cellphone that allegedly received the complained of text message). Accordingly, Pioneer Services' concerns regarding Plaintiff's preservation of his ESI are far from "blatantly speculative." Your continued and repeated refusal to identify the steps taken concerning any preservation, collection, or review of Plaintiff's ESI or hard copy documents only heightens our concerns.

Similarly, your Letter ignores the following question posed in our December 20, 2013 letter: How can Plaintiff have no "reason to believe" other ESI, including Plaintiff's email accounts and computer hard drives, are "potentially relevant to this lawsuit," when Plaintiff's own document production, specifically P53, includes a purported email exchange between Plaintiff and the National Do Not Call Registry? Plaintiff's email account must necessarily include potentially relevant discovery. Moreover, the email was printed on November 10, 2012, thus Plaintiff has known about this for at least one year. Again, your failure to address these critical issues only heightens Pioneer Services' concerns.

One more time, Pioneer Services simply requests that Plaintiff take immediate steps to preserve all potentially relevant information, including Plaintiff's ESI (*e.g.*, his Hotmail account, all other email accounts, any device that can access the internet, computers, etc…). And we again request that Plaintiff investigate whether any ESI was compromised or deleted. Your continued

Ryan D. Andrews, Esq.
January 19, 2014
Page 3

resistance to simply preserve (or acknowledge preservation of) ESI that contains information critical to this action may, and indeed may already have, prejudiced Pioneer Services.

Second, Plaintiff repeats an old challenge that Pioneer Services provide evidence showing that Plaintiff (or any other putative class member) consented to receive the text message at issue. As we have stated to you in the past, Pioneer Services had reason to believe that Mr. Gee and Mr. Ferry had informed you that consent was received. This was confirmed by Mr. Ferry in his January 10, 2014 deposition. Your repeated challenges, even in the face of direct testimony that Mr. Ferry understood consent was received, further stall this process.

Third, we are pleased that Plaintiff is open to discussing Pioneer Services' proposed search terms. As Plaintiff will remember, Pioneer Services worked in good faith with Plaintiff to test search terms for reasonableness. Accordingly, we only ask the same courtesy in return. Please test Pioneer Services' search terms as soon as possible, as nearly one month has passed since the terms were proposed.

Best wishes,

/s/ Robert V. Spake, Jr.

Robert V. Spake, Jr.

# EXHIBIT L



900 W. 48th Place, Suite 900, Kansas City, MO, 64112 (816) 753-1000

February 21, 2014

Robert V. Spake, Jr.
(816) 395-0600
(816) 753-1536 fax
rspake@polsinelli.com

**VIA E-MAIL**

John C. Ochoa, Esq.
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
jochoa@edelson.com

RE:   *Kristensen v. Credit Payment Servs. Inc., et al.*, No. 12-528-APG (PAL) (D. Nev.)

Dear John:

We are following up on our January 19, 2014 letter (the "Letter"). In our Letter, we asked Plaintiff to confirm his positions on his compliance (or noncompliance) with Pioneer Services' discovery requests. Over one month has passed, and Plaintiff has still not responded.

Pioneer Services first requested Plaintiff produce documents on October 17, 2013. Since then, Plaintiff has produced 9 documents – one 54 page production in November and a one-page supplemental production today. This largely irrelevant production purportedly includes 5 court filings, 1 client retainer agreement, 1 email, 1 cellphone screenshot, and 1 cellphone bill summary. Plaintiff has still not searched his electronically-stored information ("ESI") using Pioneer Services' proposed search terms – or any search terms for that matter. And, it is believed that Plaintiff has not even preserved his ESI.

Making matters worse, after one meet-and-confer teleconference and five discovery letters, Plaintiff has regressed to his original positions and has gone radio silent. Accordingly, if Plaintiff does not meaningfully respond to Pioneer Services' Letter by February 28, 2014, Pioneer Services (likely joined by co-Defendants) will be forced to move to compel. While Pioneer Services wants to, and has undertaken great efforts to, avoid a motion to compel proceeding, Pioneer Services can simply wait no more.

Best wishes,

*/s/ Robert V. Spake, Jr.*

Robert V. Spake, Jr.

polsinelli.com

Chicago  Dallas  Denver  Edwardsville  Jefferson City  Kansas City  Los Angeles  New York  Overland Park  Phoenix  St. Joseph  St. Louis
Springfield  Topeka  Washington, DC  Wilmington
Polsinelli PC, Polsinelli LLP in California
47019186.2

# EXHIBIT M

# POLSINELLI

900 W. 48th Place, Suite 900, Kansas City, MO, 64112  (816) 753-1000

March 7, 2014

Robert V. Spake, Jr.
(816) 395-0600
(816) 753-1536  fax
rspake@polsinelli.com

**VIA E-MAIL**

John C. Ochoa, Esq.
Edelson LLC
350 North LaSalle Street, Suite 1300
Chicago,  IL 60654
jochoa@edelson.com

> **RE:** *Kristensen v. Credit Payment Servs. Inc., et al.*, No. 12-528-APG (PAL) (D. Nev.)

Dear John:

We write to respond to your February 28, 2014 letter (the "Letter").  There are two subjects to address:  (1) what electronically-stored information ("ESI") Plaintiff is searching and when that search will be completed; and (2) corrections to Plaintiff's "clarified" record.  Because we wish to resolve these issues before the Court's March 19th hearing, please respond by close of business on March 11th or we will move to compel.

## I.    What ESI Is Plaintiff Searching?  And When Will That Search Be Completed?

Plaintiff received Pioneer Services' proposed search terms 2 ½ months ago.  Since then, Plaintiff has refused to run (or even test) those terms.  Now, only when faced with a motion to compel, does Plaintiff shift his position with a vague and qualified offer that raises several red flags.  Specifically, Plaintiff says he will "test[] [Pioneer Services'] search terms against his electronically stored information" for a "production of documents, <u>if necessary</u>."  Letter at 2-3 (emphasis added).  This vague and qualified offer is insufficient to avoid a motion to compel.  <u>First</u>, what specific ESI will Plaintiff search?  Plaintiff should search all of his ESI including, among other things, his personal and work:  computers and other devices that can access the internet (including their hard drives, cache files, temporary files, and cookies), and email accounts.  Please confirm.  If this is not the case, Defendants will move to compel.

More importantly, Pioneer Services believes that critical ESI was spoliated.  Therefore, even if Plaintiff gave Defendants unfettered access to all of his existing ESI, Plaintiff failed to preserve ESI about critical, case-dispositive issues – for instance Plaintiff's consent.  As Plaintiff well knows, Pioneer Services has repeatedly expressed these spoliation concerns for 2 ½ months.  In response, Plaintiff's counsel has suggested that no ESI (other than Plaintiff's cellphone) has been preserved because Plaintiff had no "reason to believe" other ESI "is potentially relevant to this

Chicago  Dallas  Denver  Edwardsville  Jefferson City  Kansas City  Los Angeles  New York  Overland Park  Phoenix  St. Joseph  St. Louis
Springfield  Topeka  Washington, DC  Wilmington

Polsinelli PC, Polsinelli LLP in California
47290903.2

John Ochoa
March 7, 2014
Page 2

lawsuit." Plaintiff, however, has not explained how he can have no "reason to believe" other ESI is "potentially relevant to this lawsuit," when Plaintiff's own sparse document production, specifically P53, includes a purported email exchange between Plaintiff and the National Do No Call Registry. Moreover, that email was printed on November 10, 2012, thus Plaintiff has known about this for over one year.

Despite Pioneer Services' repeated insistence that Plaintiff take immediate steps to preserve all potentially relevant information, including Plaintiff's ESI, Plaintiff has never responded. Regardless, Plaintiff's duty to preserve his ESI arose when he reasonably anticipated litigation and that duty has existed ever since. Pioneer Services now believes it has already suffered prejudice as a result of Plaintiff's failure to preserve his ESI, and that the risk of further prejudice is ongoing. Indeed, Plaintiff recently testified that he failed to preserve highly relevant ESI. A few examples follow:

- In February 2012 (possibly after Plaintiff retained counsel, but before Plaintiff filed his Complaint), he "replaced the hard drive" on his laptop and "threw [the old hard drive] out." Deposition of Flemming Kristensen ("Pl. Dep.") at 167. While he transferred files from his old hard drive to his new hard drive, he did not transfer any cookies, cache files, or temporary internet files – all of which could possibly contain critical evidence of Plaintiff's consent to receive the complained of text message. Pl. Dep. at 208-09.

- In the fall of 2010, Plaintiff's desktop "was all reformatted to reinstall a 64-bit operating system." Pl. Dep. at 168.

- "No" "steps were taken to preserve the information stored on [Plaintiff's] computers regarding this lawsuit or any possible consent." Pl. Dep. at 148.

- "[N]othing was done actively to either preserve or not to preserve" Plaintiff's email accounts, and Plaintiff believes spam and deleted emails are still destroyed every week. Pl. Dep. at 147.

This testimony is extremely disconcerting and raises real spoliation issues. Pioneer Services must know what ESI is being searched and what ESI is not being searched (including all date ranges) to fully understand what ESI was lost or destroyed. For example, what is the date of the earliest temporary file on Plaintiff's laptop? If Plaintiff does not provide answers, Defendants will move to compel.

<u>Second</u>, Plaintiff's vague and qualified offer to produce documents is also insufficient to avoid a motion to compel because it both suggests there might be no production and it provides no idea of when any production may occur. When will Plaintiff complete his ESI test? Again, Plaintiff has already let 2 ½ months pass since receiving the proposed search terms before agreeing to even test them. Because Pioneer Services fears this offer is yet another tactic in an ongoing strategy of delay and obstruction, please provide an estimated date of completion.

John Ochoa
March 7, 2014
Page 3


## II.     Corrections to Plaintiff's "Clarified" Record

Plaintiff has produced 9 documents (55 pages) in response to Pioneer Services' request for production of documents.  Plaintiff has also produced 9 documents (12 pages) in response to LeadPile's and CPS's requests for production of documents.  Plaintiff, likely recognizing the inadequacies of his own production, "clarifies" the record by asserting that he "provided to all Defendants hundreds of documents (consisting of tens of thousands of pages) obtained by Plaintiff in the course of his discovery efforts."  Letter at 1.  But these documents are not Plaintiff's, they are documents of third parties and CPS.  Moreover, it's ironic that Plaintiff now takes credit for these productions, since he repeatedly stalled their production.

For instance, in August 2013, Pioneer Services requested all documents Plaintiff received in this litigation (including all documents from third-parties and CPS) before Pioneer Services was added as a party.  Several weeks passed, and Plaintiff produced no documents.  Pioneer Services again requested these documents.  Another week passed, and then Plaintiff only produced documents from third-parties.  After yet another week, Pioneer Services confirmed that Plaintiff's production did not include CPS's prior production, as requested.  Plaintiff then balked at sharing those documents, raising confidentiality concerns on behalf of CPS for the first time.  Pioneer Services was able to confirm that there was no confidentiality concern with CPS that same day – something Plaintiff did not seek.  When Plaintiff finally ran out of excuses, he produced the CPS documents.

*****

As the record stands, Plaintiff spoliated critical ESI about his consent – an issue integral to both class certification and the merits.  Further, Plaintiff must identify what ESI he is searching and what ESI he is not searching.  And he must state when this search will be completed.  As a reminder, Pioneer Services (just one Defendant in this case) has already processed 26,715 records, or 13.14 gigabytes of data.  Plaintiff has processed 0 ESI data.  Pioneer reviewed those records for responsiveness and privilege, among other issues, and produced 3,244 documents.  Plaintiff has produced 18 documents (none of which are from an ESI collection and review).

We look forward to your response on or before Tuesday, March 11, 2014.


Best wishes,

/s/ Robert V. Spake, Jr.

Robert V. Spake, Jr.