John Benedict, Esq.
LAW OFFICES OF JOHN BENEDICT
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ryan D. Andrews (Admitted *Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Flemming Kristensen and the Class*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals, | Case No. 2:12-CV-00528-APG-(PAL) |
| | CLASS ACTION |
| Plaintiff, | |
| | Judge: Hon. Andrew P. Gordon |
| v. | |
| | Magistrate: Hon. Peggy Leen |
| CREDIT PAYMENT SERVIECS INC., a Nevada corporation, f/k/a MY CASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company, | **PLAINTIFF'S RESPONSE UNDER FED. R. CIV. P. 56(d) TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO THE ISSUE OF VICARIOUS LIABILITY AND DECLARATION IN SUPPORT** |
| Defendants. | |

1    Plaintiff Flemming Kristensen and the certified Class, by and through their undersigned

2   counsel files this *Response Under Fed. R. Civ. P. 56(d) to Defendants' Motions for Summary*

3   *Judgment as to the Issue of Vicarious Liability and Declaration in Support.*

4
                                    Respectfully submitted,
5
                                    FLEMMING KRISTENSEN, individually and behalf
6                                   of a Class of similarly situated individuals
7
    Dated: November 17, 2014        By: /s/ John C. Ochoa
8                                   One of Plaintiff's Attorneys

9                                   John Benedict, Esq.
                                    LAW OFFICES OF JOHN BENEDICT
10                                  Nevada Bar No. 005581
                                    2190 E. Pebble Road, Suite 260
11                                  Las Vegas, Nevada 89123
                                    Telephone: (702) 333-3770
12                                  Facsimile: (702) 361-3685
                                    john.benedict.esq@gmail.com
13
14                                  Ryan D. Andrews (Admitted *Pro Hac Vice*)
                                    randrews@edelson.com
15                                  Rafey Balabanian (Admitted *Pro Hac Vice*)
                                    rbalabanian@edelson.com
16                                  John C. Ochoa (Admitted *Pro Hac Vice*)
                                    jochoa@edelson.com
17                                  EDELSON PC
                                    350 North LaSalle Street, Suite 1300
18                                  Chicago, Illinois 60654
                                    Tel: 312.589.6370
19                                  Fax: 312.589.6378
20
                                    *Attorneys for Plaintiff Flemming Kristensen*
21                                  *and the Class*
22

23

24

25

26

27

28

---

**Plaintiff's Response under Rule 56(d)**                    **No. 2:12-cv-00528-APG-(PAL)**

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Credit Payment Services, Inc. ("CPS"), LeadPile LLC ("LeadPile"), Enova International, Inc. ("Enova") and Pioneer Financial Services, Inc. ("Pioneer" and together "Defendants") have all moved for summary judgment in this matter arguing, *inter alia*, that none of them can be vicariously liable for the nearly 100,000 "payday loan" text messages transmitted to consumers in hopes of generating leads for the lender Defendants—CPS, Enova, and Pioneer. Although each Defendant has separately moved for summary judgment, they all make the same meritless argument[1]—that Plaintiff cannot present any facts showing that the Defendants are liable under the vicarious liability theories.

But Defendants bring their motions before all of the discovery relating to vicarious liability has been produced, and at a time when a significant motion to compel vicarious liability focused discovery against CPS remains pending. This discovery pertains to CPS's knowledge of the text message marketing used to generate its payday loan customer-base, CPS's alter-ego relationship with lead broker and co-Defendant LeadPile (which provides an alternative basis of liability), and Enova's acceptance of benefits from the text message marketing campaign. In fact, and quite incredibly, CPS still hasn't even verified its responses to Interrogatories (after assuring the Court that it would and attaching them in support of its summary judgment motion), rendering them useless at this stage.[2] In short, there is substantial discovery that has yet to be produced by Defendants, making their summary judgment motions premature.

---

[1] Defendants also found it necessary to file separate but largely identical briefs as to whether the equipment used to transmit these text messages constitutes an "automatic telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and whether they have established their affirmative defense that Plaintiff and the class provided "prior express consent" to receive these messages. Since the outstanding evidence does not implicate the issues of consent or ATDS, Plaintiff is filing a consolidated partial opposition on these issues.

[2] Thumbing its nose at the Federal Rules in failing to verify its answers, CPS nonetheless tries to rely on the unverified answers in its summary judgment motion. A party cannot rely on unsworn testimony as competent proof in the summary judgment context. *See* Fed. R. Civ. P. 33(b)(3), (5); *Blevins v. Marin*, No. 11-CV-03475-KJN P, 2013 WL 5718869, at *1 (E.D. Cal. Oct. 11, 2013) ("[A]ll responses to interrogatories and requests for admission must be verified—that is, bear plaintiff's signature attesting under penalty of perjury that his responses are true and correct—in order to be an admissible form at summary judgment or trial."). Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jacobs v. Clark Cnty. Sch. Dist.*, 373 F. Supp. 2d

1

In situations such as this, courts do not hesitate to permit continuances under Rule 56(d) to allow motions to compel to be decided that may result in the production of relevant evidence. In this case, Plaintiff is confident that he will receive additional relevant evidence after the Court rules on his motion to compel. Thus, in the interests of fairness and judicial efficiency, the Court should stay Plaintiff's obligation to respond to Defendants' vicarious liability arguments until such a time that the Court rules on Plaintiff's Motion to compel CPS, and in the event Plaintiff prevails, after allowing for the time it will take for CPS to comply with the Court's Order.

## BACKGROUND

On March 26, 2014, this Court granted Plaintiff's Motion for Class Certification. (*See* Dkt. 164.)  In that Order, the Court acknowledged that Defendants could be liable for the text message spam transmissions under the several theories of vicarious liability—including apparent authority, actual authority, sub-agency, and ratification—that the Federal Communications Commission discussed in its May 8, 2013 Declaratory Ruling. (*See* dkt. 164 at 6, 8.)  In addition, at oral argument on the Motion, the Court indicated that liability could attach in a TCPA case based on an alter-ego theory of liability. (*See* Dkt. 199-1, March 19, 2014 Hearing Transcript at 25:2-26:9.)

## I.      Plaintiff moves to compel Defendant CPS to produce documents

Promptly one week after this Court entered its Order, on March 31, 2014, Plaintiff propounded targeted written discovery requests on the Defendants, including CPS, seeking evidence relating to these theories of vicarious liability. (Declaration of John C. Ochoa ("Ochoa Decl.") ¶ 2.) As discussed in more detail below, approximately half of Plaintiff's discovery requests were aimed at uncovering the nature of CPS's relationship with its marketers—in other words, whether the relationship with its marketers is such that it can be held vicariously liable for its marketers' actions. Plaintiff's discovery requests also sought evidence about CPS's ability to control these companies. Plaintiff also issued numerous discovery requests related to the theory of ratification—specifically, the knowledge level of CPS employees about text message marketing, both generally in the industry and specifically to this case.

1162, 1169 (D. Nev. 2005) *aff'd,* 526 F.3d 419 (9th Cir. 2008).

CPS responded to Plaintiff's discovery requests on April 30, 2014. (The full text of CPS's responses to Plaintiff's discovery requests can be found on the Court's docket at Dkt. 199-2.) In response to most of Plaintiff's document requests, CPS failed to produce a single document and asserted near identical, boilerplate objections to each request, stating:

> CPS objects to this Request on the grounds that it is overbroad in scope, unduly burdensome, oppressive, harassing, and seeks information and documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

(Dkt. 199-2 at Ex. D.) Further, CPS refused to respond to Requests to Admit asking for information in the control of its own employees. (Dkt. 199-2, Ex. E, Response Nos. 1-3, 6, 7.) It also asserted boilerplate objections to Interrogatories that sought information relating to CPS's awareness of the TCPA and how leads were generated—information highly relevant to a ratification theory of liability. Instead of providing any response, CPS asserted the following boilerplate objection:

> [O]verly broad and unduly burdensome and it is not limited in time or scope. CPS further objects as the information sought is neither relevant nor reasonable [sic] calculated to lead to the discovery of admissible evidence as an answer does not prove or disprove any allegation in the instant matter.

(Dkt. 199-2, Ex. F. Response Nos. 17, 19.)  CPS also objected that common words and phrases such as "at some point between," "delegated," "provided loans," "underwrote loans," and "originating" were vague and ambiguous. (Dkt. 199-2, Ex. F, Response Nos. 1-3, 6, 15-17.)  In response to some Document Requests and Interrogatories, CPS vaguely instructed Plaintiff to "see documents produced" without even bothering to identify which documents it was referring to. (Dkt. 199-2, Ex. E, Response Nos. 71, 74-77; Ex. F., Response Nos. 16, 18, 21 & 24.) CPS also provided numerous nonresponsive answers to several discovery requests, and still, as of the date of this filing, has not provided a verification for its Interrogatory responses. (Ochoa Decl. ¶ 7.)

Plaintiff's discovery requests also addressed CPS's relationship with its co-Defendant LeadPile LLC—the lead broker from whom CPS, Enova, and Pioneer received thousands of payday loan leads. These requests asked for information relating to, *inter alia*, CPS's ownership interests in LeadPile, compensation paid to and from LeadPile and CPS, the nature of the relationship between CPS and LeadPile, communications to or from Carey V. Brown (CPS's vice president and sole

3

shareholder) related to LeadPile, and other evidence tending to show that LeadPile was simply an "alter-ego" of CPS (and vice-versa)  (*See generally* Dkt. 199, Plaintiff's Motion to Compel CPS, at pgs. 6-10; Dkt. 222, Plaintiff's Reply in Support of his Motion to Compel CPS, at pgs. 4-5.)

Plaintiff initiated a meet-and-confer process with CPS about their refusal to produce discovery in response to these topics, but CPS refused to amend even one response to Plaintiff's discovery. (Ochoa Decl. ¶¶ 3-4.) As a result, Plaintiff moved to compel. (Dkt. 199.) In response to Plaintiff's Motion to Compel, CPS tried to amend some, but not all, of its discovery responses.  (*See* Dkt. 214-3 – 214-5.) CPS still refused to produce huge swaths of information, and refused to amend certain Interrogatory responses and responses to Requests to Admit.  (Dkt. 222, at pgs. 7-10.)  CPS also claimed in its response brief, incredibly, that it can't "possibly know the (sic) whether its own employees where (sic) 'aware' of certain circumstances,'" such as its employees' knowledge about text message marketing.  (Dkt. 214, pg. 12, lns. 12-15.) For the discovery responses that CPS did amend, many of their supposed attempts to cure their answers were inadequate. (*See* dkt. 222 at pgs 8-9.)

## II.    The hearing on Plaintiff's Motion to Compel CPS

The Court held a hearing on Plaintiff's Motion to Compel CPS on August 7, 2014. (Dkt. 225.) At that hearing, Magistrate Judge Leen asked pointed questions of Defense counsel concerning the extent of CPS's "reasonable inquiry" before it responded to Plaintiff discovery requests, and why CPS failed to verify its interrogatory responses:

> THE COURT: And if you'd just answered interrogatories without saying you don't understand what the meaning of the word at this point means --
>
> MR. AARON:  Well, Judge –
>
> THE COURT: -- and gave a straightforward answer without a bunch of objections that make the answer impossible to understand, maybe you wouldn't be standing here in front of me today answering these pointed questions.
>
> MR. AARON: Maybe, Your Honor. I -- I -- I'm not sure if I agree, but I understand your -- and I appreciate what you're saying, yes. You're right.
>
> THE COURT: My concern is to make sure that CPS has complied with its discovery obligations and answered the interrogatories with a person who either knows the answer in a way that they can swear under oath like they're required to, verified certification under Rule 26(g) that you've made diligent inquiry that the rules require you to do and these are the corporation's answers and that you're

4

1

2

bound by them, and they're not a guess and they're not the lawyers going through and cherry-picking records and saying this is the answer that I think is most beneficial to my client, because that's -- that's not what the discovery rules are about.

3

4

MR. AARON: I understand, Your Honor. And when I get back to my office, we will have a certification on the interrogatories signed and provided to the plaintiff.

5

THE COURT: And so the person who certifies those interrogatories who verifies them, better be prepared to be deposed –

6

MR. AARON:  He -- he –

7

8

THE COURT: -- if that's what plaintiff wants to do to find out what he or she did in order to make sure that those are real answers.

9

MR. AARON: He will be, and he is.

10

THE COURT: All right, sir.

11

MR. AARON: Thank you, Your Honor.

12  (August 7, 2014 Hearing Transcript ("Transcript") at 21:11-22:18, a true and accurate copy of

13  which is attached to the Ochoa Decl. as Exhibit A.) To date, CPS still has failed to provide

14  verifications to its Interrogatories, despite promising the Court that it would do so.  (Ochoa Decl.  ¶

15  7.)  Plaintiff further has not been able to depose this person, since CPS still hasn't verified its

16  Interrogatories.  (*Id.* ¶ 8.)

17      The Court also tried to find out what CPS did to conduct a "reasonable inquiry" before it

18  responded to Plaintiff's discovery requests:

19

20

21

THE COURT: So what did you do to go about making a duty of reasonable inquiry to answer these discovery requests to information reasonably available to CPS?

22

23

24

MR. AARON: We talked to prior counsel and have a declaration from prior counsel that he complied with the Court's order and that he talked with people and did what he did necessary to ensure that he fully complied with what the original discovery was. We received a separate second set of discovery. We talked to those people that we could talk to that are still around. We ran an additional search, which we didn't have to do. We didn't go down there --

25

26

THE COURT: Are you telling me that these are basically counsel's answers and not the client's answers?

27

MR. AARON: No, I'm not, Judge.

28

THE COURT: Well, because your answer to my question is about as vague to most of his questions.

5

MR. AARON: Well then maybe I --

THE COURT: I'm really trying to get to the bottom of whether or not you did make a reasonable inquiry, whether you did look for information to answer these questions, understanding the position of your client and the fact that you've downsized and the fact that people have left, but, who is it that's paying your bill?

\*     \*     \*

THE COURT: Okay. So who is the authorized representative on behalf of the client? Who is the person that's calling the shots in this litigation on behalf of your client?

MR. AARON: I mean, I -- I don't know when you say calling the shots, I mean --

THE COURT: Who has authority to act on behalf of CPS?

MR. AARON: Well, there's a lot of people that can. Mr. Freeman is the person we're going to designate as our 30(b)(6) person.

THE COURT: You're evading --

MR. AARON: I'm not trying to do that intentionally, Judge, I just don't know -- I mean, there's --

THE COURT: If this case was to be settled today, who would have the authority to enter into a settlement agreement on behalf of your client?

MR. AARON: Well, there's -- there's several people, I guess, Your Honor. Mr. Brown is not the person I report to on a daily basis. If that's --

THE COURT: You are evading my questions.

MR. AARON: I'm not trying to, Judge.

THE COURT: Yes, you are.  Mr. -- Mr. Brown is the person who controls this and who has hired you and is paying you and who has the ability to say what happens in this case on behalf of the client.

MR. AARON: He is the -- he is the sole shareholder that is correct, Your Honor. I don't report to Mr. Brown though, I report to another one of his --

THE COURT: I bet all of Bill Gates' lawyers don't report to him either.

MR. AARON:  Right.

THE COURT: But, that doesn't mean he's not the one making the --

MR. AARON: You want that person's name? He's not employed by CPS. I mean, I can -- I mean -- I'm not trying to be evasive, it is undisputed, Your Honor, that Mr. Brown has many different companies, and those companies have different boards of directors and different presidents and different whatever. And as a practical matter, yes, they work in conjunction with one another, but they are legally separate, and so, it's kind of a -- it's -- it's not -- I'm not trying to suggest to the Court that that's not the case, but I'm not sure if the Court is asking who do I call on a daily basis? Mr. Brian Henton.

6

THE COURT: And what's his position with the company?

MR. AARON: He is a person that works with Mr. Brown.  He's not employed by CPS, but he is someone that works for Mr. Brown for some of Mr. Brown's other companies. And because Mr. Brown is the sole shareholder of this company and Mr. Henton works for Mr. Brown for some of his other companies, Mr. Henton has been designated as the person that I report to about this case.  I'm really not -- I'm really not trying -- I'm really trying to answer your question, because there's nothing to hide. I -- I just don't know exactly how --

THE COURT: The whole issue in this case is who -- who's responsible for that text message that got sent to a hundred thousand people, okay?

MR. AARON:  Right.

THE COURT: And the whole theory of the plaintiff's case is you've been hiding the ball through shell games.

MR. AARON: I don't -- I don't know I agree that that's the plaintiff's theory, but I appreciate that that's what he said in the discovery responses, or requests, in the Motion to Compel.

(Transcript at 15:2-20:19.)

At the conclusion of the hearing, the Court indicated that it would be issuing a written order concerning Plaintiff's Motion to Compel, but as of the date of this filing of this Motion, the Parties are still awaiting entry of the Court's Order. (*See* Transcript at 22:21-24:2.)

**III.    Defendant Enova Also Still Hasn't Completed its Document Production**

On May 28, 2014, Plaintiff filed a motion to compel Defendant Enova to produce additional documents and information. (Dkt. 199.) On July 1, 2014, this Court granted Plaintiff's Motion, struck Enova's objections to discovery, and directed Enova to produce documents and amend its discovery responses by July 15, 2014. (Dkt. 208.) On July 15, 2014, Enova produced amended responses to Plaintiff's discovery requests, and also made a meager production of approximately 50 pages of documents.  (Ochoa Decl. ¶ 10.) Because Plaintiff was still unable to determine whether Enova was withholding documents, he initiated further meet-and-confers, and raised the issue with the Court at the August 7, 2014 hearing. (Ochoa Decl. ¶¶ 11, 14; dkt. 225.)

After multiple meet-and-confers, and another subsequent amendment to Defendant's discovery responses, Plaintiff was able to convince Defendant Enova to produce additional documents relating to its relationship with co-defendants LeadPile LLC and Click Media without resorting to more motion practice. (Ochoa Decl. ¶ 12.) On October 24, 2014—just three days prior

7

1    to the filing of its Summary Judgment brief—Enova produced approximately 6,000 pages worth of

2    documents.[3]  (*Id.* ¶ 13.)  In addition, Plaintiff is still in the process of conferring with Enova over

3    the production of invoices from co-Defendant LeadPile concerning the purchase of leads from

4    December, 2011—which coincides with the class period in this case—that Enova is unwilling to

5    produce.  (*Id.* ¶ 14.)  If Enova refuses to produce these documents, Plaintiff will have no choice but

6    to again seek Court intervention.

7                              **LEGAL STANDARD**

8         Summary judgment is inappropriate when the responding party has not had an adequate

9    opportunity to complete discovery.  *See* Fed. R. Civ. P. 56(d); *Celotex Corp. v. Catrett*, 477 U.S.

10    317, 326 (1986); *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir.

11    1986); *Peshek v. Litton Loan Servicing*, No. 2:10-CV-00812-GMN, 2011 WL 4479700, at *5 (D.

12    Nev. Sept. 26, 2011). Pursuant to Rule 56(d),[4] courts may continue a motion for summary

13    judgment—or deny it outright—when the responding party demonstrates that it "cannot present

14    facts essential to justify its opposition." Fed R. Civ. P. 56(d)(1)–(2); *Michelman v. Lincoln Nat. Life*

15    *Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012).

16         When a party has not had an adequate opportunity to pursue discovery, "Rule 56(d) requests

17    should be granted freely." *Soule v. High Rock Holding, LLC*, 514 B.R. 626, 630 (D. Nev. 2014)

18    (citing *Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck*

19    *Reservation*, 323 F.3d 767, 773 (9th Cir. 2003)); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d

20    832, 846 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986))

21    (explaining that Supreme Court has interpreted Rule 56(d) "as requiring, rather than merely

22    permitting, discovery" when party has been denied opportunity to pursue it). Courts may grant a

23    continuance pursuant to Rule 56(d) if the party requesting relief demonstrates, by affidavit or

24    _____

25    [3]    Although Enova maintains that this information is not "relevant" to the issues surrounding summary judgment, this Court's March 26, 2014 Order specifically held that evidence concerning

26    the "nuances of the relationships among the Defendants" is relevant to the agency analysis. Dkt. 164 at pg. 9.

27    [4]    Even though case law prior to the 2010 amendment of Rule 56 refers to Rule 56(f), "the analysis applies equally to current Rule 56(d)." *Allen v. United States*, No. CV 03-01358-DAE-RJJ,

28    2014 WL 4446269, at *10 n.2 (D. Nev. Sept. 9, 2014).

declaration, that it cannot present facts essential to justify its opposition to summary judgment. Fed. R. Civ. P. 56(d); *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Specifically, the party seeking relief under Rule 56(d) must (1) specify the facts it hopes to gain from further discovery, (2) show that such facts exist, and (3) demonstrate that the facts are essential to its opposition. *Family Home*, 525 F.3d at 827 (citing *Cal. Dep't of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir.1998)).

Where, as here, a timely motion to compel is pending before the court, summary judgment should be postponed until the court has ruled on that motion. *See Haney v. Nelson*, 476 Fed. App'x 147, 147–48 (9th Cir. 2012) (stating that pending motion to compel should have put court on alert and prevented it from taking up summary judgment motion); *VISA Int'l*, 784 F.2d at 1475 (noting that denial of Rule 56(d) motion is "especially inappropriate where the material sought is also the subject of outstanding discovery requests").

## ARGUMENT

**I.     Defendants' duplicative summary judgment arguments seek dismissal of this lawsuit based on theories of vicarious liability.**

On October 25, 2014, Defendants CPS, LeadPile, Enova, and Pioneer filed summary judgment motions arguing that they could not be vicariously liable for the text message transmissions here under the theories of actual authority, apparent authority, or ratification. (*See* dkts. 233, 237, 239 & 240.)[5]  Specifically, the Defendants argue, *inter alia*, that they had no actual control over the transmitter of the text messages (AC Referral Systems), that they accepted no benefits from the text message transmissions such that they "ratified" the conduct, and that they had no knowledge of the text message marketing activities.  (*See id.*) Based on these arguments, Defendants claim that they are entitled to judgment as a matter of law. Notably, Defendants do not address the theories of sub-agency or alter-ego in their briefing, although these theories provide a basis of liability that would preclude summary judgment being entered in their favor.

In the Court's March 26, 2014 Order, it held, consistent with the FCC's May 9, 2013 Order,

---

[5]     Defendants also moved for summary judgment based on their arguments that the equipment that sent these text messages did not qualify as an "automatic telephone dialing system."  Because the discovery sought by Plaintiff here does not impact this issue, Plaintiff is substantively responding to this portion of the brief on the merits.

9

that vicarious liability under the TCPA is governed by federal common law principles of agency, and that the forms of vicarious liability as found in the Restatement Third of Agency are applicable to the TCPA. (Dkt. 164 at 6, 8.) Specifically, the Court recognized the validity of the recent FCC ruling, *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6586 (May 9, 2013) (hereinafter *2013 Dish Network Order*), which set forth broad principles of liability in circumstances such as this, where a seller uses third party marketers.

Pertinent to this action, the FCC stated:

> [C]onsistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.

*Id.* at 6588.  The Ninth Circuit Court of Appeals recently endorsed the FCC's Order in a published opinion, and cited approvingly to this Court's March 26 Order in finding that the FCC's rules govern vicarious liability under the TCPA. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014).

There are several theories of vicarious liability under which Defendants can be liable in this case, including actual authority, apparent authority, sub-agency, ratification, and alter-ego liability. An agent possesses actual authority "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) Of Agency § 2.01; (Dkt. 164 at 8.). Further, "a principal whose agent appoints a subagent to perform the duties that the principal authorized the agent to perform" is also vicariously liable for the actions of that subagent. *See* Restatement (Third) Of Agency § 3.15; (Dkt. 164 at 8).

Under the theory of apparent authority, a seller can be held liable for a sender's actions if "a reasonable consumer would [] assume that the telemarketer was acting as the [service provider's]

10

authorized agent." *See Dish Network*, 28 F.C.C. Rcd. at 6592-93.  And finally, ratification occurs

where the principal "affirm[s] . . . a prior act done by another, whereby the act is given effect as if

done by an agent acting with actual authority."  Restatement (Third) Of Agency § 4.01; (*see also*

Dkt. 164 at 8). Ratification is predicated upon the principal's knowledge of actions that have

already occurred, Restatement (Third) Of Agency § 4.06, and as the Court recognized, may occur

through the knowing acceptance of benefits. (Dkt. 164 at 8.)

Also relevant in this case is an alter-ego theory of liability. "A party can also be vicariously

liable if it is an alter ego of a party engaging in wrongdoing." *Thomas v. Taco Bell Corp.*, 879 F.

Supp. 2d 1079, 1085 (C.D. Cal. 2012) (finding that an alter-ego theory of liability applicable to the

TCPA); *see also Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983)

("[W]here a corporate entity is so extensively controlled by its owner that a relationship of principal

and agent is created, we have held that one may be held liable for the actions of the other."); *First*

*Nat. City*, *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983)

("Where the alter ego doctrine applies . . . the two corporations are treated as one for purposes of

determining liability.").

**II.    Plaintiff is unable to respond to adequately respond to Defendant CPS and LeadPile's summary judgment motions before receiving outstanding discovery and obtaining an order on Plaintiff's motion to compel against CPS.**

The documents and discovery responses that Plaintiff moved to compel from CPS bear

directly on the theories of liability that CPS argues in its summary judgment motion.  CPS claims in

its brief that it had no knowledge of the text message marketing activities at issue in the Complaint,

and, as a result, cannot be liable under a ratification theory of liability. (*See* Dkt. 237.)  Further, as

explained above, Plaintiff has moved to compel evidence that bears on CPS's alter-ego relationship

with co-Defendant LeadPile LLC.  If it is shown that LeadPile is simply an alter-ego of CPS, then

the knowledge and activities of LeadPile all of the sudden become very relevant for a couple of

reasons. For one, record evidence already exists showing that LeadPile was aware of its lead seller's

use of text message marketing. (Ochoa Decl. ¶ 15.) Thus, under an alter-ego theory, LeadPile's

knowledge can be imputed onto CPS. And, correspondingly, CPS's acceptance of the some of the

various benefits from the text message marketing—such as the purchase of leads—could be

11

imputed onto LeadPile. Thus, this discovery is essential to Plaintiff's ability to present a full

opposition to CPS's and LeadPile's Motions on their defenses to vicarious liability.

### A. Plaintiff moved to compel evidence related to a ratification theory of liability, which is essential to Plaintiff's opposition.

Plaintiff's Document Request No. 80, Request to Admit Nos. 1-22[6], and Interrogatory Nos.

17 and 19 relate to CPS's knowledge as to how its leads were being generated (in particular,

through the use of text message marketing), and the benefits CPS accepted from this type of

marketing.[7] As explained above, a vicarious liability theory of ratification is predicated on

knowledge.  *See* Restatement (Third) Of Agency § 4.06; *see also* dkt. 164 at 8); *2013 Dish Network*

*Order* at 6587 ("[A] seller may be liable for the acts of another under traditional agency principles if

it ratifies those acts by knowingly accepting their benefits."). CPS continues to resist answering

these questions and clings to objections the Magistrate found untenable. For instance, in response to

Plaintiff's Requests to Admit Nos. 1, 2, & 7, CPS claims that the term "at some point between" is

vague and ambiguous, and further objected claiming, incredibly, that it cannot "possibly know" the

awareness of its own employees. (*See* dkt. 214-4.) CPS likewise claimed that it "lacked sufficient

information" to admit or deny whether it was aware that text message marketing was used in the

industry to generate leads for online, payday loans.  (*Id.* at Request No. 3.) Given these statements,

and as Judge Leen indicated at oral argument, there are real concerns about what type of inquiry

CPS even conducted before it responded to Plaintiff's discovery requests. (Transcript, at 21:11-

22:18.)

Plaintiff's Document Request Nos. 74-75, Request to Admit No. 4, 12-14, and Interrogatory

Nos. 18 and 24 relate to CPS's knowledge of the TCPA and the steps CPS took to ensure that its

leads were not being generated in violation of the TCPA.[8]  Courts and the FCC have found that

whether a principal knew or should have known that its agent's conduct violated the TCPA is

relevant to ratification.  *See In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 2014 WL

---

[6]      As set forth in Plaintiff's Reply in support of his Motion to Compel (dkt. 222 at pg. 8),
Plaintiff believes that CPS has properly amended its responses to Requests to Admit Nos. 8-12 and
17-18, however, this presumes that the Magistrate Judge's forthcoming Order on Plaintiff's Motion
to Compel CPS finds that CPS conducted a "reasonable inquiry" prior to providing responses.
[7]      *See* Dkt. 199-2 at Ex's. A-C.
[8]      *See* Dkt. 199-2 at Ex's. A-C.

**Plaintiff's Response under Rule 56(d)**                    **No. 2:12-cv-00528-APG-(PAL)**

316476, at *6 (N.D.W. Va. Jan. 28, 2014); *see also 2013 Dish Network Order* at 6592; *see also Tel-Ads, Inc. v. Trans-Lux Playhouse, Inc.*, 232 F. Supp. 198, 201 (D.D.C. 1964). ("A principal is charged with knowledge of his agent's conduct, not only by what he knows, but also by what he would have ascertained if he had used ordinary care in looking after the conditions of the business affairs in which the agent was engaged.")

In this context, CPS's awareness of text message marketing in the industry is relevant to the question of whether CPS "should have known" violations of the TCPA were likely to be occurring. CPS, however, does not even believe this information is "relevant," and resists production on this ground. (Dkt. 214, at pg. 9.)

      **B.**     **The pending discovery that Plaintiff moved to compel relating to an alter-ego theory of liability will bear on not only CPS's liability, but also LeadPile's, and he has a right to obtain discovery on this theory before responding to summary judgment.**

Plaintiff issued discovery on CPS seeking to discover the nature of its relationship with Co-Defendant LeadPile and other closely related entities based on evidence from numerous sources suggesting that CPS and LeadPile (along with its "sister" companies) are in fact operating as one company for each other's benefit. (*See* dkt. 199-2, Ex's A-B.) Plaintiff's Document Request Nos. 64-69 and 83-103, and Request to Admit Nos. 30-31 and 33-37 seek to uncover whether an alter ego relationship existed between CPS and LeadPile. (*Id.*)

Several requests concern Carey V. Brown, who is CPS's Vice President and sole shareholder, and also the suspected "ringleader" of CPS and all of its related entities, as well as Ron Beaver, CEO of one of CPS's suspected "shell companies." (Dkt. 199-2, Ex. A, Doc. Req. Nos. 64, 66-67; Ex. B, Requests to Admit Nos. 30-31, 34-37.) Plaintiff believes these requests will result in the production of relevant evidence because of information that has come to light in court filings in other proceedings. First, although deposition testimony provided by Brown himself in other litigation discusses the creation of "shell companies" around CPS (*see* dkt. 131-1 ¶ 9), both Brown and Beaver expressly disputed this claim, and say that the companies are all "distinct entities." (Dkt. 199-2, Ex. K.)  Plaintiff is entitled to discovery to confirm or refute these claims.

Second, Carey V. Brown and Ronald Beaver along with several of their "shell" companies

(including Defendant CPS, MyCashNow.com, Inc., Area203, and the law firm that formerly

represented CPS in this action, Scenic City Legal Group[9]) were recently indicted in a 39-count

complaint filed in the New York Supreme Court for violating New York State usury laws in

connection with their payday loans, (*see* dkt. 227, Ex. A), some of which had their start as text

message spam. The indictment states that Carey V. Brown and his co-Defendants in that action

> carefully crafted their corporate entities to obscure the ownership and secure
> increasing profits.   In furtherance of the conspiracy, the defendants and others
> designed a closed "wheel" where nearly every company involved in the payday loan
> process—which included approval, underwriting, funding, collection, marketing,
> design, accounting, lead generation, and customer service—were owned, operated,
> or controlled by defendant Carey Vaughn Brown.

(*Id.* at pg. 12.)

Plaintiff's discovery requests seek to prove facts such as these, which are critical in making

an alter-ego determination as to CPS and LeadPile. For example, Document Request Nos. 96-103,

and Request to Admit Nos. 30-31 and 33-37 relate to the interrelatedness of Carey Brown's

suspected shell companies, including CPS, Area203, LeadPile, and MyCashNow, as well as any

corporate formalities observed by CPS.  (Dkt. 199-2, Ex's. A-B.)[10] Similarly, Plaintiff seeks

documents related to the organization of CPS and its "sister companies" (*Id.* Ex. A at Doc. Req.

Nos. 83-85, 91-95). Factors such as interrelatedness and observation of corporate formalities are

key indicators of an alter ego relationship. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.

2001) (taking into account "unity of interest and ownership"); *see also Interactive Fitness, Inc. v.

Basu*, 2011 WL 1870597, at *4 (D. Nev. May 13, 2011) ("Numerous 'critical facts' must be present

to establish alter ego liability. Among these critical facts, are inadequate capitalization,

[9]     *See* dkt. 12 at pg. 1 (identifying David Hutton of Scenic City Legal Group as the attorney
representing Credit Payment Services, Inc.). Obviously, this representation raises more questions
about the "reasonable inquiry" conducted by CPS in responding to certain of Plaintiff's discovery
requests.

[10]    Document Request Nos. 68-69 relate to CPS's treatment of certain individuals as employees
and contractors.  Unity of employees and contractors is generally a sign of an alter-ego relationship.
*See Nachman v. Regenocyte Worldwide, Inc.*, 2014 WL 537646, at *4 (D. Nev. Feb. 5, 2014)
(taking into account whether the two companies "employ the same employees and contractors");
*Oddenino & Gaule v. United Fin. Grp. of Illinois*, 201 F.3d 444 (9th Cir. 1999) (taking into account
"the use of the same office location, employment of the same employees.")

14

1    commingling of assets, and the disregard of corporate formalities."); *Oddenino*, 201 F.3d at 444

2    (same)

3           When it is proven that LeadPile and CPS are nothing more than alter-egos of one another,

4    then the knowledge of each company, and each companies' corresponding liability in this case, can

5    be imputed on one another. *Bank*, 462 U.S. at 629; *First Nat. City*, *M/V Am. Queen*, 708 F.2d at

6    1490.  Thus, before Plaintiff can fully respond to Defendants' claims that they are entitled to

7    judgment as a matter of law, he must, at a minimum, be afforded the chance to find out if the Court

8    will compel CPS to produce this information. *See Garrett v. City & Cnty. of San Francisco*, 818

9    F.2d 1515, 1519 (9th Cir. 1987) (holding that the district court abused its discretion in granting

10   defendants' motion for summary judgment before first determining the merits of plaintiff's pending

11   discovery motion.) As discussed above, and as indicated at oral argument on Plaintiff's Motion,

12   Plaintiff is confident that the Court will compel CPS to produce additional discovery materials that

13   bear on both CPS and LeadPile's liability in this case.[11]

14          **C.     Enova must produce invoices relating to LeadPile before Plaintiff can
                      adequately respond to Defendant's summary judgment motion.**

15          Defendant Enova argues in its summary judgment brief that it "did not receive any leads or

16   benefit as a result of the Text Message" (dkt. 233 at 3) and that there is "no evidence that Enova

17   ratified AC Referral's conduct by knowingly accepting the benefits of any unauthorized text

18   message" (dkt. 233 at 17).  Enova does not dispute that it purchased leads from Click Media

19   through lead broker LeadPile. (Dkt. 233, pg. 4.) Enova has produced some, but not all, of the

20   invoices provided to Enova from LeadPile for the acquisition of customers, or "leads" through

21   LeadPile. These invoices reflect the types of "leads" purchased by Enova (i.e., "payday") as well as

22   the specific LeadPile campaign under which these leads were purchased. (Ochoa Decl. ¶ 16.) Enova

23   has not produced invoices from December, 2011 (the beginning of the class period in this case),

24   claiming that, although they have these documents in their possession, they cannot access these

25   invoices without an "invoice number."  (Ochoa Decl. ¶ 14.)

26

27   ────────────────

28   [11]     Understanding the nature of the relationship between LeadPile and CPS will also shed light
             on LeadPile's relationship with the other Lender Defendants in this case (Enova and Pioneer).

                                                    15

1    These invoices are critical to Plaintiff's ability to present a full opposition to Enova's

2    Motion, as they reflect Enova's acceptance benefits, or "leads" from LeadPile, who in turn

3    contracted with Click Media to obtain those leads, which resulted in the transmission of the text

4    messages here.[12] *See, e.g.,* Dkt. 164 at 9.

5    **III.    Due to the overlapping nature of Defendant's summary judgment briefs, Plaintiff**
     **requests leave to respond substantively to all of the Defendants' arguments concerning**
6    **vicarious liability in one brief.**

7    As outlined above, there is still outstanding discovery and a pending motion to compel that

8    prevent Plaintiff from fully responding to Defendants' motions for summary judgment.  The

9    Defendants in this case have all moved for summary judgment advancing nearly identical,

10   overlapping arguments. In fact, Enova and LeadPile's summary judgment briefs "incorporate" all of

11   the arguments and evidence advanced by every other Defendant in their Motions. (*See* dkt. 233, pg.

12   2, fn. 2; dkt. 240, pg. 14 fns. 3 & 4, pg. 21 fn. 5, pg. 26 fn. 6.) In situations such as this, Courts favor

13   consolidated responses to multiple summary judgment briefs that make overlapping arguments and

14   rely on much of the same evidence. *See Boise Tower Associates, LLC v. Washington Capital Joint*

15   *Master Trust*, No. CV 03-141-S-MHW, 2007 WL 1035158, at *13 (D. Idaho Apr. 2,

16   2007) *aff'd* 321 F. App'x 694 (9th Cir. 2009) ("Piecemeal filings are generally disfavored in federal

17   court."); *Landmark Ins. Co. v. Pac. Indem. Co.*, No. 11-CV-0535-LAB-POR, 2012 WL 2887222, at

18   *8 (S.D. Cal. July 13, 2012) (stating that separate motions for summary judgment that make "more

19   or less, the same arguments" need not be considered separately); *Anderson v. Baseball Club of*

20   *Seattle*, No. C09-0850RAJ, 2010 WL 5463828, at *1 n.1 (W.D. Wash. Dec. 28, 2010) (treating

21   multiple motions for summary judgment as one where motions "cover primarily the same issues and

22   make many of the same arguments").

23   The most efficient use of the Courts' and the Parties' time and resources would be for

24   Plaintiff to file a consolidated opposition[13] to Defendants' overlapping and repetitive arguments

25   ─────────────────────
     [12]    In addition, Enova filed numerous documents under seal in support of their Summary
26   Judgment Motion (dkt. 245), but failed to provide these to Plaintiff until November 14, 2014.
     (Ochoa Decl. ¶ 17.) Also, as described above, LeadPile did a "document dump" on Plaintiff of
27   approximately 6,000 pages of documents three days before moving for Summary Judgment. (Ochoa
     Decl. 13.)
28   [13]    Plaintiff has also moved the Court for an extension of the dispositive motion deadline to

16

1    concerning vicarious liability under the TCPA, and only after all of the relevant evidence has been

2    produced. This would allow the Court to make determinations on summary judgment based on a

3    complete evidentiary record, which is important, since summary judgment briefing is "disfavored

4    where relevant evidence remains to be discovered." *Haney v. Nelson*, 476 F. App'x 147 (9th Cir.

5    2012).

6                                              **CONCLUSION**

7            For the foregoing reasons, Plaintiff Flemming Kristensen respectfully requests that this

8    Court enter an order:

9            1.    Staying Plaintiff's obligation to file a response to Defendants' arguments concerning

10                 vicarious liability until after the resolution of Plaintiff's Motion to Compel against

11                 CPS and any further document production is complete;

12           2.    Granting Plaintiff Leave to file a consolidated opposition to Defendants' summary

13                 judgment arguments as to vicarious liability; and

14           3.    In the alternative, if the Court does not grant some or all the relief requested in this

15                 Response, Plaintiff requests 28 days to respond to Defendants' arguments concerning

16                 vicarious liability.

17
                                              Respectfully submitted,
18
                                              **FLEMMING KRISTENSEN**, individually and behalf
19                                            of a Class of similarly situated individuals
     Dated: November 17, 2014
20
                                              By: /s/  John C. Ochoa
21                                            One of Plaintiff's Attorneys

22                                            John Benedict, Esq.
                                              LAW OFFICES OF JOHN BENEDICT
23                                            Nevada Bar No. 005581
                                              2190 E. Pebble Road, Suite 260
24                                            Las Vegas, Nevada 89123
                                              Telephone: (702) 333-3770
25                                            Facsimile: (702) 361-3685
                                              john.benedict.esq@gmail.com
26
     _____
27   allow an opportunity for all of the relevant evidence to be produced, and for a ruling on Plaintiff's
     Motion to Compel CPS, before he files his affirmative summary judgment motion.  (Dkt. 232.)  As
28   explained in that brief, Plaintiff also intends on filing a consolidated Motion for Summary judgment
     to preserve the Court's time and resources.

                                                    17

     **Plaintiff's Response under Rule 56(d)**                    **No. 2:12-cv-00528-APG-(PAL)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ryan D. Andrews (Admitted *Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Flemming Kristensen*

**Plaintiff's Response under Rule 56(d)**                      **No. 2:12-cv-00528-APG-(PAL)**

## <u>CERTIFICATE OF SERVICE</u>

I, John C. Ochoa, hereby certify that on November 17, 2014, I electronically filed the foregoing *Plaintiff's Response under Fed. R. Civ. P. 56(d) to Defendants' Motions for Summary Judgment as to the Issue of Vicarious Liability and Declaration in Support* with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: November 17, 2014                    /s/  John C. Ochoa

19