UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FLEMMING KRISTENSEN,

Plaintiff,

v.

CREDIT PAYMENT SERVICES, INC.,

Defendant.

Case No. 2:12-cv-0528-APG-PAL

ORDER

(Mot Compel – Dkt. #199)

Before the court is Plaintiff's Motion to Compel Defendant Credit Payment Services, Inc. to Produce Documents and Amended Answers to Requests to Admit and Interrogatories (Dkt. #199). The court has considered the Motion, Defendant CNU Online Holdings, LLC's, Response (Dkt. #210), Credit Payment Services, Inc.'s Response (Dkt. #214), Plaintiff's Reply (Dkt. #222), Plaintiff's Notice of Supplemental Authority (Dkt. #227) and Credit Payment Services, Inc.'s Response to Plaintiff's Notice of Supplemental Authority (Dkt. #228), as well as the arguments of counsel at a hearing conducted on the motion.

## BACKGROUND

### I. Complaint and Procedural History.

The Complaint (Dkt. #1) in this case was filed March 29, 2012, and a First Amended Complaint (Dkt. #35) was filed March 8, 2013. The Plaintiff alleges Defendants violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C.§ 227. The Plaintiff alleges that Defendant Credit Payment Services, Inc. ("CPS") and co-Defendants Enova and Pioneer are short-term payday lenders who contracted with LeadPile in October 2010, or earlier, to generate customers. LeadPile allegedly contracted with various companies, including Click Media, to generate leads and drive web traffic to Defendants' websites. Plaintiff alleges Click Media

"directed" various unnamed affiliate marketers to transmit *en masse* text messages containing links that directed customers to various websites operated by Defendants and/or their agents.

In an Order (Dkt. #164) entered March 26, 2014, the district judge denied Defendants' motions to dismiss and granted Plaintiff's motion to certify a class of consumers who received unauthorized text messages on their cell phones promoting CPS's payday loan products. The order denied Defendant Click Media and LeadPile's motion to dismiss which argued Plaintiff had insufficiently pled that either Click Media or LeadPile or its purported agents sent text messages to him. Plaintiff opposed the motions to dismiss arguing that: (1) the ordinary rules of agency do not apply to vicarious liability under the TCPA, and that a Defendant is liable if a text message was sent on its behalf such that it received some benefit from the text message; and (2) even if the ordinary rules of agency apply, the TCPA claim survives because the first amended complaint's factual allegations support a reasonable inference that the text message to the Plaintiff was sent by agents of Click Media and LeadPile, respectively.

The district judge applied a recent FCC ruling, as well as applicable Ninth Circuit case law and concluded that Plaintiff's first amended complaint pled sufficient facts to state a claim that the party who actually sent the text message to Plaintiff was acting as an agent or subagent of LeadPile and/or Click Media. Accepting the complaint allegations as true for purposes of his ruling, the payday lender Defendants contracted with LeadPile, who in turn, contracted with Click Media. Click Media directed another entity to send a text message to multiple persons. That message included a link which automatically redirected to a site controlled by Click Media. Upon completing a loan application on Click Media's site, the consumer was directed to a site owned by LeadPile who then sold the leads to the payday lender Defendants.

Based on these factual allegations, the district judge found that there was a "downhill" series of contractual relationships starting with the payday lender Defendants down through Click Media, and that the benefits of the text messages flowed back "uphill" through Click Media and LeadPile to the payday loan lender Defendants. He therefore found that Plaintiff had sufficiently pled a plausible agency relationship based on actual authority (arising through contractual relationships), apparent authority (based on a reasonable person's perception of who

authorized the sending of the text message), and ratification (based on the apparent benefits received by Click Media and LeadPile). *See* Order (Dkt. #164) at p.9.

The order also found that the Plaintiff had met the legal standard for class certification and certified a class of all individuals who were sent text messages from three separate telephone numbers from December 5, 2011, through January 11, 2012.

**II. The Motion to Compel.**

The motion to compel involves written discovery requests served by Plaintiffs on March 31, 2014, shortly after the district judge's order. Specifically, Plaintiff served forty-two requests for production of documents, thirty-seven requests for admissions, and nine interrogatories. CPS responded to these requests on April 30, 3014, but did not produce any documents and asserted a number of boilerplate objections. After the meet-and confer process ran its course, this motion was filed.

Plaintiff argues that the written discovery served after the hearing on the motions to dismiss and to certify a class was served to discover information relevant to the theories of liability the district judge acknowledged in his order. The discovery requests seek evidence relevant to Plaintiff's theory that CPS is vicariously liable for the actions of its agents under actual authority, subagent authority, or alter ego theories. The discovery requests are targeted at uncovering the nature of CPS's relationship with its marketers, CPS's ratification of its marketers' lead generation practices, and alter ego liability. CPS failed to provide substantive responses to the interrogatories and asserted nearly identical boilerplate objections to each request for production that they were overbroad, unduly burdensome, oppressive, harassing, and seek information and documents not relevant or reasonably calculated to lead to discovery of admissible evidence. CPS also frequently objected that the requests seek information outside of CPS's possession, custody and control, although each of their requests ask for documents relating to CPS's sister companies and CPS itself. Additionally, CPS responded to some discovery requests, with the added remark that "without waiving said objections, see documents previously produced."


CPS responded to twenty-two of the thirty-seven requests for admissions that it had made reasonable inquiry and the information known or readily obtainable by it was insufficient to enable it to admit or deny the request. CPS also objected to common and ordinary terms as vague and ambiguous, and provided unresponsive answers.

CPS opposes the motion to compel arguing it timely objected to Plaintiff's discovery requests. CPS asserts that the narrow issue before the court is whether CPS can be held vicariously liable for the actions of non-parties AC Referral System, LLC, Identity Defender, Inc., and 360 Data Management, LLC. CPS argues that Plaintiff's discovery requests are nothing more than a fishing expedition to compel wholly irrelevant information and that the motion should be denied. CPS also argues that the requests are overly broad and burdensome, and that Plaintiff's requested discovery regarding alter ego liability is irrelevant to this lawsuit. CPS maintains that its objections are all proper and should not be overruled. CPS also argues that Plaintiff seeks information regarding the actions or inactions of non-parties, and that a number of the requests are simply impossible to answer. CPS opposes imposition of sanctions arguing its answers were substantially justified because the parties have genuine disputes over which reasonable people could differ as to the appropriateness of the responses.

After the motion to compel was filed, Defendant CPS served amended discovery responses to some, but not all, of the discovery requests in dispute in the motion to compel. Plaintiff's reply argues that CPS's supplemental discovery responses are a concession that its initial discovery responses were deficient. Many of the responses are still deficient and reassert the same boilerplate objections. Plaintiff asserts that CPS is attempting to have the court adopt a standard of vicarious liability at odds with the district judge's March 26, 2014, order. Plaintiff is entitled to discovery about CPS's knowledge of text message marketing, its acceptance of benefits flowing from those transmissions, its relationship with co-Defendants and other third parties involved in the text message transmissions at issue.

The declaration of CPS's own expert, Lisa Snow, which is attached as an exhibit to CPS's opposition, confirms that certain class members who received payday loan text messages at issue in this case eventually received a loan from CPS. Although applying for a loan is not a

necessary prerequisite to a TCPA claim, CPS's expert's declaration proves that CPS was the beneficiary of the text message advertising. Plaintiff is entitled to discovery based on an alter ego theory of liability which is not a separate claim for relief, but a basis for imposing liability on CPS. CPS has not met its burden of establishing that the burden of production outweighs any benefit of the requested discovery merely by asserting the information consists of sensitive financial information. An amended protective order is in place that will permit CPS to designate documents as confidential and allow for heightened "Attorney's Eyes Only" protection for certain materials.

Plaintiff also argues that none of CPS's other objections are meritorious. CPS has not described the reasonable inquiry it claims to have conducted to respond other than suggesting in some of its amended discovery responses that it reviewed employee e-mail and correspondence.

After reviewing the supplemental responses, Plaintiff agrees that CPS has properly amended Responses to Document Request Nos. 65, 67, 71, 74, 76 through 78, 80, 82, and 87 – 89, Responses to Request to Admit Nos. 8-12, 17-18 and 28, and Interrogatories Nos. 20 and 23. However, CPS's continued use of unsupported boilerplate objections make it difficult to determine if CPS is actually responding to the discovery requests as posed by Plaintiff. Plaintiff seeks an order compelling amended responses to the remaining requests at issue in the initial motion and sanctions in the form of reasonable expenses and attorney's fees incurred in filing the motion to compel.

## DISCUSSION

Discovery in this case has been contentious and the court has resolved many of the parties' discovery disputes. CPS has previously been compelled to provide discovery it resisted. After reviewing CPS's amended discovery responses, Plaintiff believes that CPS has properly amended certain of them, but argues that a number of the discovery responses are still deficient.

The court has carefully reviewed and considered the voluminous moving and responsive papers and finds that CPS's supplemental discovery responses are still grossly deficient in several regards. CPS resists discovery arguing the requests are overly broad and burdensome, and that Plaintiff's requested discovery regarding alter ego liability is irrelevant to this lawsuit.

As the party resisting discovery, CPS has the burden of showing these discovery requests are unduly burdensome or oppressive. *See, e.g., Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 618 (C.D. Cal. 2010) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). CPS's unsupported allegations of undue burden are improper especially when it has failed to submit any evidentiary declaration supporting these objections. *Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

CPS's Amended Answers to Second Request for Production of Documents contain nearly three pages of "general objections" which it purports to incorporate into each response as if set forth in full. The general objections are followed by additional objections to the specific requests. The court finds that CPS's general and additional objections are boilerplate objections which are designed to evade, obfuscate, and obstruct discovery. Black's Law Dictionary defines the word "boilerplate" as "Ready-made or all-purpose language that will fit in a variety of documents." *Black's Law Dictionary*, Ninth Ed.

Federal courts have routinely held that boilerplate objections are improper. *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000) (collecting cases and sanctioning a lawyer for using boilerplate objections in response to requests for production of documents). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo Owner's Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) (citations omitted). The Ninth Circuit has held "that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of document are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. District Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

As indicated, CPS asserted three pages and twelve separate paragraphs of voluminous boilerplate objections to all of the discovery requests at issue. CPS objected to the instructions and definitions "to the extent they are vague, ambiguous, overbroad, overly burdensome, do not describe the information sought with requisite particularity, and/or require compliance and responses beyond the requirements of and/or at variance with the Federal Rules of Civil Procedures and the Local Rules of the District of Nevada. The general objections object to the

requests to the extent they seek information protected from disclosure by any privileged doctrine, seek confidential information, trade secret, proprietary, financial or commercially sensitive information, information outside Defendant's possession, custody or control, or matters of public record or otherwise equally available to Plaintiff. In paragraph 10 of the general objections, CPS indicates that it "will withhold all privileged documents created or prepared by any of its employees, attorneys, agents, or representatives on or after March 12, 2012." It states that this categorical identification is "considered sufficient to satisfy any identification requirement necessary to properly assert privilege or immunity for those documents." It is wrong.

These boilerplate objections are improper, fail to preserve any privilege, and are no justification for failing to withhold responsive documents. The objections are therefore overruled and stricken. CPS's boilerplate relevancy objections are also overruled and stricken. The majority of the discovery requests still in dispute seek information related to Plaintiff's theory that CPS is vicariously liable for the actions of its agents under actual authority, subagent authority, or alter ego theories which the district judge has recognized apply to Plaintiff's TCPA claim in denying the Defendants' motion to dismiss.

This is not the first time the court has granted Plaintiff's motion to compel against CPS overruling and striking CPS's boilerplate objections. At the hearing on this motion, counsel for CPS pointed out that new counsel were now on the case, and had supplemented CPS's discovery responses with the court's prior ruling in mind. However, counsel stood by the objections and argued the amended discovery responses served after the motion to compel was filed complied with CPS's discovery obligations. The court disagrees.

The court fully appreciates that the vast majority of litigators are trained to make these types of objections. Asserting frivolous objections is often confused with zealous advocacy of a client's interests. Plaintiff's motion cites a quote from a prior order of this court finding that the party's general and boilerplate objections look like a form provided to the firm's most junior attorney thirty years ago to teach new lawyers how to obstruct discovery. *See Queensridge Towers, LLC v. Allianz Global Risk Ins. Co.*, 2014 W.L. 496952 at *5-6 (D. Nev., February 4,

2014). The same can be said of CPS's general objections and boilerplate objections accompanying each of the document requests in dispute.

The court will compel CPS to provide supplemental responses **without objections.** The court finds that CPS's boilerplate objections are insufficient to preserve privilege and tantamount to no objection at all. Because lawyers seem to be conditioned to assert these objections without appreciating the consequences, the court will permit CPS to withhold documents protected by the attorney-client privilege. However, the court will compel CPS to provide a privileged document log that fully complies with the requirements of Rule 26(b)(5) identifying any documents withheld on the basis of privilege.

The court is not satisfied that CPS has complied with its duty to make reasonable inquiry to respond to Plaintiff's discovery requests. Rule 26(g) imposes obligations on attorneys and clients signing disclosures and discovery requests, responses and objections. Rule 26(g)(1) requires every discovery request, response, or objection to be signed by at least one attorney of record, or by the party personally. The rule provides that by signing a discovery request, response, or objection, "an attorney or party certifies to the best of the person's knowledge, information, and belief **formed after a reasonable inquiry**" the response is complete and correct as of the time made, and with respect to a response or objection, it is consistent with the rules, not interposed for any improper purpose, and neither unreasonable nor unduly burdensome or expensive.

Here, CPS argues that it cannot possibly know whether its own employees were "aware" of certain circumstances about which Plaintiff seeks discovery, and that CPS "cannot, without significant hardship, gain access to such individuals and cannot reasonably speculate as to their knowledge." CPS has not identified what efforts it made to discharge its duty of reasonable inquiry. CPS has not met its burden of establishing that responding to these discovery requests would present an undue burden or expense by its conclusory, unsupported and self-serving statements. The court will therefore require CPS to comply with the reasonable inquiry standard described by the court in *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554-56 (N.D. Cal. 1987). Specifically, CPS will be required, at a minimum, to distribute the

discovery requests in dispute to its employees and agents potentially possessing responsive information, and to account for the collection and subsequent production of the information to the Plaintiff. To assure that CPS actually makes a "reasonable inquiry," the court will also order it to provide Plaintiff with declarations or affidavits detailing the nature of its "reasonable inquiry" to locate responsive documents.

Additionally, CPS claims that some of the Plaintiffs requests ask for documents not in its care, custody or control, or for documents that Plaintiff may obtain by other sources, or documents that are publicly available. These objections are also not well taken. Rule 34 requires a party to produce or permit inspection of documents responsive to a request for production in the possession, custody or control of the responding party. Federal courts have consistently held that for purposes of applying Rule 34, a party is deemed to be in possession, custody or control if it has actual possession, custody or control of the documents, **or has the legal right to obtain the documents on demand**. (emphasis supplied). *United States v. Int'l Union of Petrolium & Indus, Workers, AFL CIO*, 870 F.2d, 1450, 1452 (9th. Cir. 1989). CPS has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery, and has an affirmative duty to seek the information easily available to it from its employees, agents or others subject to its control. *Farber and Partner, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal 2006) (internal citations and quotations omitted).

Finally, the court will also award reasonable costs and attorney's fees incurred by counsel for Plaintiff for the necessity of filing this motion pursuant to Rule 26(g) and Rule 37(a)(5). While the court will not grant the motion to compel in its entirety and finds that some of Plaintiff's discovery requests are overbroad on their face CPS only supplemented its responses after the motion to compel. Many of CPS's responses were incomplete and evasive especially when coupled with its voluminous boilerplate objections. Evasive, incomplete responses "must be treated as a failure to disclose, answer or respond." Rule 37(a)(4). Rule 37(a)(5) is explicit. If a motion to compel is granted, or if discovery is provided after the motion is filed, the court must, after affording an opportunity to be heard, order the resisting party to pay reasonable costs and attorneys' fees unless the three circumstances described in the rule are present.

For the reasons stated,

**IT IS ORDERED** that Plaintiff's Motion to Compel (Dkt. #199) is **GRANTED in part** and **DENIED in part** as follows:

1. CPS shall provide supplemental full and complete responses, without objections, to Plaintiff's Second Request for Production of Document Nos. 61, 63, 64, 75, and 83.

2. CPS shall have until December 5, 2014, to supplement its discovery responses, without objections, serve a privileged document log which fully complies with the requirements of Rule 26(b)(5) for any document withheld on the basis of privilege, and to provide Plaintiff with declarations or affidavits detailing the nature of CPS's "reasonable inquiry" to locate responsive documents.

3. Counsel for Plaintiff shall, no later than 14 days from entry of this order, serve and file a memorandum, supported by the affidavit of counsel, establishing the amount of attorney's fees and costs incurred in bringing its motion. The memorandum shall provide a reasonable itemization and description of the work performed, identify the attorney(s) or other staff member(s) performing the work, the attorney(s) or staff member(s) customary fee for such work, and the experience, reputation and ability of the attorney performing the work. The attorney's affidavit shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.

4. Counsel for CPS shall have 14 days from service of the memorandum of costs and attorney's fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, and any equitable considerations deemed appropriate for the court to consider in determining the amount of costs and fees which should be awarded.

5. Any request for relief not specifically addressed in this order is **DENIED**.

DATED this 24th day of November, 2014.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE