Ryan W. Mitchem (TN #022196)
Michael K. Alston (TN #013697)
K. Chris Collins (TN #029109)
HUSCH BLACKWELL LLP
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
Telephone: (423) 755-2663

Patricia Lee (NV #8287)
Joseph R. Ganley (NV #5643)
HUTCHISON & STEFFEN
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: (702) 385-2500
Facsimile: (702) 385-2086

*Attorneys for Defendant LeadPile LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FLEMMING KRISTENSEN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT PAYMENT SERVICES, INC., a Nevada corporation, f/k/a MYCASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA, LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company,<br><br>Defendants. | Case No. 2:12-CV-00528-APG (PAL)<br><br>**LEADPILE LLC'S RESPONSE TO PLAINTIFF'S RULE 56(c)(2) OBJECTIONS TO AND MOTION TO STRIKE THE DECLARATION OF MICHAEL FERRY AND OTHER EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Andrew P. Gordon<br><br>Magistrate: Hon. Peggy A. Leen |

COMES NOW Defendant LeadPile LLC ("LeadPile"), by and through the undersigned counsel, and for its Response to Plaintiff's Rule 56(c)(2) Objections to and Motion to Strict the Declaration of Michael Ferry and Other Evidence Submitted in Support of Defendants' Motions for Summary Judgment ("Plaintiff's Motion"), states as follows:

**INTRODUCTION**

Plaintiff, Flemming Kristensen ("Plaintiff"), has objected to and moved to strike as inadmissible the following categories of evidence that LeadPile either submitted or incorporated in support of its Motion for Summary Judgment: (1) CPS's Response to Plaintiff's First and Second set of Interrogatories, (2) excerpts of the deposition transcripts of Michael Ferry and James Gee, and (3) the Declaration of Michael Ferry. Plaintiff's objections are without merit. The evidence submitted relied upon by LeadPile in support of its Motion for Summary Judgment is admissible under the Federal Rules of Evidence.

**ARGUMENT**

**I. The Declaration of Michael Ferry is admissible**

Plaintiff objects to the admissibility of the Declaration of Michael Ferry[1] ("Ferry Declaration") on several grounds, including (1) that it is a "sham affidavit," (2) that it violates Federal Rule of Civil Procedure 402, (3) that it should be excluded as a discovery sanction and (4) that it is not based on personal knowledge. None of these proffered reasons provide a basis for excluding or striking the Ferry Declaration.

---

[1] The Ferry Declaration is attached to CPS's Motion for Summary Judgment. *See* Dkt. 237-1, Exhibit 10.

**A. The Ferry Declaration is not a "sham affidavit"**

Plaintiff objects to the Ferry Declaration on the basis it contradicts Michael Ferry's ("Ferry") earlier deposition testimony and is therefore a "sham affidavit" and should be disregarded for the purposes of deciding summary judgment. *See* Plaintiff's Rule 56(c)(2) Objections to and Motion to Strike the Declaration of Michael Ferry and Other Evidence Submitted in Support of Defendants' Motion for Summary Judgment ("Plf. Obj. and Mtn. to Strike Evid. Submitted in Support of Defs' Mtn. for Summary Judgment"), Dkt. 268, p. 1. However, Plaintiff's position is not supported by the facts or by Ninth Circuit law.

The general rule in the Ninth Circuit is that a party cannot create an issue of fact in opposition to a summary judgment pleading by submitting an affidavit that contradicts the party's prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The Ninth Circuit has made clear that the sham affidavit rule *only* applies to affidavits of party witnesses used to defeat summary judgment. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009). The rule does not apply to "disinterested" witness statements. Ferry is not a party to this case, and his declaration is not being used to defeat summary judgment. Therefore, his declaration does not fall under the purview of the sham affidavit rule.

Even if the sham affidavit rule did apply, which it does not, Ferry's deposition testimony does not contradict his declaration. The Ferry Declaration provides information about Data Doctor, a software program that was not discussed during his deposition. Therefore, the Ferry Declaration does not contradict his deposition testimony, because there is nothing in his deposition testimony to contradict. Furthermore, the Ferry Declaration is entirely consistent with the deposition testimony of James Gee, thus undercutting Plaintiff's argument that the Ferry

declaration is somehow being used improperly. *Compare* 237-1, Exhibit 10, Ferry Declaration *with* 237-1, Exhibit 6, Gee Depo., 31:8-20; 56:6-57:14; 130:23-131:3; 131:7-18.

Second, even if Plaintiff could demonstrate some contradiction between Ferry's deposition testimony and statements made by Ferry in his Declaration, it would not justify invocation of the sham affidavit rule. The Ninth Circuit has "recognized that the sham affidavit rule 'should be applied with caution.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir.1993); and also referencing *Nelson*, 71 F.3d 924). Instead of automatically applying the sham affidavit rule to discard witness affidavits, the "court must make a 'factual determination that the contradiction [is] actually a 'sham,'" as opposed to an attempt to explain certain aspects of confused deposition testimony, for example. In making this determination, the Court must consider, among other things, whether "the party submitting the affidavit or declaration provides a sufficient explanation for the contradiction." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d, 1223 (internal citations omitted) (citing *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 728 (9th Cir.1997), and *Martinez v. Marin Sanitary Serv.*, 349 F.Supp.2d 1234, 1242 (N.D. Cal. 2004)).

Plaintiff's assertion that the Ferry Declaration is a sham affidavit that should be excluded by this Court is not supported by the record or by Ninth Circuit law. It may be properly admitted to evaluate LeadPile's Motion for Summary Judgment.

**B. The Declaration of Michael Ferry should not be excluded as a discovery sanction or under Federal Rule of Evidence 402**

Plaintiff additionally objects to LeadPile's reliance on the Declaration of Michael Ferry on the basis that the Declaration was not produced in discovery by CPS. *See* Plf. Obj. and Mtn. to Strike Evid. Submitted in Support of Defs' Mtn. for Summary Judgment, ECF 268, p. 2.

Plaintiff cites *Malico, Inc. v. Cooler Master USA, Inc.*, 2013 WL 4482503, at *6 (N.D. Cal. Aug. 20, 2013), to support this proposition. However, Plaintiff's reliance on *Malico* is misplaced, as the evidence at issue in *Malico*, photographs purporting to be of a device infringing on plaintiff's copyright, can be distinguished from the Ferry Declaration. The photographs in *Malico* were stricken because they were responsive to written discovery served by the defendant. *See Malico*, 2013 WL 4482503, at *6. Here, the Ferry Declaration was not responsive to any discovery requests served by Plaintiff.[2]

Plaintiff claims that it has "repeatedly requested information regarding the equipment used to transmit text messages and whether consent was obtained," and that the Ferry Declaration should have been produced in response to such requests, specifically citing Plaintiff's First Set of Document Requests to Defendant CPS Nos. 12, 13, 14, 15, 19, 32 and 33. However, none of these Requests implicates the Ferry Declaration, and it is unclear why Plaintiff contends the Declaration is responsive to such Requests.

Request No. 12 seeks documents that refer or relate to text messages sent by CPS, or on behalf of CPS, to promote CPS' products or services. CPS did not employ or contract with Ferry or any person or entity related to Ferry, to send text messages on its behalf, and to the extent Ferry's Declaration relates to text messages, it has been, and continues to be, CPS's position that such messages were not sent on its behalf. *See* CPS Statement of Uncontroverted Facts ("SUF") ¶ 1, Dkt. 237. Ferry has also testified that he has never done business with CPS. *See* Exhibit A, Ferry Dep. 82:24-83:17.

---

[2] The second case cited by Plaintiff, *In re iPhone Application Litig.*, 2013 WL 1095456, at *2 (N.D. Cal. March 7, 2013), is distinguishable from the instant case for the same reasons. Unlike the circumstances presented here, the documents at issue in *iPhone Application* were responsive to written discovery requests.

Request No. 13 seeks documents related to the use of telephone number 330-564-6316 by CPS, or on behalf of CPS, and Request No. 14 seeks documents identifying the person or persons who utilized telephone number 330-564-6316. The Ferry Declaration does not reference or refer to telephone number 330-564-6316. It is undisputed that AC Referral, not Michel Ferry, owned this phone number. *See* Gee Decl. ¶ 11, Dkt. 113-1, Exhibit C. Additionally, Ferry has testified that he has no specific knowledge as to how AC Referral sent the text messages at issue. *See* Exhibit A, Ferry Dep. 78:21-79:9.

Request No. 15 seeks documents related to the sending of the text message identified in Plaintiff's Complaint. The Ferry Declaration does not concern, discuss, or relate to the sending of any particular text message. Instead, the Declaration merely relates to whether a specific type of software is an automatic telephone dialing system.

Request No. 19 seeks all documents describing or identifying the "Computers, Computer Systems, telephone lines, or other equipment involved or used in the transmission of any Text Messages during the Relevant Time Period..." Plaintiff defines Computers and Computer Systems as follows:

> all data processing equipment, including but not limited to, central processing units (CPUs), whether contained in a server or free standing computer or laptop or PDA or similar device that may contain data storage capabilities, irrespective of whether such computing platform, infrastructure or storage is virtualized, whether that data be structured or unstructured, and also including any equipment where computer files (including without limitation, records, documents, logs, and any other contiguous of non-contiguous bit strings), hidden system files or metadata presently reside such as hard disk drives, optical disk drives, removable media, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives or snap drives, data processing cards, computer magnetic tapes, backup tapes, drum and disk storage devices or any other similar electronic storage media or system of whatever name or description. "Computer or computer equipment" also means all digital image evidence that may be stored on any type of hardware used to store or

> manipulate electronic images, including but not limited to microfilm, microfiche and their repositories and readers, or design or engineering computer systems and regardless of any digital image's format, including .jpg, .bmp, or some other advanced or proprietary form of digital image format, such as CAD layered drawings.
>
> "Computer or computer equipment" also refers to sources of digital evidence that may not presently be in use by your company or may have been deleted from your active systems, whether the source is a backup tape or disk, some other data retention system or some form of disaster recovery system. "Computer or computer equipment" also refers to places where digital evidence may reside that may have been deleted from your active files and which may not be readily recoverable from a backup medium, such as metadata.

"Data Doctor" does not fit either of the above definitions. It is clear from the above definitions that Plaintiff intends "computer or computer equipment" to refer to actual, tangible computer hardware, like desktops and laptops, and, by contrast, that Plaintiff does not intend for those definitions to apply to computer software programs like Data Doctor. In Plaintiff's own statement of undisputed material facts, he labels "Data Doctor" a computer software program, rather than a system or piece of computer equipment. *See* Plaintiff's Partial Consold. Resp., Dkt. 266, pg. 2, lines 20-21.

Requests 32 and 33 seek documents that identify or describe software that was used to store or produce telephone numbers to which the text messages at issue were sent. As Ferry's Declaration makes clear, Data Doctor could not store or produce telephone numbers. *See* Ferry Decl., Dkt. 237, Exhibit 10, ¶¶ 9, 10, and 13.

Furthermore, even if the Ferry Declaration was responsive to one of Plaintiff's discovery requests, which it was not, it was (according to Plaintiff's own argument) privileged. Before Ferry's deposition in this matter, LeadPile served a subpoena on Ferry seeking all records related to this litigation. Ferry complied with the subpoena, but Plaintiff's counsel immediately sought to "clawback" documents produced by Ferry

claiming communications from Plaintiff to Ferry were “work product.” For Plaintiff to now argue that Ferry’s statements to CPS should have been disclosed before summary judgment, when Plaintiff’s counsel has withheld his own communications with Ferry, is disingenuous at best.

Additionally, even if the Ferry Declaration was responsive, CPS’s failure to disclose would have been harmless. *See* Fed R. Civ. P. 37(c)(1). District Courts look at four factors in determining whether a violation of a failure to timely produce a disclose is justified and/or harmless are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir.2003). Plaintiff is not prejudiced because the info contained in the Declaration is repetitive of Gee's deposition testimony regarding Data Doctor and its capabilities. *See, e.g.,* Gee Dep. 130:17-22, 130:23-131:3, 131:4-9, and Gee 131:10-18. Because it is repetitive, the Ferry Declaration is not likely to cause disruption at trial, and, as noted above, no bad faith or willfulness was involved in any failure on CPS' part to produce as CPS had a good-faith belief that the Ferry Declaration was not responsive to any discovery request.

Finally, contrary to Plaintiff’s claims, the Ferry Declaration has been properly authenticated; it is dated and subscribed to by Ferry as true under the penalty of perjury. *See Downs v. Grusman*, 2:07-CV-0116-JCM-LRL, 2011 WL 1155356, at *2, fn. 1 (D. Nev. Mar. 28, 2011) ("Under 28 U.S.C. § 1746, an un-notarized affidavit is permitted when it is dated and subscribed to by the declarant as true and under penalty of perjury.").

**C. The Declaration of Michael Ferry is based on personal knowledge**

Plaintiff argues that Ferry has no personal knowledge regarding the hardware or software used by AC Referral to send the text messages at issue, and he is correct. However, no such statements are included in Ferry's Declaration. In fact, at no point in his Declaration does Ferry make reference to the text messages at issue in this matter. Instead, Ferry only makes statements regarding the capabilities of the Data Doctor program he provided to James Gee. As demonstrated by statements contained in Ferry's Declaration, Ferry is familiar with the Data Doctor program and has personally used it to send text messages. *See* Ferry Decl., Dkt. 237, Exhibit 10, ¶ 6.

Finally, Plaintiff argues that Ferry's testimony regarding whether Data Doctor was an ATDS is an improper legal conclusion. This is incorrect. Plaintiff's argument fails to take into account that the term ATDS is an industry term of art, for which Ferry is familiar. In his deposition, Ferry explained that he had worked in the "text message and email marketing" industry for numerous years and for multiple companies; he could similarly lay such a foundation for his statement at trial. *See, e.g.*, Exhibit 1 to CPS's Response to Motion to Strike, Dkt. 290, Ferry Dep., 11:16-19, 12:12-13:7. *See also*, *Sobel v. Hertz Corp*, 291 F.R.D. 525, 532-533 (D. Nev. 2013) quoting Fed. R. Civ. P. 56 Advisory Committee Note ("Once challenged, the proponent of the evidence may explain 'the admissible form that is anticipated,'").

**II. CPS' Discovery Responses are Admissible**

Plaintiff moves to strike CPS Exhibit 1, CPS Exhibit 2 and CPS Exhibit 4 (collectively, "CPS's Discovery Responses") on the basis that the responses are not verified and are therefore inadmissible hearsay.

CPS previously held off verifying its Responses to Plaintiff's First Set of Interrogatories, its Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories, and its Amended Responses to Plaintiff's Second Set of Interrogatories (collectively, "Interrogatory Responses") pending a ruling from the Court on Plaintiff's Motion to Compel (Dkt. 199). CPS was understandably hesitant to verify its Interrogatory Responses when the Court had not yet ruled as to whether CPS needed to further supplement or amend them.

The Court entered its Order on the Motion to Compel on November 25, 2014 (Dkt. 272). The Court's Order did not require CPS to further supplement or amend its Interrogatory Responses. Accordingly, CPS proceeded to verify its Interrogatory Responses and will serve copies of its Verification on Plaintiff's Counsel on December 5, 2014, per the Court's Order. Having been verified, the Interrogatory Responses are admissible and are not hearsay.

**III. The Gee and Ferry deposition excerpts are admissible**

Plaintiff argues the Gee and Ferry deposition excerpts should be excluded because they are not based on either witness's personal knowledge and/or should be excluded based on hearsay. (Dkt. 268).

First and foremost, the excerpts from the deposition transcripts of Michael Ferry and James Gee cited by LeadPile in support of its Motion for Summary Judgment and referenced by Plaintiff above – Ferry Depo. 63:11–64:20 and 89:16-22, and Gee Depo. 23:10-24:2 (hereinafter, the "Referenced Excerpts") – simply provide a narrative of the events at issue. More particularly, the selected portions of each transcript provides facts, not opinions, regarding the general business operations of AC Referral and 360 Data Management, including the manner in which the companies received consumer consent, and the standard business practices employed by each to ensure compliance with the TCPA. Not only do Michael Ferry and James Gee have

deep personal knowledge of these facts, their testimony is admissible as evidence of habit or routine under Rule 406 of the Federal Rules of Evidence:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406.

Evidence of habit "is highly probative for the purpose of showing that a person acted in conformity with his habit on a particular occasion." *In re Swine Flu Immunization Products Liability Litigation v. United States*, 533 F. Supp. 567, 574 (D. Colo. 1980) (citing *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791 (5th Cir. 1979). Moreover, routine business practices, such as those to which Mr. Ferry and Mr. Gee testified, are more probative than routine individual conduct. *See Fritchie v. Alumax Inc.*, 931 F. Supp. 662, 676 (D. Neb. 1996) ("This is…because routine business practices are derived from concerted planning activities driven by economic concerns about efficiency which are of necessity more regimented than individual conduct.") Here, Mr. Ferry and Mr. Gee operated under the procedures they chose in order to avoid significant legal liability – a "necessity."

Further, the excerpted portions of these depositions were not offered by LeadPile to prove the class members consented, so the referenced excerpts are not hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). The referenced excerpts merely establish facts regarding their business processes, which form the basis for their respective statements as to their belief that they complied with the TCPA.

Plaintiff also continues his trend of arguing that the testimony of Michael Ferry and James Gee has already been deemed wholly inadmissible by this Court. Plaintiff's argument is unfounded and based on a gross mischaracterization of the Court's prior ruling. The specific language to which Plaintiff refers comes from the Court's Order Denying Defendants' Motion to Dismiss and Granting Class Certification (Dkt. 164):

> [Defendants'] reliance on James Gee (of AC Referral Systems) and Michael Ferry (of 360 Data Management and Absolute ROI) is misplaced, as neither has ***personal knowledge whether Kristensen, or the other purported class members consented*** when they visited one of "hundreds" of websites that Defendants allege were the original sources of the cell phone numbers.

[Dkt. 164, at 17 (emphasis added).]

Without question, the plain language here states that Mr. Ferry and Mr. Gee were found to lack personal knowledge regarding Plaintiff's consent. As previously stated, LeadPile did not offer their testimony for that purpose.

Plaintiff's arguments are also disingenuous. Plaintiff relies on numerous excerpts from Ferry and Gee's depositions in support of his own arguments regarding consent. *See, e.g.*, Dkt. 266, pp. 3-4.

Plaintiff's final set of objections to the Ferry Declaration is a mere recitation of his prior arguments. First, Plaintiff argues that the Declaration is inadmissible because Ferry lacks personal knowledge (presumably regarding the software or equipment used by AC Referral to send the text, or whether Data Doctor is an ATDS, though Plaintiff does not specify). As outlined above, Ferry's Declaration contains only statements regarding how Data Doctor, a program with which he is personally familiar, works. Ferry, at no time, states that Data Doctor was used to send the text messages at issue. Additionally, to the extent Plaintiff is arguing that

Ferry does not have personal knowledge regarding what an ATDS is or does, that argument is also addressed above.

Plaintiff also argues that the Ferry Declaration is an inadmissible “sham affidavit” because Ferry’s statements in the Declaration regarding consent allegedly contradict statements Ferry made at his deposition. As noted above, statements in Ferry's Declarations regarding consent have not been cited by CPS in support of its summary judgment arguments.

Similarly, Plaintiff attempts to argue that Ferry's statements in the Declaration regarding the capabilities of Data Doctor contradict Ferry's statement at his deposition that he did not know how AC Referral sent out the text messages. As noted above, the Ferry Declaration does not contain a single statement regarding what method AC Referral may have used to send out the text messages at issue. Instead, the Ferry Declaration simply describes the capabilities of the Data Doctor program, which James Gee testified he used to send out the text messages. Accordingly, Plaintiff's argument that the Ferry Declaration is a "sham affidavit" is without support.

**CONCLUSION**

For the foregoing reasons, LeadPile respectfully requests the Court deny Plaintiff’s Rule 56(c)(2) Objections and Motion to Strike (Dkt. 268), grant LeadPile’s Motion for Summary Judgment (Dkt. 240), and grant LeadPile such other further relief as is just in the circumstances.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

DATED: December 4, 2014 By: *\/s/ K. Chris Collins*

Ryan W. Mitchem (TN #022196)
Michael K. Alston (TN #013697)
K. Chris Collins (TN #029109)
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402

Patricia Lee (NV #8287)
Joseph R. Ganley (NV #5643)
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145

*Attorneys for Defendant LeadPile LLC*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that on this 4th day of December, 2014, I caused the above and foregoing document entitled **LEADPILE LLC'S RESPONSE TO PLAINTIFF'S RULE 56(c)(2) OBJECTIONS TO AND MOTION TO STRIKE THE DECLARATION OF MICHAEL FERRY AND OTHER EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** to be served as follows:

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, to be served **via electronic service**; or to all attorneys of record according to the Court's CM/ECF system.

*s/K. Chris Collins*