John Benedict, Esq.
LAW OFFICES OF JOHN BENEDICT
Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ryan D. Andrews (Admitted *Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Flemming Kristensen and the Class*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FLEMMING KRISTENSEN, individually and on behalf of a class of similarly situated individuals, | Case No. 2:12-CV-00528-APG-(PAL) |
| | CLASS ACTION |
| Plaintiff, | Judge: Hon. Andrew P. Gordon |
| v. | Magistrate: Hon. Peggy Leen |
| CREDIT PAYMENT SERVICES INC., a Nevada corporation, f/k/a MY CASHNOW.COM INC., ENOVA INTERNATIONAL, INC., an Illinois corporation, PIONEER FINANCIAL SERVICES, INC., a Missouri corporation, LEADPILE LLC, a Delaware limited liability company, and CLICKMEDIA LLC d/b/a NET1PROMOTIONS LLC, a Georgia limited liability company, | **PLAINTIFF'S REPLY IN SUPPORT OF RULE 56(c)(2) OBJECTIONS TO AND MOTION TO STRIKE EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| Defendants. | |

1

## INTRODUCTION

2       Although they advance overlapping arguments, Defendants Credit Payment Services, Inc.

3  ("CPS"), LeadPile LLC ("LeadPile"), and Enova International, Inc. ("Enova") filed three separate

4  briefs opposing Plaintiff's Rule 56(c)(2) Objections to and Motion to Strike Evidence Submitted in

5  Support of Defendants' Motion for Summary Judgment. (Dkts. 290 ["CPS Opp."], 296 ["LeadPile

6  Opp."], 285 ["Enova Opp."].)[1] For efficiency's sake, Plaintiff addresses the repetitive arguments

7  raised by Defendants' separate response briefs through this consolidated reply.[2]

8       As explained in his opening motion, Defendants' respective motions for summary judgment

9  rely on three pieces of evidence that are inadmissible under the Federal Rules of Evidence, the

10  Federal Rules of Civil Procedure, and judicial doctrine: (1) CPS's unverified responses to written

11  discovery, (2) portions of the depositions of Michael Ferry and James Gee, and (3) Mr. Ferry's

12  newly discovered declaration (the "Ferry Declaration"). (Dkt. 268.) In their response briefs (which,

13  apart from the fact that LeadPile failed to cite any supporting exhibits, are basically carbon copies

14  of each other), CPS and LeadPile urge the Court to find the evidence admissible. Enova joins their

15  refrain with respect to the deposition excerpts. For the reasons stated herein, this Court should reject

16  Defendants' arguments.

17

## ARGUMENT

18
19  **I.    The Court Should Strike CPS's Interrogatory Responses Because Rule 33 Does Not Permit a Responding Party to "Hold Off" on Verification.**

20       Plaintiff objects to CPS's interrogatory responses because they were unverified at the time

21  Defendants moved for summary judgment. (Dkt. 268 at 3–4.) In a cursory argument citing no

22  authority, CPS and LeadPile contend that CPS's unverified discovery responses are admissible.

23  (CPS Opp. at 8; LeadPile Opp. at 9–10.) The only explanation CPS and LeadPile offer is that CPS

24  was "understandably hesitant to verify its Interrogatory Responses" because this Court had not yet

25  ruled on Plaintiff's motion to compel. (Dkt. 199) (CPS Opp. at 8; LeadPile Opp. at 10.) This

26

27    [1]     Defendant Pioneer did not file an opposition to Plaintiff's motion.

28    [2]     All three Defendants have adopted each other's evidence in support of their summary judgment motions. (*See* Dkt. 233 at 2 n.2; Dkt. 240 at 14 n.3 & 4, 21 n.5, 26 n.6.)

1

argument is nonsensical because two of the three sets of interrogatory responses at issue were produced *before* Plaintiff's motion to compel was filed on June 24, 2014. Indeed, CPS's Responses to Plaintiff's First Set of Interrogatories (Dkt. 237-1, Ex. 1) were produced on December 12, 2012, and CPS's Amended and Supplemental Responses to Plaintiff's First Set of Interrogatories (Dkt. 237-1, Ex. 2), were produced on June 3, 2014. It is simply impossible that CPS failed to verify its responses because it was awaiting the resolution of a motion to compel that had not yet been filed.

With respect to all three sets of unverified discovery responses, Rule 33(b) is clear: all interrogatory responses must "be answered separately and fully in writing under oath" and the "person who makes the answers must sign them." Fed. R. Civ. P. 33(b)(3), (5). It is well established that unverified discovery responses are not admissible in conjunction with a motion for summary judgment. *See Blevins v. Marin*, No. 11-cv-3475, 2013 WL 5718869, at *1 (E.D. Cal. Oct. 11, 2013) ("[A]l responses to interrogatories . . . must be verified—that is, bear plaintiff's signature attesting under penalty of perjury that his responses are true and correct—in order to be an admissible form at summary judgment."); *Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 539 (S.D.W. Va. 2005) ("[T]he failure to provide client verification undermines the dispositive motion process under Rule 56(c)."). None of the interrogatory responses CPS submitted were "in an admissible form" when the motions for summary judgment were filed.[3]

There is no exception within Rule 33 that would allow a responding party to submit unverified discovery responses just because a motion to compel is pending. Regardless of whether a court ultimately orders discovery responses to be supplemented or amended, the responding party's duty to answer interrogatories under oath—and verify he has done so by signing—does not change. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 466 (M.D. Fla.) *aff'd*, 254 F.R.D. 470 (M.D. Fla. 2008) (noting that "Rule 33 is commonly interpreted as requiring all interrogatory answers, whether initial or supplemental, to be signed under oath" and collecting

---

[3]     Although the responses have now been signed by former CPS president Doug Freeman— more than 40 days after Defendants moved for summary judgment—the Declaration of Michele R. Hall, submitted in support of CPS's response to this Court's compelling order, makes no mention of when or how Mr. Freeman reviewed and verified the responses. (*See* Dkt. 297-1.)

cases). The fact that this Court allowed CPS until December 5, 2014 to supplement its discovery responses should not be construed as permission to shirk the basic requirements of Rule 33.

Accordingly, this Court should reject Defendants' unsupported argument, and strike CPS's interrogatory responses from evidence.

**II.     The Court Should Strike the Deposition Excerpts of Michael Ferry and James Gee Because they are Not Based on Personal Knowledge.**

Plaintiff objects to the deposition excerpts of Michael Ferry and James Gee regarding consent on two grounds: (1) that they are not based on Mr. Ferry and Mr. Gee's personal knowledge, and (2) that they are hearsay. (Dkt. 268 at 5–6.) Defendants argue that the deposition testimony is admissible because it was cited to illustrate 360 Data's and AC Referral's business practices and to provide factual background—not to show evidence of consent. (CPS Opp. at 9–10; LeadPile Opp. at 11–14; Enova Opp. at 3–4.)

Contrary to this assertion, Defendant LeadPile *did* rely on the depositions to show consent. (Dkt. 240 at 7–8, 11, 26–27.) In its motion for summary judgment, LeadPile explicitly stated:

> Non-party discovery has already unearthed reliable and convincing testimony stating that a vast majority, if not all, of the recipients of AC Referral's text messages consented to receive them. Indeed, representatives of both AC Referral and 360 Data testified that the recipients of any text messages first consented to receive the promotion.

(*Id.* at 27.) Yet LeadPile's opposition brief tells a different story. There, LeadPile states that "the excerpted portions of these depositions were not offered by LeadPile to prove consent" (LeadPile Opp. at 11) and that "LeadPile did not offer [Gee and Ferry's] testimony for that purpose" (*id.* at 12). Moreover, LeadPile acknowledges that this Court's previous Order (Dkt. 164 at 17) "without question" shows that Mr. Gee and Mr. Ferry lacked personal knowledge regarding consent and are not qualified to testify on that issue. (LeadPile Opp. at 12). As noted above, LeadPile's brief was simply cut-and-pasted from CPS's. As a result, its opposition brief contains carbon-copy arguments that are inapplicable to its own summary judgment motion.

As mentioned above, this Court has already found that Mr. Gee and Mr. Ferry lack personal knowledge regarding consent. (Dkt. 164 at 17.) Thus, these portions of the deposition transcripts are

1  inadmissible under the Federal Rules of Evidence and Federal Rules of Civil Procedure. *See* Fed. R.

2  Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a

3  finding that the witness has personal knowledge of the matter."); Fed. R. Civ. P. 56(c)(4) ("An

4  affidavit or declaration used to support or oppose a motion must be made on personal knowledge,

5  set out facts that would be admissible in evidence, and show that the affiant or declarant is

6  competent to testify on the matters stated."). To the extent all Defendants claim the depositions

7  establish factual background or shed light on AC Referral's and 360 Data's business practices, they

8  ignore the fact that the testimony is not admissible at summary judgment because neither Mr. Ferry

9  nor Mr. Gee has "personal knowledge whether [Plaintiff], or the other purported class members

10  consented. . . ." (Dkt 164 at 17.)

11  Defendants' argument that Gee's and Ferry's "business practices" are admissible under the

12  "habit and routine" exception in Federal Rule of Evidence 406 fares no better because Defendants

13  fail to cite any deposition testimony to support a finding that either of these individuals had a "habit

14  or routine practice" relating to consent. For instance, CPS cites to the deposition testimony of James

15  Gee at Pg. 23, line 10 through page 24, lines 3, in its Motion for Summary Judgment for the

16  proposition that "they" (meaning Gee and Ferry) compared phone numbers from lists they received

17  to "suppression lists" to determine if those individuals had previously opted-out. (*See* Dkt. 237, ¶ 7.)

18  Putting aside the fact that "suppression lists" are irrelevant to the consent issue,[4] Gee testified

19  unequivocally that he took no actions with "suppression lists" (*See* Deposition Testimony of James

20  Gee ["Gee Dep."], attached to the Declaration of John C. Ochoa ("Ochoa Decl.") as Exhibit A, at

21  53:8-11 ("Q: So as part of AC Referral's business operation, did it ever compare lists it received to

22  suppression lists?  A:  No. That wasn't my job."). Nor did Gee have any "business practices"

23  whatsoever relating to the TCPA or confirming consent. (Gee Dep. at 24:17 – 21 ("Q: Okay.  I just

24  want to make sure I'm clear. You didn't do anything yourself to check to make sure that people on

25  the list you got from Mr. Ferry had opted-in? A: No.").

26  _____

[4]     "Suppression lists" have nothing to do with whether anyone consented to receive text messages in the first place. The lists—maintained by Defendant Click Media, existed to keep track of individuals who "complained" or "opted-out" of receiving messages.  (Deposition of Michael Ferry ("Ferry Dep."), attached to the Ochoa Decl. as Exhibit B, at 69:16 – 70:2.)  They didn't speak to whether those people consented in the first instance.

4

1  Likewise, Michael Ferry testified clearly that he had no "business practices" in place to

2  determine if individuals consented. (*See* Deposition of Michael Ferry ["Ferry Dep."] at 87:12-17

3  ("Q: Do you have any, like, protocols or compliance programs in place to ensure that you, in fact,

4  make sure that the numbers you send on are proper numbers? A: no, besides the fact if someone

5  ever complained, right, it's – you know, you can get into a lot of trouble.").

6  Whether the testimony is offered to show consent or reveal business practices, it is

7  inadmissible because it is not based on personal knowledge, and not afforded any exception under

8  the Federal Rules of Evidence. Accordingly, the Court should strike the testimony from evidence.

9
10  **III.    The Court Should Strike the Ferry Declaration Because it Is Untimely and Contradictory.**

11  Plaintiff objects to the Ferry Declaration because it presents new, contradictory evidence

12  more than five months after the close of discovery. (Dkt. 268 at 6–10.) CPS and LeadPile argue that

13  Mr. Ferry's declaration is admissible because it (1) was not responsive to Plaintiff's discovery

14  requests, and (2) is not contradictory. (CPS Opp. at 1–7; LeadPile Opp. at 2–9.) These arguments

15  should be rejected.[5]

16  **A.    The newly uncovered declaration is responsive to Plaintiff's discovery requests.**

17  Plaintiff properly moved to strike the Declaration of Michael Ferry because it was

18  responsive at least seven document requests served by Plaintiff, yet CPS never produced it in

19  discovery, in violation of Fed. R. Civ. P. 37. In response, CPS and LeadPile contend that "the Ferry

20  Declaration was not responsive to any discovery requests served by Plaintiff." (CPS Opp. at 4;

21  LeadPile Opp. at 5.) This position is concerning—if CPS and LeadPile regard the Ferry Declaration

22  as non-responsive to the seven document requests discussed below, Plaintiff questions what other

23  information they have withheld based on their extremely narrow reading of Plaintiff's requests.

24
25  [5]    Defendants misconstrue Plaintiff's argument regarding Mr. Ferry's lack of personal

26  knowledge. Citing paragraphs 15 and 16 of the Ferry Declaration, Plaintiff specifically argues that Mr. Ferry lacks personal knowledge on the issue of *consent*—a position that Plaintiff also argued with respect to Mr. Ferry's deposition testimony, and one this Court has already adopted (Dkt. 164

27  at 17.) Plaintiff does not assert that Mr. Ferry has no personal knowledge regarding Data Doctor—

28  as discussed below, his statements concerning Data Doctor contradict his prior deposition and render his declaration inadmissible for that reason. (*See* § III.B, *infra*.)

1       Remarkably, CPS and LeadPile contend that the Ferry Declaration is not responsive to

2  Plaintiff's request for "[a]ll Documents and ESI that refer or Relate To the sending of the Text

3  Message identified in Paragraph 17 of the Complaint." (Dkt. 268-1 at 35, Request No. 15.) CPS and

4  LeadPile assert that the Ferry Declaration deals with whether Data Doctor is an ATDS, not "the

5  sending of any particular text message." (CPS Opp. at 5; LeadPile Opp. at 6.) This argument is

6  absurd. In their statements of undisputed facts, CPS and LeadPile concede that AC Referral used the

7  Data Doctor software that *Mr. Ferry provided* to send the text messages at issue in this case. (Dkt.

8  237 ¶¶ 9, 14; Dkt. 240 ¶¶ 5, 11). Accordingly, Mr. Ferry's statements regarding the software and

9  cellular telephone numbers provided to AC Referral undeniably "Relate To the sending of the Text

10  Message" identified in Plaintiff's Complaint.

11      Defendants' other arguments that the Ferry Declaration is "non-responsive" to discovery

12  reveal a similarly tortured reading of Plaintiff's requests. CPS and LeadPile argue that the Ferry

13  Declaration does not relate to the telephone number from which AC Referral transmitted the text

14  messages. (CPS Opp. at 4–5; LeadPile Opp. at 6.) Although Mr. Ferry does not recite this telephone

15  number verbatim, his declaration concerns AC Referral's transmission of text messages originating

16  from that number. With respect to Plaintiffs requests for documents and ESI regarding computer "or

17  other equipment" used to transmit "any Text Messages during the Relevant Time Period" (Dkt. 268-

18  1 at 36, Request No. 19), CPS and LeadPile strain to read "computer" or "computer equipment" as

19  limited to "actual, tangible computer hardware, like desktops and laptops." (CPS Opp. at 6;

20  LeadPile Opp. at 7.) This language is found nowhere in Plaintiff's discovery requests. To the

21  contrary, Plaintiff instructed Defendant to construe his definitions "as broadly as possible" and

22  defined the terms "computer" and "computer equipment" to include "all data processing

23  equipment." (Dkt. 268-1 at 24–25, 33.) There is no basis for excluding Data Doctor from this

24  definition.

25      What is perhaps most disturbing about Defendants' approach is that they appear to use their

26  own bare legal conclusions to interpret Plaintiff's document requests, and then produce or withhold

27  information accordingly. For instance, Defendants argue they are not vicariously liable under the

28  TCPA. (Dkt. 237 at 9–15; Dkt 240 at 14–20.) CPS then use this legal conclusion to argue that they

6

1  are therefore excused from producing the Ferry Declaration in response to Request No. 12[6] because

2  the text messages were never sent on their behalf. (*See* CPS Opp. at 4; LeadPile Opp. at 5.)

3  Defendants also argue that the Data Doctor program is not an ATDS. (Dkt. 237 at 7–9; Dkt. 240 at

4  21–26.) CPS again claims that because of this, it is excused from producing the Ferry Declaration in

5  response to Request Nos. 32–33[7] because Data Doctor cannot store or produce telephone numbers.

6  (CPS Opp. at 6; LeadPile Opp. at 7.) These self-regulating answers run counter to Rule 26(b)(1),

7  which permits discovery into "any matter that bears on or that reasonably could lead to other

8  matters that could bear on any issue that is or may be raised on the case." *Allstate Ins. Co. v.*

9  *Nassiri*, 2011 WL 810088, at *2 (D. Nev. Mar. 1, 2011) *aff'd* 2011 WL 2516943 (D. Nev. June 23,

10  2011). The rules of discovery do not permit Defendants to tailor discovery responses based on their

11  unilateral and self-serving legal conclusions.

12        Because the Ferry Declaration was responsive to numerous discovery requests, the Court

13  should not permit its untimely introduction at this late stage in the litigation.

14       **B.**     **The Ferry Declaration is not privileged, and in any case, CPS and LeadPile**

15              **could not treat it as such without a privilege log.**

16        As an alternative argument, Defendants argue that the Declaration was not produced in

17  discovery because it is privileged. (CPS Opp. at 6; LeadPile Opp. at 7.) The sole basis for their

18  argument is a statement made by Plaintiff's counsel—that "emails authored by Plaintiff's counsel

19  and sent to witnesses in this action" are protected work product. (CPS Opp. at 6, Ex. 2; LeadPile

20  Opp. at 7.) Defendants provide no other authority for their position, failing to meet their burden in

21  asserting work product. *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 598 (D. Nev.

22

---

23    [6]     Request No. 12: "All Documents and ESI referring or Relating To sending Text Messages to

24  Cellular Phone numbers by You or on Your behalf to promote Your products or services or the
products or services of any Person or entity owned or controlled by You or affiliated with You."

25  (Dkt. 268-1 at 35, Request No. 12.)
  [7]     Request No. 32: "All Documents and ESI that Identify or Describe any equipment,

26  hardware, or software that was used to store or produce telephone numbers to which Text Messages
were sent during the Relevant Time Period." (*Id.* at 39, Request No. 32.) Request No. 33: "All

27  Documents and ESI that Identify or Describe any equipment, hardware, or software that was used to
store or produce the telephone numbers to which the Text Message Identified in Paragraph 17 of the

28  Complaint was sent." (*Id.*, Request No. 33.)

7

---

1   2012) (citation omitted). It is well established that the work product doctrine only protects an

2   attorney's strategies and legal impressions from disclosure—not the underlying facts at issue. *Gen-*

3   *Probe Inc. v. Becton, Dickinson & Co.*, 2011 WL 9510, at *1 (S.D. Cal. Jan. 3, 2011) (citation

4   omitted). Accordingly, numerous courts have held that declarations containing only facts are not

5   protectable work product. *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 422–23

6   (D.N.J. 2009) (refusing to extend work product protection to affidavit that contained "a recitation of

7   facts within the ken of the witness and . . . [not] the mental impressions or legal theories of

8   counsel."); *Murphy v. Kmart Corp.*, 259 F.R.D. 421, 431 (D.S.D. 2009) (citation and internal

9   quotations omitted) (describing this approach as majority view and collecting cases); *see also Young*

10  *v. California*, 2007 WL 2900539, at *1 (S.D. Cal. Oct. 1, 2007) (applying same rationale to

11  questionnaire containing "factual observations of percipient witnesses, not the thoughts or

12  impressions of counsel").

13          Here, the Ferry Declaration is a recitation of facts—not attorney notes or a draft declaration

14  revealing counsel's mental impressions. As Defendants themselves make clear, "Ferry makes only

15  statements regarding the capabilities of the Data Doctor program." (CPS Opp. at 7; LeadPile Opp.

16  at 9.) Defendant has provided no reason to exclude this declaration on the basis of work product. In

17  any case, it is nonsensical for CPS to argue the declaration is privileged—an argument that implies

18  the declaration was responsive to discovery, and would have required CPS to list it on its privilege

19  log. *See Everest Indem. Ins. Co. v. Aventine-Tramonti Homeowners Ass'n*, 2011 WL 3841083, at *3

20  (D. Nev. Aug. 29, 2011) (citing Fed. R. Civ. P. 26(b)(5)(A)).

21          Defendant's claim that the Ferry Declaration is privileged—because *Plaintiff* asserted work

22  product protection for attorney emails—is disingenuous at best.

23          **C.      The Ferry Declaration contradicts prior deposition testimony in which Mr.
                       Ferry stated he had no knowledge of how AC Referral transmitted text
24                     messages.**

25          Defendants urge this court to accept Mr. Ferry's untimely declaration, because (1) the sham

26  affidavit doctrine does not apply, and (2) in any case, the declaration is not contradictory. CPS and

27  LeadPile contend that the sham affidavit doctrine is inapplicable because Mr. Ferry is a non-party

28

8

1  and because they are relying on the Ferry Declaration in support of their motions for summary

2  judgment. (CPS Opp. at 2; LeadPile Opp. at 3.)

3       Contrary to Defendants' assertions, the sham affidavit doctrine applies to non-party

4  witnesses. In the case cited by Defendants—which involved a contradiction between a plaintiff's

5  and other witnesses' deposition testimony—the Ninth Circuit explicitly notes that nothing

6  "preclude[s] a trial judge from excluding a third party affidavit in an appropriate case, with findings

7  supporting the conclusion that it is truly a 'sham affidavit.'" *Nelson v. City of Davis*, 571 F.3d 924,

8  929 n.2 (9th Cir. 2009). In addition, the doctrine may be applied to a party moving for summary

9  judgment. *See, e.g.*, *Hennighan v. Insphere Ins. Solutions, Inc.*, 2014 WL 1600034, at *7 (N.D. Cal.

10  Apr. 21, 2014) (refusing to consider portions of the declaration of party moving for partial summary

11  judgment where declaration contradicted prior deposition testimony).

12       Striking the Ferry Declaration is consistent with the purpose of the sham affidavit doctrine—

13  preventing the use of affidavits that run contrary to prior deposition testimony, and maintaining

14  summary judgment as "an integral part of the Federal Rules as a whole." *Van Asdale v. Int'l Game*

15  *Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327

16  (1986)). Mr. Ferry's untimely declaration—which "conspicuously attempt[s] to substantiate each

17  and every claim that [his] deposition testimony left lacking"—undermines the integrity of the

18  summary judgment standard. *Faulk v. Volunteers of Am.*, 444 F. App'x 316, 318 (11th Cir. 2011);

19  *see also Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) (Posner, J.)

20  (citations omitted) ("Affidavits, though signed under oath by the affiant, are typically . . . written by

21  the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in

22  credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives

23  a plausible explanation for the discrepancy.").

24       Defendants next argue that, in any case, the declaration is not contradictory to Mr. Ferry's

25  prior deposition testimony, which did not discuss Data Doctor. (CPS Opp. at 2; LeadPile Opp. at 3.)

26  The contradiction, however, lies in the fact that Mr. Ferry previously testified he had no knowledge

27  as to how AC Referral transmitted text messages (Ferry Dep. at 78:21–79:9), yet is now able to

28  provide detailed information about the program AC Referral used—Data Doctor, as well how that

9

1   program works in conjunction with other software and hardware. Likewise, Mr. Ferry previously

2   testified that he did not personally obtain consent and had no "protocols or compliance programs in

3   place" for doing so (Ferry Dep. at 87:12–17; 115:12-18), yet is now able to provide detailed

4   information about how he confirmed consent before transmitting cellular telephone numbers to AC

5   Referral.  (*See* Ferry Decl. ¶ 16.) Both CPS and LeadPile rely heavily on this new and conflicting

6   information in their motions for summary judgment. (Dkt. 237 at 8; Dkt. 240 at 26.)[8]

7            Because the new declaration contains contradictory information that—although previously

8   requested in discovery—has appeared for the first time at summary judgment, this Court should

9   strike it from evidence.

10   **IV.   Conclusion.**

11          For the foregoing reasons, Plaintiff respectfully requests that the Court (1) sustain his

12   objections and strike from evidence CPS's previously unverified interrogatory responses, portions

13   of Michael Ferry and James Gee's deposition testimony concerning matters on which they lack

14   personal knowledge, and the newly discovered Ferry Declaration, and (2) award any further relief

15   that it deems equitable and just.

16

17                                              Respectfully submitted,

18   Dated: December 15, 2014                   **FLEMMING KRISTENSEN,** individually and on
                                                behalf of the Class
19

20                                              By: s/ John C. Ochoa
                                                    One of Plaintiff's Attorneys
21

22                                              John Benedict, Esq.
                                                LAW OFFICES OF JOHN BENEDICT
23
     ─────────────────────
24   [8]    Defendants also argue that Plaintiff was not harmed by the late production of the Ferry
     Declaration because it is "repetitive." (CPS Opp. at 7; LeadPile Opp. at 8). If that were the case,
25   however, Defendants would have no need to rely on it in their summary judgment motions. As
     detailed above, the Declaration is an attempt to shore up prior deposition testimony with new and
26   contradictory information. Given the nature of the Ferry Declaration, Defendant has not carried its
     burden in showing its untimely disclosure is harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor
27   Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (noting that burden is on party facing sanctions to prove
     harmlessness).
28

Plaintiff's Reply in Support of Evidentiary Objections              No. 2:12-cv-00528-APG-(PAL)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nevada Bar No. 005581
2190 E. Pebble Road, Suite 260
Las Vegas, Nevada 89123
Telephone: (702) 333-3770
Facsimile: (702) 361-3685
john.benedict.esq@gmail.com

Rafey Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ryan D. Andrews (Admitted *Pro Hac Vice*)
randrews@edelson.com
John C. Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Flemming Kristensen and the Class*

**Plaintiff's Reply in Support of Evidentiary Objections**                    **No. 2:12-cv-00528-APG-(PAL)**

1

## **CERTIFICATE OF SERVICE**

2

3       I, John C. Ochoa, hereby certify that on December 15, 2014, I electronically filed the
foregoing *Plaintiff's Reply in Support of Rule 56(c)(2) Objections to and Motion to Strike Evidence*

4 *Submitted in Support of Defendants' Motions for Summary Judgment.* Notice of this filing is sent to
all counsel of record by operation of the Court's electronic filing system. Parties may access this

5 filing through the Court's system.

6 Dated: December 15, 2014                              s/ John C. Ochoa

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Reply in Support of Evidentiary Objections**                              **No. 2:12-cv-00528-APG-(PAL)**